# ORIGINAL

FILED

AUG 1 6 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIF

SBA
(PR)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E-filing

C 07 4215

| | |
|---|---|
| CLIFFORD LELIKONA PARKER,<br>CDCR #J-43369 | Case No. _____ |
| | Cal.S.Ct.No. S152138 |
| Petitioner, | |
| | **PETITION FOR WRIT OF<br>HABEAS CORPUS BY A<br>STATE PRISONER** |
| v. | |
| BEN CURRY, Warden,<br>Correctional Training Facility, | [28 U.S.C. §2254] |
| Respondent. | |

**CLIFFORD LELIKONA PARKER**
CTF - Central B-226U
P.O. Box 689
Soledad, CA 93960-0689
Prison Number: J-43369
Petitioner in pro se

## TABLE OF CONTENTS

Pages

PETITION FOR WRIT OF HABEAS CORPUS........................    1-23

A.    INFORMATION ABOUT CONVICTION AND SENTENCE..........    2-4
B.    GROUNDS FOR RELIEF.................................    4

1. Petitioner is unlawfully restrained of his rightful liberty under the Fifth and Fourteenth Amendments to the United States Constitution (due process) where he was denied parole for the Sixth (6) time by the Board of Parole Hearings, (a) the decision denying him parole based **solely** on the commitment offense in light of exemplary conduct and behavior is a violation of Petitioner's State and Federal Due Process and Equal Protection Rights,(b) the decision denying parole was not supported by evidence having an indicia of reliability, the decision was without any relevant or reliable (some) evidence to support the Board's conclusion that releasing Petitioner onto supervised parole would endanger public safety, (c) the hearing was adjudicated pro forma in violation of petitioners liberty interest under both his State and Federal Rights to Due Process.

2. The Determinate Sentence Law (UDSA of 1976) is Not Applicable To Indeterminately-Sentenced Prisoners Sentenced Under Section 1168, Subd.(b), Penal Code, And The Failure Of The Board To Apply The Law Correctly Deprives Petitioner Of His Federally-Protected Liberty Interest To Parole.

### Supporting Facts:

A.    Introduction............................................    5-6
B.    The Parole Hearing......................................    6
C.    Lower Court Proceedings.................................    6-9
D.    Jurisdiction of the United States District Court........    9-10
E.    The Commitment Offense..................................    10-12
F.    Mr. Parker's Preconviction History......................    12-13
G.    Postconviction..........................................    13-15
H.    Parole Plans............................................    15
I.    Psychological Evaluations...............................    16-17
J.    Life Prisoner Evaluations...............................    17-18
K.    Mr. Parker Met The Regulatory Criteria For Parole , the
      Commitment Offense Cannot Be Continuously Relied upon to
      Deny Parole After A Long Period Of Time, And,In Face Of
      Exemplary  Conduct and Behavior........................    18-20
L.    The Law Applicable To Indeterminately- Sentenced
      Prisoners..............................................    20-21

- i -

                                                              **pages**
M.      Summary................................................ 21-22
N.      Relief Sought By This Petition......................... 23


VERIFICATION.................................................... 24

DECLARATION OF SERVICE BY U.S. MAIL............................ 25

MEMORANDUM OF POINTS & AUTHORITIES (SEPARATE COVER)

EXHIBITS A-G (SEPARATE COVER)

**EXHIBIT INDEX**

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| A. | 2004, 2005, 2006 LIFE PRISONER EVALUATION | 6,12,13,15,17 |
| B. | 2006 BPT PAROLE HEARING TRANSCRIPTS | 6,7 |
| C. | PETITION FOR REVIEW - CALIFORNIA SUPREME COURT | 8 |
| D. | 2003 LIFE PRISONER EVALUATION | 12, 13, 17 |
| E. | 2006, 2005 MENTAL HEALTH EVALUATION | 6,7,13,16,17 |
| F. | 1996, 1998, 2000 MENTAL HEALTH EVALUATION | 13, 17 |
| G. | CHRONOS & CERTIFICATES & OTHER DOCUMENT IN SUPPORT OF PAROLE | 13, 15 |

**APPENDIX:**

Appendix 1. Contra Costa County Superior Court denial of Petition for Writ of Habeas Corpus

Appendix 2. The First Appellate District Court denial of Petition for Writ of Habeas Corpus

Appendix 3. California Supreme Court denial of Petition for Review.

//////

1  **CLIFFORD LELIKONA PARKER**
   CTF - Central B-226U
2  P.O. Box 689
   Soledad, CA 93960-0689
3  Prison Number: J-43369
   Petitioner In Pro Se
4

5  _____

6

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9

10 CLIFFORD LELIKONA PARKER,        )      Case No. _____
   CDCR #J-43369,                   )
11                  Petitioner,     )      Cal.S.Ct.No.  S152138
                                    )
12                                  )
                                    )
13       v.                         )      **PETITION FOR WRIT OF
                                    )      HABEAS CORPUS BY A
14                                  )      STATE PRISONER.**
                                    )
15 BEN CURRY, Warden,               )      [28 U.S.C. §2254]
   Correctional Training Facility,  )
16                                  )
                    Respondent.     )
17                                  )
                                    )
18 _____
   _____
19

20     Petitioner, **CLIFFORD LELIKONA PARKER,** Petitioner, in pro se, submits

21 this Petition for Writ of Habeas Corpus. Petitioner is presently in custody

22 of the Respondent and is unlawfully restrained of his liberty by the

23 California Board of Parole Hearings. Petitioner alleges that the State

24 Courts' decisions denying his petition were an unreasonable application

25 of and contrary to federal constitutional law as defined by United States

26 Supreme Court precedent, as set forth in his separate Memorandum of Points

27 & Authorities.

28                              - 1 -

Petitioner separately submits a motion to proceed with this modified format rather than the Court's standard form petition for pro se prisoners. Petitioner asserts that the form petition anticipates that the prisoner is challenging the original conviction and is confusing for challenges against the parole board. Further, Petitioner asserts that the form unfairly limits his ability to set forth his claims. This Petition format accurately follows the standard informational form.

A.    **Information about your conviction and sentence (Exhibit A)**

    1.    What sentence are you challenging in this petition?

        (a) Name and location of court that imposed sentence.

    <u>Contra Costa County Superior Court</u>  <u>Martinez, California</u>
            Court                   Location

        (b) Case number, if known  <u>    933442-0    </u>

        (c) Date and Terms of sentence  <u>12-09-94 Life w/parole</u>

        (d) Are you now in custody serving this term?  <u> Yes </u>

        Where/  <u>Correctional Training Facility, POB 689, Soledad, CA</u>
             (Name of Institution)        (Address)

    2.    For what crime were you given this sentence?

        <u>Penal Code §209(b); §211 (Kidnap for Robbery)</u>

    3.    Did you have any of the following?

    Arraignment: Yes <u> X </u>    Preliminary Hearing <u>     </u>

    Motion to Suppress:  Don't Know <u> X </u>

    4.    How did you plead?  Not Guilty <u> X </u>

    5.    If you went to trial, what kind of trial did you have? Jury <u> Yes </u>

    6.    Did you testify at your trial? <u> NO </u>

- 2 -

7.    Did you have an attorney at the following proceedings:

(a)    Arraignment                          Yes X  No ___
(b)    Preliminary Hearing                  Yes ___ No ___ (Indicted)
(c)    Time of Plea                         ___ No plea ___
(d)    Trial                                Yes X  No ___
(e)    Sentencing                           Yes X  No ___
(f)    Appeal                               Yes X  No ___
(g)    Other post-conviction Proceeding     Yes ___ No X

8.    Did you appeal your conviction?    Yes

       (a) If you did, to what court(s) did you appeal?

Court of Appeal, 1st Appellate:   09-18-96 #A06899 Judgment Affirmed

Supreme Court of California:   Petition for Review, denied 08-31-05
                                                    #S056966

Any other court:    No

       (b) if you appealed, were the grounds the same as those that
           you are raising in this petition?

           NO - Admissibility of defendants statements; Discovery
                Violations.

       (c) Was there an opinion? NO
       (d) Did you seek permission to file a late appeal under Rule
           31(a)?    NO. Not applicable to this petition.

9.    Other than appeals, have you previously filed any petitions,
      applications or motions with respect to this conviction in
      any court, state or federal?
      Yes ___ No  X

**Petitioner's Note:** This petition concerns a challenge to a decision
by the Board of Parole Hearings, not to his original conviction. The
following answers to the remainder of question 9 are relative to the
State exhaustion of the claims raised in this petition.

**(a)    Lower Court Proceedings:**

I.    Name of Court:  Contra Costa County Superior Court, Martinez,
                      California

      Type of Proceedings:   Petition for Writ of Habeas Corpus

      Filed: _____ , Case No.  061318-2

      Grounds Raised (Be brief but specific:)

    a)    Petitioner's denial of parole from the Board of Parole Hearings was not supported by some evidence. The continuous use of the commitment offense to justify unsuitability is a due process violation. The Board did not consider all relevant postconviction factors relevant to showing suitability for parole. Petitioner also contended that the consideration of a crime petitioner was acquitted to justify parole denial is also a due process violation.

        Result:_ Denied_ (see **Appendix 1**) Date of Result: _12-7-06_

II.    Name of Court: _ Cal. Court of Appeal, First Appellate District_
       Type of Proceeding: _ Petition for Writ of Habeas Corpus_

    a)    A continued reliance of the Commitment offense is a due process violation. The Board did not consider all relevant and reliable Postconviction evidence in favor of petitioner. The Board can not impose a greater punishment that authorized by the Jury. Reliance on opposition from the victims' next-to-kin does not establish a fact relevant to Petitioner's suitability.

        Result: ___ Denied (see **Appendix 2**) Date of Result: _4-4-07_

III.   Name of Court: _ California Supreme Court_
       Type of Proceeding: _Petition for Review_

    Grounds Raised (Be brief but specific):

    a)    The Board's decision was arbitrary and capricious. There was no evidence having an indicia of reliability to support a finding of parole unsuitability. The hearing was adjudicated pro forma in violation of petitioner's state and federal rights to due process.

        Result: : ___ Denied (see **Appendix 3**) Date of Result: _6-27-07_

  **(b)**  **Is there any petition, appeal or other post-conviction proceeding now pending in any court? Yes X No ___**
     Name of Case: _Parker v. Solis, Ninth Circuit Court of Appeals_ ,

        Case No. _07-15330_

        Filed: _2-12-07_ Briefing Issued: _7-29-07_

        Status: _ Opening brief due  9-7-2007_

//
//
//

- 4 -

**B.    GROUNDS FOR RELIEF**

Claim One: Petitioner has made three factual allegations regarding his primary claim of unlawful restraints of his liberty. They are:

> 1. Petitioner is unlawfully restrained of his rightful liberty under the Fifth and Fourteenth Amendments to the United States Constitution (due process) where he was denied parole for the Sixth (6th) time by the Board of Parole Hearings, (a) the decision denying him parole based **solely** on the circumstances surrounding the commitment offense after a substantial period of time and in light of exemplary conduct and behavior in a violation of Petitioner's State and Federal Due Process and Equal Protection Rights, (b) the decision denying parole was not supported by evidence having an indicia of reliability, the decision was without any relevant or reliable (some) evidence to support the Board's conclusion that releasing Petitioner onto supervised parole would endanger public safety, (c) the hearing was adjudicated pro forma in violation of Petitioner's liberty interest under both his State and Federal Rights to Due Process.

> 2. The Determinate Sentence Law (USDA of 1976) is Not Applicable To Indeterminately Sentenced Prisoners Sentenced Under Section 1168 subd.(b), Penal Code, and The Failure Of The Board and State Courts' To Apply The Law Correctly Deprives Petitioner Of His Federally-Protected Liberty Interest To Parole.

**Supporting Facts:**

**A.    Introduction**

On June 8, 2006, Petitioner Clifford Lelikona Parker (hereinafter "Petitioner" or "Mr. Parker") appeared before the California Board of Parole Hearings (herein after "BPH" or "Board") for the sixth time after having served 15 years incarcerated for the crime of kidnapping for robbery (Penal Code §209(b):§211) as of this petition on a sentenced of Life with

- 5 -

1  possibility of parole (7 years to life). He received 44 months jail time.

2  (see **Appendix 1**).

3      Petitioner appears before this Court seeking habeas relief from

4  unlawful restraint by the Respondent. He has been imprisoned, including

5  pre- and post-disposition credits from July 15, 1992, for a total term

6  of 21 years, 14 years past his minimum term of 7 years. He entered the

7  prison with a parolable sentence pursuant to Section 1168(b), and Section

8  209, Penal Code. Petitioner minimum eligible parole date is May 5, 1998).

9

10  **B.**    **The Parole Hearing**

11      On June 8, 2006, Petitioner appeared before the Board of Parole

12  Hearings for the 6th time. He has an excellent Life Prisoner Evaluation

13  report **(Exhibit A)**. He has an excellent Psychological Evaluation Report.

14  **(Exhibit C)**. He was found unsuitable for parole based **solely** on 1) the

15  unchanging factors of the commitment offense. The denial deferral  was for

16  1-year. **(Exhibit B, BPT Hearing Transcript, p.69)**

17      Petitioner did not administratively appeal the decision because the

18  board repealed all regulations for administrative appeals regarding

19  parole hearing. (15 CCR §§2050-2057.)

20  **C.**    **Lower Court Proceedings**

21      Petitioner filed a Petition for Writ of Habeas Corpus in the Contra

22  Costa County Superior Court, Case No. 061318-2, challenging the Board's

23  decision denying Petitioner suitability at his June 8, 2006 hearing. The

24  court did not issue an Order for either an informal response or a formal

25  Order to Show Cause. On December 7, 2006, the Court denied the petition.

26  (see **Appendix 1**.) In its opinion, the court found that there was no

27  evidence to support the Board's findings other than on the gravity of

28  - 6 -

of the commitment offense. The court noted the Board's assessment that the commitment offense was especially cruel and callous, and one that was carried out in a dispassionate and calculated manner in which Petitioner demonstrated an exceptionally callous disregard for human suffering.

The court noted that the hearing panel opined that Petitioner's lack of criminal history, his social history, his institutional adjustment and programming, his parole plans and his marketable skills all indicated that Petitioner was suitable for parole. The court also noted that the psychological evaluation was also pro-parole. The Board stated the following: "Petitioner's institutional behavior and his demeanor were "outstanding". (**Ex. B, p.71-75**) "Petitioner has participated in a wide variety of programs" (**Id. p.36-40**) "Petitioner has marketable skills in meat cutting. (**Id., p.33-34, 37, 72, 74**). He had received a Home Inspection Certificate. (**Id. p.32, 36, 45, 74**). Petitioner has no adult or juvenile criminal history. (**Id., p.72**) Petitioner has no disciplinary 115 chrono's . The BPH considered Petitioner's parole plans commenting that they had rarely seen better parole plans. (**Id., p.73**) Petitioner had residential and employment plans. Finally, the BPH remarked that the psychological report concluded that Petitioner was a low risk. The report concluded that Petitioner did not pose a security risk at all and posed less risk to society than the average citizen in the community. (**Id., p. 42, 72, Ex. B**)

In denying the petition, the court determined that the Board was justified in finding Petitioner unsuitable based **solely** on the commitment offense. The Court relied upon elements of the crime that Petitioner had no responsibility for. The court stated, A parole denial may be properly

based on the nature of the commitment offense alone. (In re Dannenberg, (2005) 34 Cal.4th 1061, 1094. In order to support a finding that Petitioner's offense was committed in an especially heinous, atrocious or cruel manner there must be "some evidence" that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [Petitioner] of the offense for which he is confined. (In re Dannenberg, supra at p.1071, 1094; In re Rosenkrantz (2002) 29 Cal.4th 616, 682-683). In Petitioner's case the court determined that there was some evidence on the record that Petitioner's crime was beyond the minimum elements. That conclusion was based on the actions of Petitioner's co-defendant's. (See Memorandum, infra for more indepth discussion of culpability). The Dannenberg court emphasized throughtout its opinion that the Board must give the prisoner "individualized consideration". (Dannenberg, 23 Cal.Rptr.3d at 430-432, 434). What the Board fails to distinguish or acknowledge in their arguments, or in the exercise of their discretion, is that petitioner's "suitability" for parole must be determined based upon petitioner as an individual and not upon the acts of his co-defendant's or anyone else.

The court further emphasized "While denial may be based on the commitment offense alone, the predictive value of the commitment offense may be very questionable after a long period of time." The court determined in comparison to three cases where the passage of time outweighed the elements of the commitment offense, that petitioner's time was not sufficient enough to warrant the same result. In comparing the three cases to petitioner's time frame, the court should have came to the same conclusion in petitioner's case. The case of In re Scott, (2005) 133 Cal. App. 4th 573, 579. (18 years lapsed on a 17 years to life); In re Elkins,

- 8 -

144 Cal.App.4th 475, 498 (26 years lapsed on a 20 years to life); Martin v. Marshall, (2006) 431 F.Supp.2d 1038 (26 years lapsed on a 25 years to life). Here, Petitioner has served 15 years on a sentenced of 7 years to life sentence.

The court denied the petition on the basis that the Board's findings of the heinous nature of the crime, even if Petitioner was not convicted of participation in the actual murder of victim Wainwright, was supported by some evidence.

A new petition to the Court of Appeals for the First Appellate District, Division One, filed January 31, 2006, after informal pleadings, the court on April 4, 2007 issued a summary denial. **(Petition Appendix 2).**

A Petition for Review to the California Supreme Court, resulted in a summary denial on June 27, 2007. **(Appendix 3).** The Petition is attached as **Exhibit C.**

Petitioner alleges that the State court's decisions were an unreasonable application of and contrary to federal constitutional law, and that the Board's denial violated his Fifth and Fourteenth Amendment rights to due process of law.

**D.    Jurisdiction of the United States District Court**

This Court has jurisdiction pursuant to 28 United States Code section 2254 to entertain a federal petition for writ of habeas corpus by a state prisoner alleging that he is currently imprisoned and that his continued restraint is unlawful.

This Court has federal-subject matter jurisdiction over any claim "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §2254(a)(petition must claim that the prisoner is held "in

- 9 -

custody in violation of the Constitution or laws or treaties of the United States"). The Fifth and Fourteenth amendments prohibit the government from depriving a prisoner of life, liberty, or property without due process of law. A prisoner claiming a due-process violation must allege deprivation of a constitutionally protected liberty or property interest, which can be created by a state statute, and denial of adequate procedural protections. Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir.2003). A federal constitutional claim confers subject-matter jurisdiction on district courts unless the claim's "unsoundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject and leave no room for ... controversary." Hagans v. Lavine, 415 U.S. 528, 536-38, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

Petitioner possesses a federally protected "expectancy of release" which is a liberty interest established by mandatory and presumptive language in the California Penal Code section 3041 and Board regulation 15 Cal.Code of Regulations, Div.2, BPH Rules, sections 2281 et seq.

Petitioner has been deprived of those liberty by an arbitrary, capricious, and standardless process applied to his parole decision at issue here.

## E.    The Commitment Offense

The summary of the commitment offense is taken from the September 2004 Life Prisoner Evaluation made by the Department of Corrections [and Rehabilitation]. The victim in this case was Walter Wainwright, age 34.

> Inmate Parker and the victim, Walter Wainwright, were civilian employees of the Navy out of Alameda Naval Air Station. They worked as suppliers for a vending machine company. On July 14, 1992 the victims' supervisor became concerned when the victim did not return to

work at 10:30 or 11:00 a.m. to make his scheduled
cash drop. He was last seen at 10:00 a.m. that morning
by one of his fellow employees. It was estimated that
he had approximately $4,000.00 in his possession.
Contra Costa Sheriff's officers received a complaint
that, at approximately 4:30 p.m. on July 14, 1992,
a man with tape on his mouth and bound hands was locked
in the trunk of the 1977 Ford Maverick. Witnessess
indicated that they saw the vehicle enter an apartment
complex at 15690 Crestwood, #401. When they first
saw the vehicle there was three occupants in the car.
A maintenance  man observed the victim in the trunk
of the car. He had his mouth duct taped and his right
arm appeared to be bound behind his back. His left
arm was free and he was terror stricken. Before the
maintenance man could go to the victim's aid, Parker
ran out of the apartment and slammed the trunk on
the victim's head, he and one other person then drove
off. Other witnesses saw Parker and another person,
described as a Hispanic man taking blankets, boxes,
and money bags out of the apartment and putting them
into the car. The car was identified as belonging
to Parker and it was found that he was a resident
of the apartment from which he was seen carrying
various articles. The sheriff's department eventually
found that Parker was an employee for the Federal
Government in Alameda. On July 15, 1992 the connection
between Parker and the victim was made and he was
arrested on this date. Initially Parker indicated
that the whole situation was a joke an apologized
for any inconvenience. He claimed that he, his brother,
and Frank Wilson (crime partners) had gotten drunk
with a guy known to him as "John". He claimed tha
a bet was made about how quickly John could get out
of the trunk of Parker's car. On July 17, Frank Wilson
was arrested an stated that the victim had been
kidnapped, and was originally the result of a botched
robbery attempt by himself, Parker, and Parker's
brother, Lamar. He stated that he and Lamar abducted
the victim in Oakland, stripped the van of its safe
and all the money, and transported the victim to
Fairfield in Parker's vehicle. In the meantime, Parker
returned to work at the Naval Air Station in Alameda.
Frank Wilson and Lamar Parker returned to Parker's
apartment in San Pablo where they unloaded the bounty.
They then went to the Naval Air Station  with the
victim still secured in the trunk and picked up Parker
from work. All three returned to the apartment. This
was where the victim nearly escaped. It was at that
time Parker came down from the apartment and closed
the trunk on the victim. At that point Frank Wilson
did not want anything to do with them. Parker claimed
that he and Lamar went to Wilson's house in order
to get Wilson to help them with the victim but they

- 11 -

couldn't find Wilson. At this point they rented a Motel room in Berkeley. Parker claims they walked the victim into the room and he was lying on the floor with duct tape still on him. (Source: POR, pages 2 & 3).

**(Exhibit A,** Life Prisoner Evaluation Report, September 2004 Calender, at page 1, Section I.A.1. Petitioner's statement at Section (I.A.2,p.2)

The Life Prisoner Evaluation of 2004 lists as "Aggravating Factors" that, 1) Prisoner had a special relationship of confidence and trust with the victim; 2) Prisoner had opportunity to cease but continued with the crime; 3) Murder committed to prevent detection of another crime. (Ibid., LPE p.4) It should be noted that Petitioner was acquitted of any and all participation in the actual murder of Wainwright.

The LPE lists as "Mitigating Factors" that 1) Prisoner has minimal or no history of criminal behavior.[1]

Mr. Parker was convicted by jury of Kidnap for Robbery and sentenced to a term of 7-years-to-life. He was acquitted of murder. He was sentenced to a term prescribed by law under Penal Code, Section 209(b), Section 1168, subd.(b), and Section 3041 (carrying a minimum parole eligibility period of seven years). **(Exhibit A,** LPE p.1)

**F.    Mr. Parker's Pre-conviction History**

Petitioner Parker has no pre-conviction criminal history. There is no indication in the record of any unstable social history, nor any pre-

---

[1] The LPE of May 2003, **Exhibit D,** listed 1) the prisoner was a passive participant in the commissioning [sic] of the crime, and 2) the prisoner participated in the crime under partially excusable circumstances which do not amount to a legal defense.

- 12 -

conviction psychological factors that might indicate mental instability. (Exhibit E, 2006 & 2005 Mental Health Evaluations) (See also Exhibit F, Mental Health Evaluations, years 1996, 1998, 2000; and Exhibit A, 2004 2005 and 2006 Life Prisoner Evaluations; and Exhibit D, 2003 Life Prisoner Evaluation).


### G.    Postconviction History

Petitioner Parker has been an exemplary prisoner. His total negative record consist of A CDC-128A for "failure to take prescribed medication," which is a dubious record at best in light of an inmate's right to refuse to take any medication. 15 Cal.Code of Regulations, Div.3, CDC Rules, §3351 (Inmate Refusal of Treatment) [(a) Health care treatment, including medication, shall not be forced over objection of a mentally competent inmate..."]. He has no disciplinary infractions.

During his incarceration, Mr. Parker has participated in excessive amounts of education, therapy, and self-help programs to the extent possible (considering the ongoing lockdowns at the prison due to violence, staff training and overcrowding issues), and has achieved the following: (Se Exhibit G, Chronos and Certificates.)

> 1.    Diploma: The School of Home Inspection Diploma "The Professional Home Inspection Program. March 25, 2004, from the Professional Career Development Institute, 15 courses, from August 8, 2003 to January 20, 2004.
>
> 2.    High School Equivalency Certificate, Department of Education, State of California, December 19, 1996.
>
> 3.    Introduction to Business Certificates, Semester 1 & 2, Valley Adult School, June 5, 2006.
>
> 4.    Entrepreneurship Course Certificate, Valley Adult School, June 5 2006.
>
> 5.    Real Estate Principles & Practices, Valley Adult School, September 26, 2005.

- 13 -

6.    Christian Basic Bible Class Certificate, 12 week course, Central Chapel, December 22, 2005

7.    Prison Fellowship Class called "Boundaries" Certificate, Central Chapel, June 11, 2005.

8.    Great Truths of The Bible Certificate, Crossroads Bible Institute, May 10, 2005.

9.    Family Effectiveness Training and Anger Management Certificate, Seven Week Course, February 24, 2005

10.    Six Hour Seminar on Sexual Purity Certificate, Central Chapel, February 12, 2005.

11.    30 Certificates of Achievements, from Federal Emergency Management Agency (FEMA), for Homeland Security, signed by Stephen G. Sharro, Director, Training Division, United States Fire Administration.

12    Certificate of Appreciation for Outstanding Work for Easter Banquet, April 17, 2004.

13.    Certificate of Appreciation for Outstanding Work for Christman Banquet, December 12, 2004.

Chrono for Appreciation for Thanksgiving Meal Preparation, November 26, 2005.

15.    Certificate of Completion for a course call "Way to Happiness" , Criminon Studies. December 8, 2004.

16.    Certificates in Inmate Peer Education Programs, for course completion in infectious Diseases, dated 4/14/04, and 3/24/04. 10/25/99.

17.    Certificate of Completion: Impact Program, awarded October 16, 2000, awarded to commend Mr. Parker "for his endeavor to increase his awareness and empathy for the survivors of crime."

18. Warden's Community Service Award, December 16, 2001, for recognition of "many hours of service, teamwork, and coordination rendered on behalf" of CTF Children Holiday Festival (2 certificates). A second award for this event was issued by the institution Community Resource Manager december 15, 2001. A third Certificate was awarded for this event by two Correctional Counselor II (supervisors) for this event.

19.    Certificate of Completion for a 12 week course called "Anger Management", Central Chapel, December 22, 2005.

20.    Certificate awarded by the institutions Mens Advisory Council in April 2001 in recognition of Mr. Parker support of the "Boys & Girls Clubs of the Sal    Valley".

- 14 -

21, Chrono from the Food Service Butcher Shop, commending Mr. Parker for obtaining the necessary marketable skills in meatcutting and shipping/handling to obtain respectable employmeny upon released. October 10, 2005.

22. Chrono for being an active and insightful participate in Staff Psychiatrist, D. Woods. M.D., self-esteem group. January 19, 2006.

23. Certificate of Baptism, awarded May 13, 1998.

24. Certificate of Achievement: "Seven Habits of Highly Effective People", dated 8/12/97, signed by Warden Henry.

25. Certificate of Achievement: "Framework for Recovery", dated 8/21/97, signed by Warden Henry.

26. 7 Certificates of Awards, Creekside Recreation Department, 1996-1998.

27. Numerous chronos from Alcoholics Anonymous and Narcotics Anonymous sponsors from 2000 to present, for positive participation.

28. Chronos for service to the free community.

29. By-laws of A.I.G.A. (Asian/Pacific Islander Group), of which Mr. Parker is Vice-President, a program of community and personal development services.

30. Miscellaneous documents in support.

31. For more Certificates & Chronos See **Exhibit G.**

**H.** **Parole Plans**

Petitioner's parole plans are solid and viable he will be working with Ruiz and Juarez Trucking in Fremont, California. He is also interested in working in the Home Inspection field per his completed work from the Professional Career Development Institute and the Federal Emergency Management Agency. He will parole to his mother's residence in Richmond, California. (**Exhibit A, Life Prisoner Evaluation,** dated September 2004, section IV.) Mr. Parker also submitted to the Board an alternative plan of residency and employment. (See **Exhibit G.**).

- 15 -

I.    **Psychological Evaluations**

a)    **May 26, 2006 Psychological Evaluation by Dr. M. Macomber, Ph.D**

Current Diagnostic Impressions:    No  Contributory Clinical  Disorder
                                   No  Contributory Personality Disorder
                                   No  Contributory Physical Disorder
                                   Currect GAF: 90

**ASSESSMENT OF DANGEROUSNESS**

A. In considering potential for dangerous behavior
in the institution, it is evident that he does not
poses a security risk in any way. He has remained entirely
disciplinary free throughout his 14 years of
incarceration. In comparison of other inmates, violence
potential is definitely below average.

B. In considering potential for dangerous behavior
when released to the community, the Level of Service
Inventory-Revised was administered. This is an
actuarial measure that assesses criminal history,
substance abuse history, and current attitudes and
achievements in order to determine current risk level
on parole. He obtained a score of 0.8 cumulative
frequency for prison inmates. This score means that
if 100 men were released on parole, he would be
expected to do better on parole than 99 of them. This
is an extremely low risk level. As a result, he poses
no more risk to society than the average citizen.
In fact, due to his growth and maturity over the years,
he poses less risk to society than the average citizen
in the community.

C. There are no significant risk factors in this case.

**(Exhibit E, Mental Health Evaluation)**


b)    **October 11, 2004, Psychological Evaluation by Dr. S. Sexton, Ph.D**

Current Diagnostic Impressions: No Contributory Clinical Disorder
                                No Contributory Personality Disorder
                                No Contributory Physical Disorder

This inmate's potential for violence in the community
is far below the average parolee. His threat of
violence in the community is approximately average
when compared to the non-offender group of a similiar
age. Drugs and alcohol have never been an issue for
inmate Parker. This inmate has attended an excessive

- 16 -

amount of self-help programs. He currently continues to participate as a prosocial activity, but is clearly not needed for psychological growth at this time. It is this clinicians' opinion that should the inmate be granted parole he will satisfactorily complete his parole period with little or no difficulty.

**(Exhibit E, Mental Health Evaluation)**
**(Exhibit F,** contains mental health evaluations for 1996, 1998, and 2000)

## J.    Life Prisoner Evaluations

**(Exhibit A,** Life Prisoner Evaluation, November 2005 Calendar, at page 2, Section IV.C. under **Assessment,** the writer stated):

Inmate Parker has been incarcerated over 10 years, he has matured and shown marked progress towards maintaining an overall positive attitude. He has been able to maintain himself relatively disciplinary-free since 7/23/989. Inmate Parker's transition to the community would be greatly enhanced by the inclusion of actual employment offers. This writer does not foresee any problems provided the support and employment letters are submitted prior to the scheduled hearing. (Signed by: Correctional Counselor I, F.I. DeGuzman; Correctional Counselor II, R. Leach; Facility Captain, R. Pope; Classification and Parole Representative, D.S. Levorse)

**(Exhibit A,** Life Prisoner Evaluation, September 2004 Calendar, at page 1, Section I.A.1. Petitioner's statement at Section I.A.2, p.2; Under **Summary** at page 6, Section VI.A, the writer stated):

Considering the commitment offense, prior record, prison adjustment, this writer believes the prisoner would probably pose a low degree of threat to the public at this time, if released from prison. We had an extensive discussion about the commitment offense and Parker's role in said offense. He voiced a great deal of regret for the victims family in they were never able to locate the victims body. I feel he would help locate the victims body if he could. (Signed by: Correctional Counselor I, G. Williams; Correctional Counselor II, R. Leach; Facility Captain, R. Pope; Classification and Parole Representative, D.S. Levorse)

//

- 17 -

(**Exhibit D**,    Life Prisoner Evaluation, May 2003 Calendar, at page 5, Correctional Counselor L.R. BAKER, in the **Summary**, opined that Mr. Parker "would probably pose a low degree of threat to the public at this time if released from prison." Counselor Baker found some mitigating factors in the record regarding the offense with regard to Mr. Parker's sense of dependency on others he considered important in his life, and that the breakup with his girlfriend caused emotional difficulties that may have resulted in his being more easily manipulated by his older brother. Counselor Baker cited to the POR at page 13, which indicated a letter from a juror who stated she did not believe that Parker knew that the victim would be robbed and kidnapped at the time his brother and co-defendant Wilson picked him up at work.

### K.    Mr. Parker Met The Regulatory Criteria for Parole

Petitioner Parker appeared before the Board meeting the regulatory and statutory criteria for suitability for parole:

Section 2281(d):

(1) No Juvenile Record. Mr. Parker has no juvenile record.

(2) Stable Social History. Mr. Parker has had numerous long-term relationships with family and friends before and during his imprisonment. He has no history of unstable social relationships.

(3) Signs of Remorse. Mr. Parker has continually expressed his remorse for this crime. His expressions of remorse are well-documented in his file, including psychological reports, and on record at each Board Hearing.

(4) Motivation for Crime. The current offense is the result of a Kidnapping for Robbery resulting in a murder that Mr. Parker was acquitted of. There is no-dispute that the motivation for the crime was money, and

1  since Mr. Parker did not actually participate in the killing and was
2  somewhere else at the time the killing occurred, he cannot say what Lamar
3  Parker's motive was.

4          (5) Battered Women Syndrome. Not applicable.

5          (6) Lack of Criminal History. Mr. Parker has no other criminal
6  history.

7          (7) Age. At the time of the hearing Mr. Parker was 39 years
8  old, he is now 40, an age that greatly reduces the probability of
9  recidivism.

10         (8) Understanding and Plans for the Future. The 2006 Board panel
11 stated that "they rarely see better parole plans than Mr. Parker's.

12         (9) Institutional Behavior. Mr. Parker's institutional behavior
13 has been exceptional. He has a single minor administrative disciplinary.
14 He has no violent behavior. He has no incident of substance abuse. He
15 has no documentation that he ever disrespected correctional staff. He
16 has marketable skills. He has many years of self-help participation. He
17 has fully prepared for life among free society as a productive citizen.
18 His institutional behavior clearly indicates an enhanced ability to
19 function within the law upon release to parole.

20

21     The Board's only reason to deny parole that the superior court found
22 to be supported by "some evidence" is the commitment offense, just as
23 in every other hearing Petitioner has attended. Petitioner asks the Court
24 to acknowledge that the regulation only state: "Circumstances Tending
25 to Show " suitability or unsuitability. (§2281, (c),(d) Mr. Parker alleges
26 that the presence of no one factor is necessary dispositive of the question
27 of "some evidence", rather, the presence of all factors found true or

28                                    - 19

applicable are theoretically placed in the weighing-and-balancing process of the Panel's (Board) deliberations under the preponderance of evidence standard, not the "some evidence" standard. See Memorandum, infra. Mr. Parker believes, however, that the Board's weighing-and-balancing process is constitutionally defective because the process is pro forma omitting any standard of proof, and because the outcome is predetermined, despite the overwhelming evidence that the prisoner is suitable for parole.

Petitioner asserts until he takes responsibility for a crime which he was acquitted of by a jury, the Board will continue to hold pro. forma hearings which are constitutionally defective, a blatant violation of Mr. Parker's protected liberty interest under the 5th & 14th amendments of the United States Constitution.

### L.    The Law Applicable To Indeterminately-Sentenced Prisoners

Petitioner asserts that he is an indeterminately-sentenced prisoner sentenced under Section 1168, subd.(b), whose status, rights, and benefits accrue not only by Penal Code section 3041 (Stats 1976, c. 1139), but also by judicial decision that define the status, rights, and benefits of such prisoners. These decisions, most of which were rendered prior to the Uniform Determinate Sentence Act of 1976 (DSA or DSL), still apply to Section 1168(b) prisoners, with the exception being cases like In re Fain (1976) 65 Cal.App.3d 376 and In re McLain, 55 Cal.2d 77, 87 (1960), which defined the law then and concluded indeterminately-sentenced prisoners had no vested right to parole. UDSA Section 3041 changed that status.

Petitioner's parole applications are not being properly adjudicated by the law that accurately applies to him. It is apparent that the emphasis by the current Board in denying Petitioner suitability is on

punitive consideration rather than by the requisite dynamics of post-conviction rehabilitation. The shift in emphasis by the DSL applied to Section 1170, which intended that a convicted criminal was merely to be punished for his offense by a tit-for-tat formula set forth by statute, not by the parole authority. Section 1168(b), however, in concert with Section 3041 and its public safety concerns, remained an evaluation of the prisoner's rehabilitation.

Mr. Parker's record, preconviction and postconviction, clearly indicate that he no longer poses a risk of danger to public safety. He has served the minimum period of punishment required for his offense, and more, and the Board's continual emphasis on his commitment offense as cause for denial of parole violates due process under the standards.

Finally, Mr. Parker's parole decision indicates that the Board's **sole** reliance on the commitment offense and elements of the offense that he was acquitted of, is a decision that does not comport with due process because the Board does not apply a standard of proof, i.e., it ignores substantial evidence of lack of risk to public safety for static factors and unsupported findings. Mr. Parker is entitled to a hearing that is not pro forma with a predetermined outcome and where the Board applies a standard of evidence, such as the preponderance of relevant and material evidence, to accurately determine the outcome.

**M.      Summary**

The question of whether Mr. Parker knew that the victim was going to be murdered or not is the only factor in dispute, and it may never be resolved to everyone's satisfaction. There is no evidence that Mr. Parker 'master-minded' the kidnapping, robbery, or murder. The evidence particularly the extensive criminal history of Lamar Parker, Clifford's

brother, indicates that Lamar was a career criminal who engaged co-defendant Wilson and Clifford in the crime.

Notwithstanding the dispute, the fact is that Mr. Parker was convicted by a jury of Kidnapping for Robbery, which is a sentence which prescribes a minimum parole ineligibility period of seven years. (Penal Code §3046) Mr. Parker became eligible for parole on May 5, 1998. He has attended six parole suitability hearings. The commitment offense has been applied to deny him parole at each of those hearings. His postconviction record has been exemplary and exceptional. He meets all the applicable criteria for parole under subd.(d) of §2281, and his psychological and other forensic evaluations and documents of support all strongly indicate that parole is appropriate at this time.

The superior court found that the Board's reliance on the commitment offense to justify parole denial was supported by the evidence. However, the superior court's reliance on the "some evidence" standard was an unreasonable application of federal precedent regarding the standard of evidentiary sufficiency in this case. The State's decisions were contrary to well established federal precedent set by the United States Supreme Court, as defined or applied by the lower federal courts.

Petitioner alleges that the Board's parole process was constitutionally defective, that it was arbitrary and capricious, that the Board has applied DSL punitive emphasis improperly when the emphasis must be on the rehabilitation of the offender, and that the Board simply cannot interminably deny parole based on the fact of the offense for which he was convicted, and especially on a murder committed by a co-defendant that the jury acquitted him of even being a principal in.

This Petition is supported by the separately submitted Memorandum of Points & Authorities, and exhibits submitted herewith.

**N.**    **Relief Sought by this Petition.**

WHEREFORE, on good cause shown, the Petitioner seeks the following relief:

1. An Order from the Court reversing the Board's decision denying Mr. Parker parole;

2. An Order from the Court directed to the Board ordering it to set Mr. Parker's release date;

3. An order releasing Mr. Parker from actual custody of the Department of Corrections & Rehabilitation;

4. Alternatively, an evidentiary hearing as to all issues of disputed facts pivotal to the success of the Petition;

5. For any further relief the Court deems equitable and just.


Dated: **8 - 8 - 07**


                    Respectfully submitted,



                    CLIFFORD L. PARKER

                    Petitioner in pro se

//

//

//

//

- 23 -

## **VERIFICATION**

I, Clifford L. Parker, CDCR #J-43369, being of sound mind, declare:

1.     I am the petitioner in the foregoing petition for writ of habeas corpus and the Memorandum of Points & Authorities submitted under a separate cover;

2.     That I have elicited the assistance of an experienced paralegal to assist me in the research in this case and the proper presentation of the claims I have identified and presented to the State courts in pro se;

3.     That I have read the petition and memorandum and know the contents to be true and correct, to the best of my knowledge and belief;

4.     That I believe I am unlawfully restrained of my rightful liberty and I bring these claims in good faith as to their legitimacy and bearing on the statutory question of my parole readiness;

5.     That I am asking the Court for the relief presented by this petition.

SWORN TO UNDER PENALTY OF PERJURY, this 8th day of August, 2007, at Soledad, California.


Respectfully submitted,

Clifford L. Parker

Petitioner in pro se

//
//
//

- 24 -

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015,5)

I, _____Clifford Lelikona Parker_____, declare:

I am over 18 years of age and I am party to this action.  I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California.  My prison address is:

Clifford L. Parker___, CDCR #:_J-43369____
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: B-226U_____
SOLEDAD, CA 93960-0689.

On ____August 8 , 2007____, I served the attached:

___

### "PETITION FOR WRIT OF HABEAS CORPUS"

___

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined.  The envelope was addressed as

follows:

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
San Francisco, CA 94102-3483

OFFICE OF THE ATTORNEY GENERAL
Attn: Supervising Deputy A.G.
455 Golden Gate Ave. Suite #11000
San Francisco, CA 94102

I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on __August 8 , 2007__ .

_____
Declarant

- 25 -

# APPENDIX 1

# APPENDIX 1

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
IN AND FOR THE COUNTY OF CONTRA COSTA

F I L E D
DEC - 7 2006

SUPERIOR COURT OF THE COURT
COUNTY OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____
_____, Deputy Clerk

In re Clifford Parker
On Habeas Corpus

_____/

No.061318-2

Decision on Pro. Per.
Petition for Writ of
Habeas Corpus;

Underlying Case
No. 923442-0

Petitioner is currently incarcerated in California state prison having been convicted in 1994 and sentenced to life with possibility of parole for kidnap for robbery (PC209(b).) He received a concurrent sentence of three years for robbery (PC211) but it was ordered stayed pursuant to PC654. Petitioner was charged with murder (PC187) with special circumstances (murder in the commission of robbery or kidnapping) but the jury found him not guilt.

Petitioner, his older brother (Lamar Parker) and another third party planned to rob Mr. Wainwright. (Ex. A, p.11-12.) Petitioner and the victim worked together as civilian employees at the Alameda Naval base. (Id., p.7, 19.) The victim was seen in the trunk of Petitioner's car, which had been left open while parked at or near Petitioner's apartment. (Id., p.8, 20.) The victim had his mouth bound with duct-tape, his right arm bound behind his back and he was described as appearing "terror stricken". (Id., p. 8.) At the request of his older brother, Petitioner ran out of his apartment and slammed the trunk on the victim's head. (Id., p.8, 12.)

Petitioner and another subject then entered the car and drove off. (Id., p.8.) The car was identified as belonging to the Petitioner. (Id.) Petitioner and his brother took the victim to a motel room in Berkeley where the victim was laid on the floor while still duct-taped. (Id., p. 10, 11.) The victim's body has never been recovered.

Petitioner filed a petition for writ of habeas corpus contending that the Board of Parole Hearings (BPH) unlawfully denied setting a parole date at his parole suitability hearing held on 6-8-06. The decision became final decision on 10-6-06. Petitioner's parole was denied for one year.

## I.    Contentions in the Petition

Petitioner challenges the BPH parole hearing on the basis that there was no evidence that Petitioner currently poses an unreasonable risk of danger to society. Petitioner contends that the BPH failed to consider all relevant postconviction factors relevant to showing suitability for parole and cannot continue to rely on the unchangeable fact of the criminal offense. Petitioner also contends that BPH's consideration of the commission of a crime for which he was acquitted (murder) violates the rule in Apprendi v. New Jersey (2000) 530 U.S. 466 and Blakely v. Washington (2004) 542 U.S. 296.] He contends these findings are being used to "enhance Petitioner's sentence."

## II.    Record of Hearing

For the purpose of this decision, Petitioner filed under exhibit A the transcript of the 6-8-06 parole hearing and BPH's final decision. Petitioner under exhibit B included the record of the psychological evaluations prepared by Dr. Macomber (5-26-06.)

## III.    Discussion

The court has read and considered the within matter and has determined that the writ of habeas corpus should be denied for the following reasons.

### (1)    Parole Hearing

Penal Code Section 3041(b) provides the BPH shall set a release date for state prisoners unless it determines that the gravity of the current convicted offense is such that consideration of public safety requires a lengthier period of incarceration. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if the panel determines that the prisoner will pose an unreasonable risk of danger to society if released from prison.

The standard for superior court review of the factual basis of a BPH parole release decision is whether there is "some evidence" to support the finding. (In re Rosenkrantz (2002) 29 Cal.4th 616, 658.) The BPH's decision should not be disturbed unless the BPH has acted arbitrarily or capriciously. Particular deference must be accorded to the BPH's factual determinations. (In re Ramirez (2001) 94 CA4th 549, 564.) The BPH need not recite every factor it considers in a parole hearing, particularly those it finds unpersuasive. (Id, p.571-572.) The importance attached to any circumstance or combination thereof, is left to the good judgment of the panel. (In re Rosenkrantz supra, 677-679.)

### (A)   The Commitment Offense

Petitioner contends that the circumstances of the crime and his post-conviction conduct "do not amount to some evidence" that he currently poses an unreasonable risk of danger if released. He further contends that the continuous reliance on the commitment offense after 15 years and six parole hearings to repeatedly deny him parole violates due process because the offense has "lost any predictive value." He further claims that the BPH improperly relied on the victim's opposition to parole as evidence.

A parole denial may properly be based on the nature of the commitment offense alone. (In re Dannenberg (2005) 34 Cal.4th 1061, 1094; In re Andrade (2006) 141 Cal. App. 4th 807.) In order to support a finding that Petitioner's offense was committed in an especially heinous, atrocious or cruel manner there must be some evidence that the "violence and viciousness of the inmate's crime" is greater than that which is "minimally necessary to convict [the Petitioner] of the offense for which he is confined. (Cal. Code Regs, Title 15, s.2402 (c)(1); In re Dannenberg supra at p.1071, 1095; In re Rosenkrantz (2002) 29 Cal.4th 616, 682-683.) Therefore there must be 'some evidence' of aggravating facts beyond the *minimum elements* of that offense. (Dannenberg, supra, p. 1095, fn. 16; In re Scott (2005) 133 Cal.App. 4th 573, 598.)

In the present case, there was some evidence on the record that Petitioner was unsuitable for parole based on the especially cruel and callous manner in which the offense of kidnap for robbery was committed. There was some evidence that the offense was carried out in a dispassionate and calculated manner (Cal. Code Regs, Title 15, s.2402 (c)(1)(B)), and in a manner that demonstrated an exceptionally callous disregard for human suffering. (Cal. Code Regs, Title 15, s.2402(c)(1)(D); In re Smith (2003) 114 Cal.App.4th 343, 367 [evidence of exceptional disregard for human suffering includes evidence the victim was tormented, terrorized or that Petitioner gratuitously increased or unnecessarily prolonged the victim's pain and suffering]; In re Scott (2004) 119 Cal.App. 4th 871, 892 [exceptional disregard for human suffering includes evidence that actions were calculated to induce terror in the victim].)

The robbery was planned. Petitioner used his own car. The victim was placed inside the trunk bound with duct tape on his mouth with his right arm bound. The victim was described as appearing "terror stricken." It was under these circumstances that Petitioner was seen slamming the trunk on the victim's head. He and another person then entered the car and drove away. Petitioner and his brother moved the victim to a motel room in Berkeley where the victim was laid on the floor while still duct-taped. The victim's body has never been recovered. Accordingly, there was some evidence that Petitioner terrorized the

victim and unnecessarily prolonged his suffering thereby showing an especially callous and exceptional disregard for human suffering.

While the denial may be based on the commitment offense alone, the predictive value of the commitment offense "may be very questionable after a long period of time." (In re Scott (2005) 133 Cal.App. 4th 573 595; In re Elkins 144 Cal. App. 4th 475, 498 [lapse of 26 years]; Martin v. Marshall (2006) 431 F. Supp. 2d 1038 [lapse of 26 years.]) In the present case, Petitioner's term is for life. CDC received him on 12-16-94 and his minimum eligible parole date was 5-5-98. (Ex. A, p.1.) The most recent parole hearing was on 6-8-06. Therefore, the period of time that has lapsed has not been long or significant.

Finally, Petitioner claims that the BPH improperly relied on opposition from the victim's family and District Attorney as evidence to deny Petitioner parole. The BPH properly considered all the relevant facts. Its decision was fully supported by the record and based on the guidelines in Cal. Code Regs, Title 15, s.2402 and PC3041. The BPH considered the testimony of Petitioner, his counsel and the statements of the district attorney as well as the letters from the victim's family. The BPH reviewed Petitioner's social history and criminal history. The psychological report and Petitioner's parole plans were also reviewed. The BPH reviewed his work performance, vocational training and his participation in self-help programs.

Therefore, a review of the BPH's decision indicates Petitioner received an individualized consideration to which he was constitutionally entitled. (In re Scott, supra, 899.) The facts of Petitioner's commitment offense demonstrate "some evidence" that the crime was committed in a manner that was aggravated beyond the minimum elements of the offense of kidnapping for robbery. Petitioner's crime of kidnapping for robbery was more egregious than commonplace. (In re Dannenberg, supra, at p.1071, p.1095, fn. 16.)

**(B)    Defendant's Institutional Post Conviction Behavior**

Defendant's postcommitment institutional behavior is relevant to his suitability for parole. Serious misconduct in prison is a negative factor. (Cal. Code Regs, Title 15,s.2402, (c)(6).) As well, participation in therapy or self-help while incarcerated is a criterion for suitability in that such institutional activity indicates an enhanced ability to function within the law upon release. (Cal. Code Regs, Title 15, s.2402(d)(9).)

The BPH concluded that Petitioner's institutional behavior and his demeanor were "outstanding." (Ex. A, p.71, 75.) Between 2005 and 2006 Petitioner had participated in a wide variety of programs including Real Estate Principles; Emergency Management program; FEMA; AIGA; Bible group; Prison

Fellowship; AA (since1998); NA (since 1998); Self-esteem group; Personal integration group; Anger Management; and Family Effectiveness Training. (Id. p.36-40.)

Petitioner had marketable skills in meat cutting. (Id., p.33-34, 37, 72, 74.) He had received a Home Inspection Certificate. (Id., p.32, 36, 45, 74.) Petitioner had no adult or juvenile criminal history. (Id., p.72.) Petitioner had disciplinary 115 chrono's. (Id.)

The BPH considered Petitioner's parole plans commenting that they had rarely seen better parole plans. (Id., p.73; Cal. Code Regs, Title 15, s.2402(d)(8).) These included arrangements for a place to stay at his mother and father's home in Richmond. (Ex. A, p.25, 73.) He also had a place to stay with his fiancé in Union City. (Id., p.27, 73.) Petitioner had primary employment as well as secondary and a third place of employment.  He had a trucking-driving job at Rouse and Juarez Trucking in Fremont; a job working with his father in Lamours building maintenance; and a job at "Bay Gee" Entrepreneur Enterprise (Id., p.23-24, 29-30.)

The BPH remarked that the psychological report dated 5-26-06 prepared by Dr. Macomber concluded that Petitioner was a low risk. The report concluded that Petitioner did not pose a security risk in any way and posed less of a risk to society than the average citizen in the community. (Id., p. 42, 72, Ex. B.)

Therefore having reviewed the record, the court concludes that the BPH considered all the relevant factors in reaching its decision and did not act arbitrarily.

## (2)  **Apprendi v. New Jersey (2000) 530 U.S. 466 [Apprendi] and Blakely v. Washington (2004) 542 U.S. 296**

Petitioner contends that BPH's consideration of the commission of a crime for which he was acquitted (first degree murder) violates the rule in Apprendi v. New Jersey (2000) 530 U.S. 466 [Apprendi] and Blakely v. Washington (2004) 542 U.S. 296 [Blakely] because these findings were used to "enhance Petitioner (sic) sentence."  He further contends that the result was to remove the case from the "standard sentence range" which in the context of indeterminate sentencing is the "matrix of proportional terms" under PC3041. The findings used to take the case out of that range violates Apprendi-Blakely. He contends that the BPH is precluded from making findings that punish him for crimes he was acquitted of and the BPH erred in not considering its matrix of base terms and his minimum term in order to arrive at a uniform term.

There is nothing on the record to support Petitioner's claim that the BPH, in finding Petitioner unsuitable for parole, considered the charge of murder for which he was acquitted. Evidence Code section 664 establishes a presumption that official duty has been "regularly performed" in parole proceedings. (In re McClendon (2003) 113 Cal.app. 4th 315, 323.) The presumption is only dispelled when the record affirmatively shows that the pertinent administrative body failed to apply the requisite standards. (La Costa Beach Homeowners Assn. V. California Coastal Com. (2002) 101 Cal.App. 4th 804, 820.)

In the present case, there is no affirmative indication that the BPH failed to apply the standards in the Cal. Code Regs, Title 15, section 2402 and PC3041. Based on the record, the BPH expressly limited its considerations in determining that Petitioner was unsuitable for parole to the commitment offense of kidnapping for robbery (PC209(b).). (Ex. A, p.1, p.7-12, 69-70.) Any reference by the BPH to the disappearance of the victim and Petitioner's role in that disappearance was in passing and did not govern the BPH final determination.

Nor has Petitioner established that the decisions in Apprendi and Blakely impose any constitutional right to a jury determination in proceedings before the BPH. Other than a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum has to be submitted to a jury not a judge and proved beyond a reasonable doubt. [Apprendi, p.496-497]. The statutory maximum is the maximum a judge may impose solely based on the facts reflected in the jury verdict or admitted by the defendant. [Blakeley, p.303-304.] These principles have no bearing on the determination of parole suitability by the BPH.

The BPH proceeded lawfully without comparing Petitioner's crime to other similar crimes or to its base matrices, or to the minimum statutory prison term. [Cal. Code Regs, Title 15, s.2403(a) [panel shall set a base term for each life prisoner who is found suitable for parole.] It found him unsuitable to receive a fixed release date based on evidence that the particular circumstances of the commitment crime, beyond the minimum element of his conviction, indicated the crime was committed in a dispassionate and calculated manner, demonstrating exceptional disregard for human suffering. (In re Dannenberg, supra, p. 1071, p.1098.)

## IV.   **Disposition**

Accordingly, the petition is denied.

Dated: _____, 2006

_____
Theresa Canepa
Judge of the Superior Court

Cc:   Petitioner
      No. 923442-0

      DRM/Parker/6-06

DRM/Parker6-06

STATE OF CALIFORNIA                                          DEPARTMENT OF CORRECTIONS

LEGAL STATUS

| CDC NUMBER | ALPHA ID | NAME | | TERM STARTS | ETHNIC |
|---|---|---|---|---|---|
| J-43369 | | PARKER, Clifford Lelikona | | 12-16-94 | Hawaiian |
| MAX RELEASE DATE | | | | MIN. ADJ RELEASE DATE GT CR LOST/AT LARGE/BAIL | PAROLE PERIOD |
| To Be Determined | | MEPD: | | | 5 Years |

BASE TERM ___Life_____ + ENHANCEMENTS __00-00_____ = TOTAL TERM _____Life_____

GOOD TIME CREDITS AVAILABLE (2931 PC)  (PC _____) + (BC _____)=_____

| PRE-PRISON CREDITS: | CASE NO | CC  9234220 |
|---|---|---|
| | 2900.5 PC | 877 |
| BPT HEARINGS: | 1203.03 PC | |
| DOC: | 2900.1 PC | |
| INIT: | CRC | |
| LIFE TERM STARTS: | MENTAL HEALTH | |
| | 4019 PC | 438 |
| | 2931 PC | |
| | POST SENTENCE | 6 |
| TOTAL PRE-PRISON CREDITS (DAYS) | | 1321 |

NOTIFICATION REQUIRED PER____P3058.6_____
NOTIFICATION REQUIRED PER_____
REGISTRATION REQUIRED PER_____

| DATE REC'D | CO.CASE NO. | CT. | CODE & OFFENSE | TYPE WPN | DATE OF OFFENSE | SENTENCE DATE |
|---|---|---|---|---|---|---|
| | | | | | | |

CONTROLLING PRINCIPAL AND CONSECUTIVE (INCLUDING ENHANCEMENT) OFFENSE(S):

| DATE REC'D | CO.CASE NO. | CT. | CODE & OFFENSE | TYPE WPN | DATE OF OFFENSE | SENTENCE DATE |
|---|---|---|---|---|---|---|
| 12-16-94 | CC 9234220 | 02 | P209(b) Kidnap/Robbery (Life) | | 07-14-92 | 12-09-494 |

**FOR PERMANENT RETENTION IN CENTRAL FILE**

DEFENSE ATTORNEY:  C. Hoehn / T. Thompson
INVESTIGATING AGENCY:  Contra Costa County Sheriff's Office

| NAME: | J-43369 | PARKER | LPU | 04-01-96 | WS:lw |
|---|---|---|---|---|---|

CDC 188C (6/94)

# APPENDIX 2

# APPENDIX 2

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 1



FILED
COURT OF APPEAL FIRST APPELLATE DISTRICT

APR 0 4 2007

In re CLIFFORD LELIKONA PARKER on Habeas Corpus.

DIANA HERBERT, CLERK
_____ DEPUTY CLERK

A116594
Contra Costa County No. 9234420

BY THE COURT:

        The petition for writ of habeas corpus is denied.

The justices participating in this matter were:

Presiding Justice Marchiano, Justice Stein and Justice Margulies

Date: _____

**MARCHIANO, P.J.**
_____ P.J.

orcc1a

# APPENDIX 3

# APPENDIX 3

Court of Appeal, First Appellate District, Div. 1 - No. A116594
**S152138**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re CLIFFORD LELIKONA PARKER on Habeas Corpus

The petition for review is denied.

SUPREME COURT
**FILED**

JUN 2 7 2007

Frederick K. Ohlrich Clerk

DEPUTY

GEORGE

Chief Justice