ORIGINAL

FILED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E-filing

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SBA

(PR)

Clifford Lelikona Parker,
CDCR #J-43369

          Petitioner,

      v.

BEN CURRY, Warden,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C 07 4215

CASE No.

MEMORANDUM OF POINTS &
AUTHORITIES IN SUPPORT
OF THE PETITION FOR WRIT
OF HABEAS CORPUS.

[28 U.S.C. §2254]

MEMORANDUM OF POINTS & AUTHORITIES

Clifford Lelikona Parker
CTF Central B-226U
P.O. Box 689
Soledad, CA 93960-0689
CDCR #J-43369
Petitioner in pro se

## TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES..................... 1-41

I.     STANDARD OF REVIEW............................. 2-4

II.    THE STATE COURTS DECISION WAS AN OBJECTIVELY
       UNREASONABLE APPLICATION OF, AND CONTRARY TO
       WELL-ESTABLISHED FEDERAL JUDICIAL PRECEDENT
       AS SET BY THE UNITED STATES SUPREME COURT........ 4

       A)  The Board's Hearing Was Constitutionally
           Defective................................. 4-17

III.   PETITIONER HAS A STATE AND FEDERAL PROTECTED
       LIBERTY INTEREST TO BE PAROLED.................. 17-18

IV.    A CONTINUOUS RELIANCE ON THE COMMITMENT OFFENSE
       (IMMUTABLE FACTS) TO JUSTIFY CURRENT
       DANGEROUSNESS IS A DUE PROCESS VIOLATION........ 18-26

       A) Individualized Consideration (Culpability).... 27-34

       B) Predictive Value............................. 35-40

V.     CONCLUSION..................................... 41

DECLARATION OF SERVICE BY U.S. MAIL

# TABLE OF AUTHORITIES

**pages**

## CONSTITUTION

United States Constitution:
    Fifth Amendment.................................................... basis
    Fourteenth Amendment............................................... basis


## STATUTES

California Penal Code:
    §1168, subd.(b)........................................... 9, 37
    §2932, subd.(c)(5)........................................ 11
    §3040-3041............................................... 9
    §3041.................................................... 7, 9
    §3041, subd.(a).......................................... 33
    §3041, subd.(b).......................................... 11, 25, 32
    §3041.5 subd,(a)(5)...................................... 11
    §187..................................................... 37
    §209, subd.(a)........................................... 33
    §209, subd.(b)........................................... 33, 37

California Evidence Code:
    §115..................................................... 11

California Code of Civil Procedure:
    §1094.5.................................................. 5

California Administrative Code, tit.15,Div.2,BPH Regulations:
    §2000, subd.(b):
        (51) [Good Cause]................................... 5, 11
        (63) [Material]..................................... 5
        (91) [Relevant].................................... 5
    §2281 thru §2290......................................... 9, 37
    §2281.................................................... 9
    §2281, subd.(a).......................................... 6, 11
    §2281, subd.(b).......................................... 7
    §2281, subd.(c).......................................... 6, 7, 18, 28
    §2281, subd.(d).......................................... 6, 7, 9, 18, 28
    §2281, subd.(c)(1)(2)(3)................................. 9
    §2281, subd.(d)(9)....................................... 28
    §2281, subd.(d)(1) thru (d)(9).......................... 37

California Administrative Code, tit.15.Div.3, CDCR Regulations:
    §3000 [Good Cause]....................................... 11
    §3320, subd.(1).......................................... 11

California Administrative Code, tit.15,Div.2, BPH Regulations:
    §2400 thru §2407......................................... 37
    §2402, subd.(c)(1)....................................... 20
    §2402, subd.(d)(3)....................................... 20

|  | pages |
|---|---|
| §2402, subd.(d)(9)...................................... | 28 |
| §2450................................................. | 11 |

## CASES

<u>Federal</u>

| | pages |
|---|---|
| Apprendi v. New Jersey<br>   530 U.S. 466 (2000)..................................... | 34 |
| Biggs v. Terhune<br>   334 F.3d 910 (9th Cir. 2003)......................... | 10,12,18,21-25,35,36,39 |
| Board of Pardon v. Allen<br>   482 U.S. 369 (1987).................................. | 9,17,21 |
| Edward v. Balisok<br>   520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)... | 2,4,15,16,40 |
| Greenholtz v. Nebraska Penal Inmates<br>   442 U.S. 1 (1979)................................... | 9,17,21,27 |
| Himes v. Thompson<br>   336 F.3d 848 (9th Cir. 2003)......................... | 4 |
| Irons v. Carey<br>   DJDAR 10743, 479 F.3d 658 (2007)..................... | 23,24,25,36 |
| Irons v. Warden of California State Prison-Solano<br>   358 F.Supp.2d 936 (E.D.Cal. 2005)................... | 10,24 |
| Kentucky Dep't of Correction v. Thompson<br>490 U.S. 454, 459-460 (1987)......................... | 17 |
| Martin v. Marshall<br>   431 F.Supp.2d 1038 (2006)........................... | 37 |
| McQuillion v. Duncan<br>   306 F.3d 895 (9th Cir. 2002)......................... | 2,6,9,17 |
| Morrissey v. Brewer<br>   408 U.S. 471, 482 (1972)............................. | 37 |
| Mullaney v. Wilbur<br>   421 U.S. 684......................................... | 34 |
| Rosenkrantz v. Marshall<br>   444 F.Supp.2d 1063, 1065, 1070 (2006)................ | 22 |
| Sass v. Cal. Board of Prison Terms<br>   461 F.3d 1127-1128 (2006)........................... | 18,23,36 |
| Schware v. Board of Examiners<br>   353 U.S. 232, 1 L.Ed 796, 77 S.Ct. 752 (1957).......... | 39 |
| Sellers v. Procunier<br>   641 F.2d 1295 (1981)................................. | 12 |
| Shackleford v. Hubbard<br>   234 F.3d 1072, 1079 (9th Cir. 2000)................... | 4 |
| Superintendent v. Hill<br>   472 U.S. 445, 105 S.Ct. 2708 (1985)................... | 2,4,5,15,16,18 |
| Wilkinson v. Dotson<br>   125 S.Ct. 1242 (2005)............................... | 14 |
| Williams (Terry) v. Taylor<br>   529 U.S. 362, 120 S.Ct 1495, 146 L.Ed.2d 279 (2002).... | 2,3 |
| Willis v. Kane<br>   ___ F.Supp.2d ___ 2007 WL 1232060 (N.D.Cal. 2007).... | 25 |
| Woodford v. Visciott<br>   537 U.S. 362, 120 S.Ct. 357, 154 L.Ed.2d 279 (2002).... | 3 |
| Yick Wo v. Hopkins<br>   118 U.S. 356, 30 L.Ed. 220, 6 S.Ct. 1094 | 39 |

| State | pages |
|---|---|
| In re Dannenberg | |
| 34 Cal.4th 1061, 1071 (2005)........................... | 19,31,33 |
| In re Dannenberg | |
| 23 Cal.Rptr.3d 430 (2004)............................. | 31,32 |
| In re Elkins | |
| 144 Cal.App.4th 475 (2006)........................... | 19,31,37 |
| In re Fain | |
| 65 Cal.App.3d 376 (1976)............................ | 6 |
| In re Lowe | |
| 130 Cal.App.4th 1405 (2005)......................... | 30 |
| In re Marriage of Peters | |
| 52 Cal.App.4th 1487 (1997)........................... | 15 |
| In re McLain | |
| 55 Cal.2d 78, 87 (1960)............................. | 6 |
| In re Minnis | |
| 7 Cal.3d 639, 644 (1972)............................ | 8 |
| In re Powell | |
| 44 Cal.3d 894 (1988)................................. | 5,6 |
| In re Ramirez | |
| 94 Cal.App.4th 549 (2001), overruled by Rosenkrantz on other grounds...................................... | 2,10,19,28,30,31,33 |
| In re Rosenkrantz | |
| 29 Cal.4th 616 (2002)................................ | 2,5-7,10,12,15,17,19,27,28, 30,34 |
| In re Rosenkrantz | |
| 80 Cal.App.4th 409 (2000)........................... | 33 |
| In re Scott I | |
| 119 Cal.App.4th 573 (2004).......................... | 9,10,11,19,28,29,30,34 |
| In re Scott II | |
| 133 Cal.App.4th (2005).............................. | 10,11,21,35,36 |
| In re Schoengarth | |
| 66 Cal.2d 295, 300 (1967).......................... | 8 |
| In re Smith | |
| 114 Cal.App.4th 342 (2003)......................... | 10 |
| In re Strum | |
| 11 Cal.3d 268 (1974)............................... | 33 |
| People v. Dillion | |
| 34 Cal.3d 441 (1982)............................... | 29 |
| People v. Morse | |
| 60 Cal.2d 631 (1964)............................... | 8 |
| People v. Wade | |
| 53 Cal.2d 322 (1959)............................... | 8 |
| Baxter Healthcare Corp. v. Denton | |
| 120 Cal.App.4th 333 (2004)........................ | 14 |
| Conservatorship of Wendland | |
| 26 Cal.4th 519 (2001)............................. | 15 |
| Ettinger v. Bd. of Medical Quality Assurance | |
| 135 Cal.App.3d 853 (1982)......................... | 13 |

## State

**pages**

Roberts v. Duffy
    167 Cal. 629, 634 (1914)............................   8
Saif'ullah v. Carey
    2005 WL 1555389 (2005)..............................   11
Terhune v. Superior Court
    65 Cal.App.4th 864 (1998)...........................   34


## OTHER AUTHORITY

Bair v. Folsom State Prison
    2005 WL 2219220 (E.D.Cal. 2005).....................   36

CLIFFORD LELIKONA PARKER
CTF - Central B-226U
P.O. Box 689
Soledad, CA 93960-0689
CDCR #J-43369

Petitioner in pro se

_____

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Clifford Lelikona Parker,          )      Case No. _____
CDCR #J-43369,                     )
                                   )
                    Petitioner,    )      **MEMORANDUM OF POINTS &**
                                   )      **AUTHORITIES IN SUPPORT**
                                   )      **OF THE PETITION FOR WRIT**
                                   )      **OF HABEAS CORPUS.**
        v.                         )
                                   )
                                   )      [28 U.S.C. §2254]
                                   )
Ben Curry, Warden,                 )
                                   )
                    Respondent.    )
                                   )
                                   )
_____)
_____

**To the Honorable Presiding Judge:**

Petitioner, **Clifford Lelikona Parker,** in pro se, submits this Memorandum of Points & Authorities in Support of the Petition for Writ of Habeas Corpus.

//

//

//

- 1 -

# I.

## STANDARD OF JUDICIAL REVIEW

The courts of California, both state and federal, seem to have settled in for the "some evidence' standard of judicial review. See, e.g., McQuillion v. Duncan, 306 F.3d 895 (9th Cir.2002), and In re Rosenkrantz, 29 Cal.4th 616 (2002). The "some evidence" standard derives from the United States Supreme Court in Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768 (1985), but it is expressly a standard of judicial review:

> The United States Supreme Court has made it clear that the "some evidence" standard discussed in Hill, supra, 472 U.S. 445, is only one aspect of judicial review for compliance with minimum standards of due process. In Edwards v. Balisok (1997) 520 U.S. 641 [117 S.Ct. 1584, 137 L.Ed.2d 906], another good time credits case, the inmate contended the "some evidence" standard was inadequate for reviewing his claim that the hearing officer was biased and had decietfully deprived him of a chance to present exculpatory evidence. The court held that the scope of judicial review in prison discipline cases is not so cramped. Even the minimum due process standards applied to prison disciplinary hearings" are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." (Id. at p. 647 [117 S.Ct. at p. 1588]) The court explained that the "some evidence" standard applies only to questions of evidentiary sufficiency. It is an additional requirement of due process, not a substitute for other established due process requirements. (Id. at p. 648 [117 S.Ct. at p. 1588].)

In re Ramirez, 94 Cal.App.4th 549, at 563-564 (2001).

However, in Williams (Terry) v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court defined the operative review standard set forth in §2254(d). Justice Sandra Day O'Conner's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established

- 2 -

law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id., 120 S.Ct. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S.Ct. at 1520-1521, 146 L.Ed.2d 389 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an unreasonable application of federal law is different from incorrect application of law .... [A] federal habeas court may not issue a writ simply because that court concluded in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S.Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). Where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review

- 3 -

of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848 (9th Cir. 2003). In the instant case, the State Supreme Court decision was silent as to the reason for its denial, and the only reasoned decision was issued by Superior Court of Contra Costa County, Judge Theresa Canepa presiding. (It is attached as Petition **Appendix 1.**) Was it objectively unreasonable, and/or contrary to well-established precedent set forth by the United States Supreme Court by specific or encompassing principle? **Yes.**

## II.

### The State Court's Decision Was An Objectively Unreasonable Application Of and Contrary To Well-Established Federal Judicial Precedent As Set By The United States Supreme Court.

The State courts should have found that the Board's decision violated due process of law in Petitioner Parker's case. Although the Superior Court, which gave the only reasoned decision, see Shackleford v. Hubbard, 234 F.3d 1072, 1079 (9th Cir. 2000), found that the Board considered Petitioner's exemplary conduct and behavior, it defferred to the Board on the commitment offense based upon an unreasonable interpretation of the USSC precedent in Superintendent v. Hill, 472 U.S. 445 (1985) and Edward v. Balisok, 520 U.S. 641. To address the question of whether federal relief is warranted, Petitioner presents the underlying claim of Board abuse of discretion.

### A)    The Board's Hearing Was Constitutionally Defective

This argument combines Petitioner's argument that the Board's hearing

- 4 -

1  was adjudicated pro forma, not supported with evidence having an "indicia

2  of reliability, and fails to apply the applicable legal standard for

3  indeterminately-sentenced prisoners.

4      The Rosenkrantz court (29 Cal.4th 616) applied the "some evidence"

5  standard, of Superintendent v. Hill, 472 U.S. 445 (1985), in such language

6  as to confuse the lower courts as to its specific purpose, i.e., the

7  standard of judicial review. It carried forward the "some evidence"

8  standard originally applied in In re Powell, 45 Cal.3d 894 (1998).[1] The

9  Rosenkrantz court did not make clear that the "some evidence" standard

10  was not a standard applied by the Board itself as a standard of proof

11  in its deliberations. It appears that the omission by the Rosenkrantz

12  court of any articulation of what the Board's standard of evidence would

13  be, as a critical component to the deliberative process of weighing-and

14  -balancing of evidence, has resulted in the Board not applying the

15  "preponderance of relevant and material evidence" standard (see CCR. tit.

16  15, Div.2, Article 1, §2000 (50) Good Cause, (63) Material, (91) Relevant),

17  thereby rendering every decision to grant or deny parole completely

18  standardless, and thus arbitrary and capricious.

19

---

[1]

20      The first California decision applying the "some evidence" standard
of Hill was in In re Powell, 45 Cal.3d 894 (1988). The Powell case was

21  one where the Board of Prison Terms rescinded a parole grant based on
a psychological report. In his petition, Powell argued for the "independent

22  judgment" standard to the facts before the Board, or alternatively, the
"substantial evidence" test. The People argued for the deferential

23  "some evidence" test. Powell argued for the independent judgment test
by analogizing habeas corpus proceedings to administrative mandamus

24  proceedings under Cal. Code of Civil Procedure section 1094.5. That code
section provides for review of administrative orders or decisions; in

25  some cases it applies the independent judgment test while in other
circumstances the substantial evidence test. If the former, an abuse of

26  discretion is established when the court, exercising its independent
judgment, determines the administrative findings are not supported by

27  the weight of the evidence. If the latter, the court must accept all the

28

1    When the superior court found "some evidence" to support the Board's

2    decision, it relied **solely** on the commitment offense citing to elements

3    outside of petitioner's culpability. Nonetheless, the very fact that certain

4    elements existed in Petitioner's offense, at least from the Board's citation

5    to boilerplate regulations it cites to in every case where parole is denied

6    on the basis of the offense (which is every denial), the superior court

7    simply accepted those factual reasons as evidence, and any modicum of

8    evidence - according to Rosenkrantz - is enough.

9    The regulations set forth two sets of criteria in §2281, subd. (c)

10    and (d), one for "suitability" and the other for "unsuitability." Neither

11    regulation mandates that the existence of one factor is dispositive of

12    the outcome of "suitability" or "unsuitability." In fact·, the regulations

13    tend to refute that. The overriding basis for consideration of parole is

14    whether the inmate "will pose an unreasonable risk of danger to society

15    if released from prison." (§2281(a) [emphasis added].) While the Board

16

17    evidence favorable to the respondent as true and disregard any unfavorable
18    evidence; if the evidence so viewed is sufficient as a matter of law, the
      order or decision must be affirmed. In rejecting Powell's argument, the
19    court held that standard applies only when an administrative decision
      affects a **vested right**. This is the pivotal point. The Powell court
20    determined that "a prison inmate has no vested right in his prospective
      liberty on a parole release date." Id., at 903. It cited to pre-1977 cases
21    of In re Fain, 65 Cal.App.3d 376 (1976), and to In re McLain, 55 Cal.2d
      78, 87 (1960), also cited by Fain, supra. However, two critical facts were
22    not present at the time of the decision: 1) there were no liberty interest
      created by pre-1977 Section 3041; and 2) the California Supreme Court had
23    not yet defined post-1977 Section 3041, Penal Code, as having vested a
      liberty interest in a parole release date, as it did years later in the
24    Rosenkrantz decison (29 Cal.4th 616)(2002), following on the heels of
      McQuillion v. Duncan, 306 F.3d 895, 901-903 (9th Cir. 2002), which
25    interpreted Section 3041 as creating an "expectancy of release" that was
      a cognizable liberty interest protected by federal due process. Thus, the
26    Powell court was wrong about whether a vested right was invovled, and its
      decision to apply the "some evidence" standard instead of the "independent
27    judgment test" or "substantial evidence" was also wrong because it was
      based on an incorrect interpretation of law.

28

1  is mandated to consider "all relevant, reliable information" in determining

2  parole, "[c]ircumstances which taken alone may not firmly establish

3  unsuitability for parole may contribute to a pattern which results in a

4  finding of unsuitability." (§2281 (b).)[2]

5      Equally relevant is that the criteria in §2281, subds. (c) and (d) use

6  the dispositive language indicating that a finding of the existence of

7  certain factors only tend to indicate suitability or unsuitability. Both

8  titles expressly state: "Circumstances Tending To Show ..." If judicial

9  review means that the court only need one item of unfavorable evidence

10  identified by criteria to justify deferring to the decision of the Board,

11  this would suggest selective enforcement of the regulations, or certainly

12  a bias. For instance, under §2281(c), there are six criteria listed under

13  unsuitability factors. Under §2281(d), there are nine criteria listed under

14  suitability factors. If the Board identified one item under §2281(d) as

15  favoring suitability, such as a favorable psychological evaluation or

16  evaluations that the prisoner poses no risk of danger to society, but only

17  identifies one item under §2281(c) as indicative of unsuitability, such

18  as the commitment offense 15 or more years ago, and selects a finding of

19  unsuitability as its decision, how does "some evidence" work to justify

20  the decision? Both criteria identified a factor.

21

22  [2] The regulations does not say, "Circumstances which taken alone may not
    firmly establish **suitability**. ..." This is an important distinction. If
23  it would say this, that would place the burden of proof on the inmate,
    would it not, to prove his suitability? By the very language of the
24  regulation, the presumption being that the inmate is entitled to a parole
    release date, as is reflected in the statute, is only overcome where the
25  Board finds sufficient evidence to overcome the presumption that a parole
    date shall "normally" be set. (Section 3041.) Even in Rosenkrantz, the
26  court said that parole was to be granted unless the Board found, by the
    application of fact-based criteria that the prisoner poses an unreasonable
27  danger to society if released at this time. (See, e.g., 29 Cal.4th at 653-
    654.)

28

- 7 -

The statute's emphasis on public safety is intrinsically tied to the dynamics of postconviction rehabilitation; said another way, the risk to public safety (in this case) is determined by an evaluation over time of rehabilitation dynamics. While the static factor of the crime is a historic factor tending to show risk to public safety, the measure of current risk is demonstrated by the relevance of postconviction behavior of the prisoner. In re Minnis, 7 Cal.3d 639, 644 (1972):

> The Authority does not fix that period pursuant to a formula of punishment, but in accordance with the adjustment and social rehabilitation of the individual analyzed as a human composite of intellectual, emotional and genetic factors." (People v. Morse (1964) 60 Cal.2d 631, 642-643 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]; and, The legislative policy [was to provide a system whereby] a hope was to be held out to prisoners that through good conduct in prison and a disposition shown toward reformation, they might be permitted a conditional liberty upon restraint under which they might be restored again to society ..." (Roberts v. Duffy (1914) 167 Cal. 629, 634 [140 P. 260].)

At page 645:

> Although good conduct while incarcerated and potential for reform are not the only relevant factors, [FN6] this court has acknowledged their significance. (In re Schoengarth (1967) 66 Cal.2d 295, 300 [57 Cal.Rptr. 600, 425 P.2d 200]; Roberts v. Duffy, supra, 167 Cal. 629, 640.) Furthermore, the Authority has declared that these factors are among those of "paramount importance." (Cal. Adult Auntority, Principles, Policies and Program (1952) pp. 8-9; see also Adult Authority Policy statement No.11 (June 27, 1966).) Any official or board vested with discretion is under an obligation to consider all relevant factors (cf. People v. Wade, (1959) 53 Cal.2d 322, 338-339 [1 Cal.Rptr. 683, 348 P.2d 116]), and the Authority cannot, consistently with its obligation, ignore postconviction factors unless directed to do so by the Legislature.

Petitioner asserts that these cases defining the goals and procedures under the former Indeterminate Sentence Law (ISL) remain good law because

- 8 -

the ISL was not repealed for all life prisoners, it was merely amended by the USDA of 1976, via Section 1168(b) and Section 3041.[3] Because postconviction behavior, i.e., the rehabilitative process, remained of paramount importance to the statutory goal of achieving in the inmate lack of risk of danger to public safety before release to parole was possible, the most critical component of the evaluation process is the application of a standard of proof such as the "preponderance of evidence" standard.

So, the question of whether there is any evidence in the record to support the Board's findings on the commitment offense does not merely hinge on the existence of offense elements arbitrarily characterized by the Board reciting the boilerplate regulation under subd. (c)(1) or (2) or (3), or the mere fact that the District Attorney opposed parole.[4] The question is how does these factors weigh against the many factors under subd. (d) that heartily weigh in favor of parole? in the case of In re Scott I, 119 Cal.App.4th 871, at 899, in calling that parole hearing a "sham," the court held that "[T]he gravamen of our analysis is not that

---

[3] Petitioner believes that only those former ISL cases that did not recognize a vested right in the parole process only because the governing statute, Section 3040-3041 at the time did not contain any mandatory language favoring parole, may not now apply under current law (i.e., Stats 1976, c.1139, Section 3041, of the Uniform Determinate Sentencing Act of 1976, which statute created an "expectancy of release" which is a federally protected liberty interest. (McQuillion v. Duncan, 306 F.3d 895, 901-903, relying on Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1 (1979) and Board of Pardons v. Allen, 482 U.S. 369 (1987).)

[4] The Court should note that there is no regulation under §2281 or anywhere else in the parole regulations (Section 2281-2290 ) that provide for victim's next-of-kin or representative to make statements or give opinions that carry the indicia of evidentiary sufficiency dispositive of parole unsuitability. If that were so, the Board may as well be abolished since the well-established agenda of avid victims' rights groups like Crime Victims United and Doris Tate Crime Victims Bureau is to oppose all lifer paroles. And, further in nearly every lifer case, the District

the evidence Scott is suitable for parole outweighs that showing him unsuitable, but that there is no evidence he is suitable ..." In the Scott II decision (against the Governor's reversal of a subsequent grant of parole to Scott by the Board), the court said:

> The Governor's assumption that a prisoner may be deemed unsuitable for release on the basis of the commitment offense "alone" is correct (Rosenkrantz, supra, 29 Cal.4th at p. 682, 128 Cal.Rptr.2d 104, 59 P.3d 174). [FN7] but the proposition must be properly understood. The commitment offense is one of only two factors indicative of unsuitability a prisoner cannot change (the other being his "Previous Record of Violence"). [FN8] Reliance on such an immutable factor "without regard to or consideration of subsequent circumstances" may be unfair (In re Smith (2003) 114 Cal.App.4th 342, 372, 7 Cal.Rptr.3d 655), and "runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process." (Biggs v. Terhune, supra, 334 F.3d at p. 917) The commitment offense can negate suitability only if circumstances of the crime reliably established by evidence in the record rationally indicate that the offender will present an unreasonable public safety risk if released from prison. Yet, the predictive value of the commitment offense may be very questionable after a long period of time. [FN9] (Irons v. Warden of California State Prison--Solano (E.D.Cal.2005) 358 F.Supp.2d 936, 947, fn. 2.) Thus, denial of release solely on the basis of the gravity of the commitment offense warrants especially close scrutiny. "[T]he gravity of the commitment offense or offenses alone may be sufficient basis for denying a parole application, so long as the Board does not fail to consider all other relevant factors." (In re Ramirez, supra, 94 Cal.App.4th at p. 569, 114 Cal.Rptr.2d 381, latter italics added; accord, Rosenkrantz, supra, 29 Cal.4th at pp. 660, 677, 128 Cal.Rptr.2d 104, 59 P.3d 174; Scott I, supra, 119 Cal.App.4th at p. 891, 15 Cal.Rptr.3d 32.)

These cases clearly indicate that while the Board has considerable discretion to "weigh" evidence, it does not have the discretion to "weigh" it arbitrarily and without consideration to other evidence that mitigates,

Attorneys oppose parole repeatedly. Consideration of their statements by the Board members does not automatically translate into automatic denials of parole. Their statements or opinions are not evidence, any more than letters favoring parole are dispositive of the outcome.

devalues, or voids the "weight" of that relied-upon evidence. The Board does not have discretion to ignore substantial evidence of a prisoner's reform. In re Scott I, supra, 119 Cal.App.4th 871; In re Scott II, supra, 133 Cal.App.4th 573; and Saif'ullah v. Carey, 2005 WL 1555389. The California Evidence Code, §115, defines three standards of evidence, with the "preponderance of evidence" standard being the 'rock-bottom' standard.

The issue of "public safety" is a bilateral matter. On the one hand, it requires further imprisonment if the prisoner poses an "unreasonable risk" of danger to society if released. (Section 3041, subd.(b); 15 CCR §2281, subd.(a).) On the other hand, "public safety" is intrinsically a question of the prisoner's rehabilitation, and where reform is apparent there is no legitimate penological interest in continuing the prisoner's imprisonment once he has exceeded the minimum parole ineligibility period.

The asserted requirement of a discernible and applicable standard of proof is not without statutory basis. It is referenced in Penal Code Section 3041.5(a)(5) by citing to Penal Code Section 2932(c)(5) which requires the "preponderance of evidence" standard. It is also cited in the Department Corrections and Rehabilitation (CDCR) regulations (15 CCR div.3, at §3320(1)) which cites to Penal Code Section 2932. CCR §3320(1) is the requirement of the preponderance of evidence at disciplinary proceedings.

Board regulations, at §2450, regarding rescission of parole, requires "good cause" for substantive decision, and "good cause" is clearly defined in Board regulations at §2000, subd.(b)(51) [Good Cause] as requiring a "preponderance of evidence." The CDCR also defines "good cause" with the exact same language. (15 CCR §3000)

So it is clear that the evidence code, penal code, and administrative

regulations of both the CDCR and the Board engage the lowest standard of proof set forth by California law in the California Evidence Code §115 as the standard that guides their actions. However, notwithstanding, it is apparent from the Board's decision here that no such standard was applied. It is further apparent from the Rosenkrantz decision that granting unreviewable discretion to the Board to unilaterally weight evidence and arbitrarily determine its relevance diminishes even the lowest standard of proof by law to a point of nonexistence. Petitioner alleges that the Court cannot negate a legislative or regulatory mandate or requirement unless it finds it unconstitutional, which is not the case with the standard of proof required here. The liberty interest in parole is substantial and created at the time of the prisoner's incarceration, Biggs v. Terhune, supra, 337 F.3d at 916-917, and a standard of evidence is required to make the Board's determination of prisoner's liberty interest in parole constitutional.

Petitioner therefore objects to any judicial deference to the "some evidence" standard on the basis that judicial review must invalidate the Board's decision where the pre-decisional process is constitutionally defective, as it is here. Petitioner asks the Court to find that the Board's decision here was simply arbitrary and capricious, not supported by the record, uninformed, misleading, and not relevant to the compelling inquiry of current risk to public safety, thereby violating fundamental due process.

Petitioner seeks a finding that the process to which he has been subjected deprived him of the most critical component of the fact-finding and deliberative process, i.e., standard of proof that safeguards against arbitrary and capricious decisions of the Board.[5] Petitioner seeks a finding

---

[5] In the 9th Circuit case of Sellers v. Procunier, 641 F.2d 1295 (1981)

1  that such omission violates federal constitutional due process as an

2  intrinsic element of due process minima to which he is entitled.

3      One of the leading cases about these principles that is cited to by

4  courts reviewing standards of proof in various administrative forums is

5  Ettinger v. Board of Medical Quality Assurance (1982) 135 Cal.App.3d 853.

6  The question presented in Ettinger was as follows:

7          "[W]hether the standard of proof in an administrative
            hearing to revoke or suspend a medical license should
8          be preponderance of evidence, or whether it should
            be clear and convincing proof to a reasonable
9          certainty." Id. at pp. 855.

10     The court held that the higher standard applied. The court reasoned

11  that "[t]he purpose of an administrative proceeding concerning the

12  revocation or suspension of a license is not to punish the individual;

13  the purpose is to protect the public from dishonest, immoral, direputable

14  or incompetent practitioners." Id. at page 856.

15     The court distinguished administrative proceedings where a person's

16  right to a particular job position was at stake from similar proceedings

17  where one's right to practice a profession at all was at issue. The court

18  further elaborated:

19

_____

20  the court made a determination of whether parole board officials, as public
    official, enjoyed qualified immunity from civil lawsuits or whether they,
21  like judges, were entitled to absolute immunity. In its discussion the
    court noted that decisions by public officials were inherently political
22  one, and as such they may reflect the views of their constituency. However,
    the court noted that parole officials performed a higher function, a "quasi-
23  judicial function", as the equivalent of the sentencing-arm of the original
    court, when they determined parole, and thus were entitled to absolute
24  immunity in their decisions about whether to parole an inmate. But, this
    absolute immunity grant, while unqualified, nonetheless included the same
25  expectancy of that of judges, i.e., that their duty is to render impartial
    decisions in cases and controversies that excite strong feelings because
26  the litigant's liberty is at stake. Id., 641 F.2d at 1303. In excluding
    parole officials from civil lawsuits, even against wrong done by dishonest
27  parole officials, the court held that habeas corpus review was available
    to redress alleged violations of constitutional rights. Id., at 1303-04.
28  In a more recent case, the United States Supreme Court ruled due to the

- 13 -

1

> "It seems only logical to require a higher standard
> of proof when dealing with revocation or discipline
> of a professional licensee as opposed to mere
> termination of state employment. The former affects
> one's right to a specific professional employment,
> while the latter involves only the right to be employed
> by a specific employer. It is the totality of
> professional employment opportunity involving vested
> interest rights which require the higher standard."
> Id. at p. 857. (Emphasis added.)

The court concluded:

> "Since it is apparent that the underlying purpose
> of disciplining both attorneys and physicians is
> protection of the public, it would be anomalous to
> require a higher degree of proof in disciplinary
> hearings involving attorneys or real estate agents
> than in hearings involving physicians. Accordingly,
> we hold that the proper standard of proof in an
> administrative hearing to revoke or suspend a doctor's
> license should be clear and convincing proof to a
> reasonable certainty and not a mere preponderance of
> the evidence." Ibid.

Generally, a higher burden of proof than preponderance of the evidence applies only where particularly important individual interest or rights, which are more substantial than the loss of money, are at stake. The default standard of proof in civil cases is the preponderance of the evidence, unless otherwise indicated by constitutional, statutory, or decisional laws. The determination of the degree of proof to be applied in a particular situation has traditionally been left to the judiciary to resolve, based on the rights and interest at stake. (See, e.g., Baxter Healthcare Corp. v. Denton (App. 3 Dist. 2004) 120 Cal.App.4th 333, 5 Cal.Rptr.3d 430.)

_____

continuous abuse by the parole board they are no-longer entitled to absolute immunity, and can be sued for abuse of procedures. Wilkinson v. Dotson, 125 S.Ct. 1242 (2005)

//

- 14 -

Generally, facts are subject to higher standard of proof than preponderance of evidence only where particularly important individual interest or rights are at stake; even severe civil sanctions not implicating such interest or rights do not require higher standards of proof. (In re Marriage of Peters (App. 3 Dist. 1997) 52 Cal.App.4th 1487, 61 Cal.Rptr.2d 493.) Although the default standard of proof in civil cases is the preponderance of evidence, courts have applied the clear and convincing evidence standard when necessary to protect important rights. (Conservatorhip of Wendland (2001) 26 Cal.4th 519, 546, 110 Cal.Rptr.2d 412, 28 P.3d 151.)

Petitioner Parker has alleged that his parole application was not adjudicated according to the law. This allegation encompasses an analysis of the process by which the Board acts, and did act in this case, where the superior court pointed to no other evidence besides the commitment offense. However, the confusion created by Rosenkrantz by the omission of an articulated standard of evidence as part of the requisite applicable legal standards of the process has caused the superior court in the instant to believe that the mere existence of the factual existence of the commitment offense is sufficient as "some evidence" to warrant denial of the petition. This is an unreasonable application of Superintendent v. Hill, supra, 472 U.S. 445 (1985) and Edwards v. Balisok, 520 U.S. 649 (1997).

In Hill the court reasoned that due to the volatile environment of a prison, a court should not overly intrude in day-to-day prison management, and that the disciplinary officer only need "some evidence" in the record to have his decision sustained. Hill, supra, 472 U.S. at 456 [Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that

- 15 -

might be insufficient in less exigent circumtances.]. Here, the exigent circumstances in Hill does not apply to this parole hearing. This hearing does not take place in a highly charged atmosphere of a volatile prison where the commissioners have any reason for acting swiftly on the basis of evidence that might be insufficient in other circumstances.

In Edward v. Balisok, 520 U.S. at 647, another good time credits case, the inmate contended the "some evidence" standard was inadequate for reviewing his claim that the hearing officer was biased and had deceitfully deprived him of a chance to present exculpatory evidence. The court held that the scope of judicial review in prison discipline cases is not so cramped. Even the minimum due process standards applied to prison disciplinary hearings "are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." (Id. at p. 647, 117 S.Ct. 1584.) The court explained that the "some evidence" standard applies only to questions of evidentiary sufficiency. It is an additional requirement of due process, not a substitute for other established due process requirements. (Id. at p. 648, 117 S.Ct. 1584.)

In the context of parole hearings, a hearing would be constitutionally defective on the basis that the Board's decisions are intrinsically arbitrary, capricious and standardless if it makes its deliberations without the application of a standard of proof, especially where the commissioners, without any regulatory guidance, can arbitrary determine what "weight" to give any fact in the record. The court never need reach whether "some evidence" supports the Board's decision if it finds that the pre-decisional process is constitutionally defective. In the vacuum of a process where no standard of evidence applied to the adjudicatory process is apparent, the only reasonable conclusion is that any decision of the Board, whether

1  to grant or deny, is arbitrary and capricious because the process is
2  standardless.

3

4                              III
5            PETITIONER HAS A STATE AND FEDERAL PROTECTED LIBERTY
                        INTEREST TO BE PAROLED.

6      The Due Process Clause of the 14th amendment prohibits state action
7  that deprives a person of life, liberty, or property without due process
8  of law. A person alleging a due process violation must first demonstrate
9  that he or she was deprived of a liberty property interest protected by
10 the Due Process Clause and then show that the procedures attendant upon
11 the deprivation were not constitutionally sufficient. (Kentucky Dep't of
12 Correction v. Thompson, (1989) 490 U.S. 454, 459-460; McQuillion v. Duncan,
13 (9th Cir. 2002) 306 F.3d 895, 900) The United States Supreme Court
14 recognizes a federal due process liberty interest in parole. (Greenholtz
15 v. Inmates of Nebraska Panel, (1979) 442 U.S. 1, 7.) The court held in
16 1979 and reaffirmed in 1987 that "a state's statutory scheme, if it uses
17 mandatory language, creates a presumption that parole release will be
18 granted when or unless certain designated findings are made, and thereby
19 gives rise to a constitutional liberty interest." (Board of Pardons v.
20 Allen (1987) 482 U.S. 369, 373; Greenholtz, supra, 442 U.S. at p.7).

21     California parole scheme gives rise to a cognizable liberty interest
22 in release on parole because Penal Code section 3041 uses mandatory language
23 that parallels the Nebraska and Montana statutes addressed in Greenholtz
24 and Allen. In the case of In re Rosenkrantz, 29 Cal.4th 616 (2002) the
25 California State Supreme Court also recognized a due process "liberty
26 interest" in parole. (Id. at 654, 661) "Section 3041 of the California
27 Penal Code creates in every inmate a cognizable liberty interest in parole

28

which is protected by the procedural safeguards of the due process clause of both the state and federal constitutions,; and the interest arises, "not upon the grant of a parole date, but upon the incarceration of the inmate." (Biggs v. Terhune (9th Cir, 2003) 334 F.3d 910, 914-915.) Finally, in the most recent ruling out of the Ninth Circuit Court of Appeals, in the case of Sass v. California Board of Prison Terms, supra, 461 F.3d at pp. 1127-1128, has reaffirmed that inmates in California have a federal due process liberty interest in parole.

### IV
### A CONTINUOUS RELIANCE ON THE COMMITMENT OFFENSE (IMMUTABLE FACTS) TO JUSTIFY CURRENT DANGEROUSNESS IS A DUE PROCESS VIOLATION

In the only reasoned opinion issued in these proceedings (See Appendix "1") the Contra Costa County Superior Court found that the Board's decision to deny parole was supported by "some evidence." (Superintendent v. Hill (1985) 472 U.S. 445, 457.) The Court upheld the Board's decision based **solely** on the commitment offense, despite overwhelming evidence of rehabilitation and the fact that continuous reliance on the immutable fact of the commitment offense, "runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." (Biggs v. Terhune, supra, 334 F.3d at pp. 916-917)

In California the Board must determine whether a prisoner is presently too dangerous to be deemed suitable for parole based on the "circumstances tending to indicate unsuitability" and the "circumstances tending to show suitability" set forth in Cal. Code Regs., tit. 15 §2281(c)(d). A prisoner's commitment offense may constitute a circumstance tending to show that a prisoner is presently too dangerous to be found suitable for parole, but the denial of parole may be predicated on a prisoner's commitment offense

- 18 -

only where the Board can "point to factors beyond the minimum elements of the crime for which the inmate was committed" that demonstrate the inmate will, **at the time of the suitability hearing,** present a danger to society if released. (Dannenberg, 34 Cal,4th at 1071.

Accordingly, the California Supreme Court has held that "the gravity of the commitment offense or offenses alone may be sufficient basis for denying a parole application, so long as the Board does not fail to consider all other relevant factors." (Ramirez, supra, 94 Cal.App.4th at p. 569; accord, Rosenkrantz, supra, 29 Cal.4th at pp. 600, 677; In re Scott, (2004) 119 Cal.App.4th 871, 891.) The California Supreme Court further admonished that "where no circumstances of [the] petitioner's offense ... involves particular egregious acts beyond the minimum necessary to sustain a conviction for [the offense]" (In re Dannenberg, (2005) 34 Cal.4th 1061, 1095-1096), an inmate's constitutional protected expectation of parole might be violated.

Petitioner asserts that his protected liberty interest has been violated in the instant case. The Board/Court can not cite to any evidence having an indicia of reliability that the circumstances of Mr. Parker's offense was either beyond the minimum elements to sustain a conviction for the offense or that his crime was particularly egregious. (For Culpability see IV (A) **INFRA**). The Board can not cite to any evidence that warrants a parole denial. Thus, the Board's decision must be reversed.

In the recent decision of the California Court of Appeals in the case of In re Elkins, supra, 144 Cal.App.4th 475 provides an example of a judicial reversal under the "some evidence" standard. Elkins life sentence arose from his murder of a high school classmate who was the defendant's drug dealing partner. The victim owed the defendant drug

- 19 -

money and was having trouble paying. The defendant entered a room where the victim was sleeping intending to rob him of money and drugs. While the victim was sleeping the defendant beat the victim to death with a baseball bat. For years, he showed a remarkable lack of remorse for the murder.

During his (Elkins) incarceration the inmate reformed himself. The psychological evaluations indicated that he presented a low risk of violence if released from prison. The inmate expressed deep remorse for the murder and the Board granted him a suitability finding and parole date. The Governor reversed the decision based on the especially heinous, atrocious or cruel manner, in which the murder was committed and the inmates initial unwillingness to accept full responsibility for the murder. (In re Elkins, supra, 144 Cal.App.4th at p. 515; see Cal.Code Regs., tit 15, §2402, subd. (c)(1), (d)(3).) The Court of Appeal reinstated the Board's suitability finding on the grounds the Governor's decision did not meet the "some evidence" standard because it was based on immutable circumstances beyond the inmate's ability to change. (In re Elkins, supra, 144 Cal.App.4th at p. 523.)

In rejecting the Governor's conclusion that the murder was exceptionally "atrocious," the court stated that first degree murder is, by definition, a grave and atrocious offense. (Id., at p. 518) To merit a denial of parole, the murder must be "especially heinous, atrocious or cruel." Striking the victim several times in order to ensure his death did not go beyond what was necessary to commit first degree murder. Thus, it violated due process to deny him parole where the circumstances of the offense were not more aggravated or violent than what was minimally necessary to sustain a conviction for the crime of murder. (In re Elkins,

1  supra, 144 Cal.App.4th at pp. 519-520 [citing Scott, supra, 133 Cal.App.4th

2  at p. 598.) The court, thus concluded under the "some evidence" standard

3  that that Governor's decision lacked a sufficient evidentiary basis, and,

4  as such, violated due process. (Id. at pp. 519-520)

5      The federal courts have likewise expressed grave concern of the

6  potential for due process violations in applying the "some evidence"

7  standard to immutable parole factors. In the landmark decision of Biggs

8  v. Terhune, supra, the Ninth Circuit, while upholding a finding of parole

9  unsuitability, the court admonished in dictum that the parole board's

10 continued reliance on unchanging factors raises the strong possibility

11 of a due process violation. (Biggs v. Terhune, supra, 334 F.3d at p. 917.)

12 The defendant in Biggs was convicted of murdering a potential witness in

13 a unrelated criminal case. He and co-conspirators deceived the victim into

14 thinking they were taking him out of state, then bludgeoning him to death.

15 (Id. at p. 916.) Although Biggs was a model inmate in prison, he was found

16 unsuitable for parole based on the hideous character of the commitment

17 offense. (Ibid.) Although upholding the denial of parole, the Ninth Circuit

18 made it unmistakably clear that it would not tolerate repeated parole

19 denials on factors the inmate could not change. The court expressly found

20 that inmates have a due process liberty interest in parole, and that this

21 interest is infringed by repeated denials based on immutable factors. (Id.,

22 at pp. 914-915 [citing Allen, supra, 482 U.S. at p. 373; Greenholtz, supra,

23 442 U.S. at pp. 7, 11-12.) In the words of the court:

24
25              We must be ever cognizant that due process is
            not a mechanical instrument. It is not a yardstick.
            It is a process. It is a delicate process of adjustment
26          inescapably involving the exercise of judgment by those
            whom the Constitution entrusted with the unfolding
27          of the process. A continued reliance in the future

28                                  - 21 -

> on an unchanging factor, the circumstance of the offense
> and conduct prior to imprisonment, runs contrary to
> the rehabilitative goals espoused by the prison system
> and could result in a due process violation.

(Biggs v. Terhune, supra, 334 F.3d at pp. 916-917.)

Adopting the Bigg reasoning, the Federal District Court, Central District of California, reversed the parole unsuitability finding in the Rosenkrantz case and ordered Mr. Rosenkrantz released from custody. In doing so, the court rejected the state courts' reliance on the "some evidence" standard in repeatedly denying Mr. Rosenkrantz parole based on the facts of the commitment offense. (Roenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063, 1065, 1070.)

Mr. Rosenkrantz was convicted of murdering the friend of his younger brother who had revealed Mr. Rosenkrantz's homosexuality. Over his twenty years of incarceration, he was a model inmate whom all agreed had reformed himself. The district court found that the Board's repeated parole denials based on the gravity of the commitment offense amounted to a denial of due process. (Id., at p. 1070) The court reasoned in pertinent part:

> While relying upon petitioner's crime as an indicator of his dangerousness may be reasonable for some period of time, in this case, continued reliance on such unchanging circumstances--after nearly two decades of incarceration and a half a dozen parole suitability hearings--violates due process because petitioner's commitment offense has become such an unreliable predictor of his present and future dangerousness that it does not satisfy the 'some evidence' standard. After nearly twenty years of rehabilitation, the ability to predict a prisoner's future dangerousness based simply on the circumstances of his or her crime is nil... Furthermore, the general unreliability of predicting violence is exacerbated in this case by several facts, including petitioner's

- 22 -

young age at the time of the offense, the passage of
nearly twenty years since that offense was committed,
and the fact that all of the other evidence in the
record clearly indicates that petitioner is suitable
for parole.

(Id. at pp. 1080-1085)

Another instructive case is Irons v. Carey, (2007) DJDAR 10743; 479
F.3d 658, where the Ninth Circuit upheld its decision in Biggs v. Terhune,
334 F.3d 910 (9th Cir. 2003), expressly acknowledging that Biggs represents
the law of [the] circuit. Id. at 10746) In reaffirming it position the
Ninth Circuit noted "[a]lthough we held that the Board' decision was
supported by "some evidence" because '[t]he murder of which Biggs was
convicted of involved killing a witness in a manner which exhibited a
callous disregard for life,' we made clear that '[a] continued reliance
in the future on unchanging factors, the circumstances of the offense and
conduct prior to imprisonment, runs contrary to the rehabilitative goals
espoused by the prison system and could result in a due process violation.'
(citation.) (Id. at 916-917)

In reference to its decision in Sass v. Board of Prison Terms 461
F.3d 1123 (9th Cir. 2006), the Ninth Circuit concluded, "we nonetheless
held that the Board's reliance on the 'gravity' of the second degree murder
of which Sass was convicted, in combination with prior incidents of unlawful
conduct provided a sufficient basis for the Board to deem Sass unsuitable
for parole. Because the murder Sass committed was less callous and cruel
than the one committed by Irons, and because Sass was likewise denied parole
in spite of exemplary conduct in prison and evidence of rehabilitation,
our decision precludes us from accepting Iron's due process or otherwise
affirming the district court's grant of relief. (Irons v. Carey (2007)

- 23 -

1 | DJDAR 10743 at p. 10746)

2 |   The Circuit Court noted:

3 |       "in all cases in which we have held that a parole
4 |       board's decision to deem a prisoner unsuitable for
       parole solely on the basis of the commitment offense
5 |       comports with due process, the decision was made before
       the inmate had served the minimum number of years
6 |       required by his sentence. Specifically, in Biggs, Sass,
       and here, the petitioners' had not served the minimum
7 |       number of year to which they had been sentenced at
       the time of the challenged parole denial by the Board.

8 |

9 | (Irons v. Carey (2007) DJDAR 10743 at 10746; 479 F.3d 658.)

10 |      Petitioner asserts he is well beyond his minimum term of seven years.

11 | At the time of the challenged hearing petitioner was approximately eight

12 | years beyond that seven year minimum term. According to the holding in

13 | Irons v. Carey (2007) 479 F.3d 658, citing Biggs v. Terhune 334 F.3d at

14 | 916, the continued reliance **solely** on the commitment offense to justify

15 | parole denial can no-longer stand as "some evidence", once the inmate has

16 | served beyond his or her minimum term of confinement and has shown exemplary

17 | behavioral evidence of rehabilitation. Here in the instant case, Petitioner

18 | has done so, in Biggs he was challenging his initial hearing, Petitioner

19 | is challenging his sixth. In Sass, he was denied parole on the combination

20 | of his commitment offense and prior criminal history, Petitioner has no-

21 | criminal history, Petitioner has no criminal history. In Irons, he was

22 | denied parole based on the atrocious and egregious nature of the murder.

23 | Petitioner asserts his culpability in his commitment offense of kidnap

24 | for robbery does not rise to the level of a particularly egregious act

25 | to justify a parole denial. If the decision in this case is allowed to

26 | stand in light of the fact presented, "parole in this case is remote to

27 | the point of non-existence." (Irons v. Warden, 358 F.Supp.2d 936, 947 (E.D.

28 | Cal. 2005)

- 24 -

Finally, in the recent case of <u>Willis v. Kane</u>, ____ F.Supp.2d ____, 2007 WL 1232060 (N.D. Cal. 2007), where Mr. Willis was sentenced to a term of 15 years to life as the result of a second degree murder conviction of his 19th month old daughter. On September 13, 1983, Willis striked his daughter with a open hand, she fell to the floor and hit her head, that evening she began to throw-up and lapsed in to a lethargic and coma like state, Willis put her to sleep for the evening. At about noon the following day, Willis discovered that his daughter was dead. He placed her body in the bedroom closet. The next morning, Willis put her lifeless body into dumpster. (Id. at p. 5-6.)

On August 28, 2003, Willis attended his seventh parole board hearing. The BPT found him unsuitable for parole. He appealed that decision without any relief in the state courts. On Habeas Corpus review in the Northern District of California the Honorable United States District Judge Marilyn Hall Patel, granted Mr. Willis' Habeas Corpus petition, in doing so, she upheld the rationale in <u>Biggs</u> and <u>Irons</u>, holding at page 6, of her opinion;

> There was sufficient evidence for the BPH to determine that Willis committed the offense in an especially cruel manner. The facts of the crime will be just as terrible 20 years from today as they are today, and as they were 20 years ago. Notwithstanding, the terrible nature of the crime, the critical question the BPH was supposed to decide at the parole suitability hearing was whether consideration of the public safety requires a more lengthly period of incarceration for this individual.' See <u>Cal. Penal Code §3041(b)</u>. When the totality of circumstances are conidered, Willis' 1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003. Willis' case is the kind of case **Biggs** and **Irons** cautioned about; "the continued reliance on the immutable events of the crime to deny parole for present dangerousness despite the candidate's exemplary behavior in prison, favorable current psychological reports, and the absence of any other violence or criminal record.

(Willis v. Kane, _____ F.Supp.2d _____, 2007 at p. 6)

- 25 -

1    The question of whether the commitment offense alone is allowed to

2    stand by the Superior Court as "some evidence", is an unreasonable

3    application or/an contrary to well-established judicial precedent of the

4    United States Supreme Court and can not be sustained as a matter of law.

5    (notwithstanding that Judge Canepa did not decide the question of whether

6    the repeated denials of parole based on the commitment offense violated

7    due process in this case.) Not only is the basis for denial is firmly rooted

8    in the concrete of the unchanging facts of the commitment offense, but

9    its relevancy was not contextual with the substantial record of Mr. Parker's

10   suitability, and this is so because of the 'black hole' where a standard

11   of evidence should be. Under these circumstances, the continued reliance

12   on the unchanging immutable and now irrelevant factor at the 2006 hearing

13   violated due process.

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28

## A) Individualized Consideration (Culpability)

Due process requires a review of all the records pertinent to the parole consideration hearing to be relied upon by the Board. (Greenholtz v. Nebraska Penal Inmates, (1979) 442 U.S. 1, 14-16) Moreover, the Board's "decision must reflect an individualized consideration of the specified criteria and cannot be arbitrary and capricious." (Rosenkrantz, supra, 29 Cal.4th at p. 677; Scott, supra, 133 Cal.App.4th at pp. 594-595.)

Contrary, to the Court's assertion that the Board fully considered Petitioner's post-conviction factors in their decision-making process, a review of the decision portion of the hearing shows that the decision was rendered, not to reach a fair and just conclusion, but to merely facilitate further proceedings to help the Board bring closure to the victim's family. (See, Exhibit "B", p. 69) Thus, reducing Petitioner's hearing to a pro forma denial.

Specifically, the Board is using the proceedings to coerce Petitioner through threat of further deprivation of life and liberty to achieve its agenda, as evident by its statement that "if there is anything you can do in your power to help the family of the victim, Mr. Wainwright, who only lived 34 years, if there is anything you can do to help the family, I'm sure everyone would be sympathetic to getting you out of [prison], because you are taking up a lot of room here." (Exhibit "B", p. 74-75)

Petitioner strongly contends, there is no nexus between bringing the victim's family closure and his parole risk. In further illustration of the pro forma denial, the Board acknowledged that Petitioner was going through a painful and stressful period when he was breaking up with his girlfriend. (Exhibit "B", pp. 13, 20, 53, 71), thus, making him vulnerable to being induced by his brother. Yet, the Board did not factor stress into

- 27 -

their determination. This is a factor the Board is required to consider under California law. (Scott, supra, 113 Cal.App.4th at pp. 595-596; 15 CCR §2284, subd. (a)(3) ["The prisoner had no apparent predisposition to commit the crime but was induced by others to participate in its commission"].)

Similarly, although the Board "commended" Petitioner for "outstanding programming" (Exhibit "B", p.71, 74), its decision failed to reflect consideration of his institutional behavior as a circumstance tending to show his suitability for parole. This is a factor the Board is required to consider under the regulations. (Ramirez, supra, 94 Cal.4th at pp. 571-572; 15 CCR §2281, ubd. (d)(9), §2402, subd. (d)(9).)

Likewise, while only cursory statements in regards to the remaining factors, i.e., "no criminal history, not even a tumultuous time in your life," "low risk," etc., were offered by the Board, its decision failed to reflect -- his lack of criminal history, stable social history, signs of remorse, no juvenile record and understanding and plans for future - as circumstance(s) tending to show his suitability for parole. These factors the Board is required to consider under the regulations. (15 CCR §§ 2281, subd. (d) et seq., 2402, subd. (d) et seq.)

Accordingly, Petitioner submits, in light of substantial evidence in the record demonstrating rehabilitation. The Board's cursory statements and pro forma consideration, his right to due process was denied


### (Culpability)

The touchstone of parole determination is individualized consideration. See, In re Rosenkrantz, 29 Cal.4th 616, 638; 128 Cal.Rptr.2d 104 (2002).) The constitutional importance of individualized consideration was also

- 28 -

emphasized in People v. Dillion, 34 Cal.3d 441, 481-482; 194 Cal.Rptr. 390 (1982), in which the Supreme Court stated that the "punishment must be tailored to [the individual's] personal responsibility."

Here to justify their position that Petitioner's crime was cruel, callous, an a exceptional disregard for human suffering, thus making his commitment offense beyond the minimum elements to merit parole unsuitability. The Board and Court determined that because the victim was bound, gagged and placed in the trunk of a vehicle to which [Petitioner] contributed to by failing to mitigate the circumstances of [the victim's] confinement and that Petitioner escalated the kidnap when he ran out of the apartment and slammed the trunk on the victim head. All these forementioned reason(s) is without merit. The Board concluded their illegal finding of unsuitability by stating the following, "I'm sure you understand the circumstances and your culpability in this crime that more than likely lead to the death of Mr. Wainwright. (Exhibit "B", p. 75)(The Board noted that Petitioner was found guilty of only kidnap for robbery. (Ex. "B", p.70)

Petitioner asserts that the vulnerable position of being bound, gagged, and placed in the vehicle that the Board and Court refers to, occurred prior to the offense Petitioner was convicted of. Interestingly enough, even the Deputy District Attorney who attended the hearing noted in his closing statement that had Petitioner not ran out of the apartment and slammed the trunk on the victim (which is the point of origin of Petitioner's commitment offense) it might have gone a long way towards eliminating the specter of his involvement in this case. (Exhibit "B", p. 55.) Accordingly, since Petitioner did not bind, gagged or place the victim in the vehicle.[6] The Board and Courts' use of this factor was arbitrary and capricious. (In re Scott, (2004) 119 Cal.App.4th 871, 891-892.)

Similarly, the Court assertion that Petitioner exhibited particularly egregious acts -- when he ran out of the apartment and slammed the trunk on the victims' head and then him an another person drove off is without merit. The Court and Board neglect to mention that slamming the trunk on the victim (detaining him) and driving off (carrying away the victim) does not suggest acts beyond the bare minimum-elements necessary to commit the kidnap, but rather, highlights the minimum-elements themselves.

While pondering what one is about to do is the essence of premeditation, Petitioner's premeditation if any at all, was not elaborate or prolonged. (Cf. Rosenkrantz, at 678 ["'full week of careful preparation, rehearsal and execution'"]; In re Lowe, (2005) 130 Cal.App.4th 1405 [also involved planning and premeditation].)

Notwithstanding the Court and Board's description of Petitioner's crimes, they were not committed in a "cruel manner" -- or at least were no more cruel than whenever one human being kidnaps another -- and were not committed "in an especially heinous, atrocious or cruel manner." The measure of cruelness is not general notions of common decency or social norms, for by that yardstick all kidnap robberies are cruel. (Scott, supra, 119 Cal.App.4th at p. 891) ["'[A]ll [violent crimes] by definition involves some callousness i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others.'"].) Rather, the inquiry is whether among [kidnap robberies] the one committed by Petitioner was particularly heinous, atrocious or cruel. (Ramirez, supra, 94

---

**6**

  At the time of his arrest, co-defendant Frank Wilson testified that "he and Lamar abducted the victim in Oakland, stripped the van of its safe an all monies, and transported the victim to Fairfield in [Petitioner's] vehicle." He further admitted that he and Lamar then drove to [Petitioner's[ apartment in San Pablo [with the victim still bound and gagged in the trunk] and unloaded the bounty. (See Exhibit "B", p. 9-10)

- 30 -

Cal.App.4th at p. 570, disapproved on another point in <u>Dannenberg</u>, supra, 34 Cal.4th 1061, 1082-1083, 1100.) By that measure, Petitioner submits that his crime was more commonplace than especially cruel. Accordingly, the Board and Court's use of this factor is yet another indication of an arbitrary and capricious determination.

Furthermore, what the Board and Court fails to acknowledge is Mr. Parker's co-defendant's were the one(s) who bound, gagged and placed the victim in the trunk, not Mr. Parker (Exhibit "B", p. 9-10) Petitioner's co-defendant (Lamar) was found responsible for the death of the victim by way of jury trial. Whatever callousness was indicated by Petitioner's co-defendant's action should not be attributed to Mr. Parker's nor should it be used to assess Mr. Parker's current dangerousness.

The <u>Dannenberg</u> court emphasized throughout its opinion that the Board must give the prisoner "individualized" consideration. (<u>Dannenberg</u>, 23 Cal,Rptr.3d at 430-432, 434.) What the Board fails to distinguish or acknowledge in the exercise of their discretion, is that Petitioner's "suitability" for parole <u>must</u> be determined based upon Petitioner as an individual and <u>not</u> upon the acts of his co-defendant's or anyone else. (Id.) Petitioner is not equally culpable for the results of his co-defendants' acts, Petitioner's current level of threat or non-threat to the public is his own, and the evidence shows that level to be zero. The Board's own regulations, California Code of Regulations, Title 15, §2281 (c)(1) expressly states, "<u>The prisoner</u> committed the crime in an especially heinous, atrocious and cruel manner." It does <u>not</u> state that the prisoner <u>and</u> his co-defendant's committed the crime in an especially egregious manner. Even though Petitioner made substantial contributions to the facilitation of the robbery he did not in any way anticipate

- 31 -

1  physically harming anyone, and the Board may not declare Petitioner an
2  unreasonable risk of danger to the public based upon the nature of violence
3  and viciousness of his co-defendant's. (Dannenberg, 23 Cal.Rptr.3d at 428
4  ["if the circumstances of a particular murder persuade the Board that the
5  prisoner [singular] who committed it is presently too dangerous...",
6  (emphasis added)]; Id. at 430 ["Indeed, subdivision (b) [of Penal Code
7  §3041] indicates otherwise by providing that the suitability determination
8  should focus upon the public safety risk posed by 'this individual',
9  (emphasis added)]: Id. at 431 [the Board's findings of unsuitability must
10 flow from the "pertinent criteria," and must be supported by "some evidence"
11 in the record [not an opinion] before the Board and "the commitment offense
12 [must] indicate a continuing danger to public safety,... 'and the
13 determination of suitability for parole involves a paramount assessment
14 of public safety risk posed by the particular offender, without regard
15 to a comparative analysis of similar offenses committed by other person(s)",
16 which in the instant case is his co-defendant's.

17     While no one seriously contends lack of seriousness of the offenses,
18 the evidence clearly shows that Petitioner's conduct involved no more than
19 was necessary to commit his crime.

20

21     Finally, it is rather disingenuous to acknowledge that Petitioner
22 was acquitted of murder, but then suggest that his conduct "exceeded the
23 minimum requirement for a kidnap for robbery conviction" because his actions
24 "may have led to the victim's death." (See Exhibit "B", p.75)

25     The Board and Court reliance upon these factors to support their
26 position is misplaced. While it's true that "'[t]he nature of [a] prisoner's
27 offense, alone, can constitute a sufficient basis for denying parole"

28
                              - 32 -

(Dannenberg, supra, 34 Cal.4th at p. 1095), the Board "must exercise its discretion in good faith, neither arbitrary nor capriciously." (Strum, supra, 11 Cal.3d at p.268.)

Here, the Board and Courts' have completely circumvented the law by adding and/or omitting elements from the guidelines established by the Legislature. Specifically, Petitioner was sentenced by a jury under the provisions of Penal Code §209, subdivision (b) which states in pertinent part "[a]ny person who kidnaps or carries away any individual to commit robbery... shall be punished by imprisonment in the state for **life with the possibility for parole**." Noteworthy, the elements cited by Board and Court are not in the structure. In contrast, subdivision (a) provides in pertinent part:

> "[a]ny person who ... kidnaps or carries away another person ... or any person who aids or abets any such act ... shall be punished by imprisonment in state prison for life without the possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm."

(Id; emphasis added.) Consequently, Petitioner received no sentencing enhancements for aggravation. The Court asserts that the "requirements that apply to a sentencing authority... [is] not in any way applicable to an administrative parole proceeding." (See Appendix "1", p. 6)

The Court erred, The Board's discretion over parole suitability determinations is not a license "to recharacterize the commitment offense as a crime carrying a more severe penalty." (Ramirez, supra, 94 Cal.App.4th at p. 569 fn 8, citing In re Rosenkrantz, (2002) 80 Cal.App.4th 409, 425.)

When making its determination, the Board is guided by several factors, including 'inter alia', the sentencing rules that the Judicial Counsel may issue and any relevant sentencing information. (Penal Code §3041, subd. (a); Cal. Code of Reg., (CCR) tit. 15, §§ 2283, 2284; and Penal Code

- 33 -

§1168(b).)

Even assuming arguendo, the sentencing standard is not applicable to administrative parole proceedings in the context observed by the Superior Court, the procedural protections of due process prevents the Board from "redefin[ing] the elements [of a Statute] that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." [7] (Apprendi v. New Jersey, (2000) 530 U.S. 466, 485, quoting Mullaney v. Wilbur, 421 U.S. 684, 698; see also Terhune v. Superior Court, (1998) 65 Cal.App.4th 864, 873 ["an administrative agency has no discretion to promulgate a regulation that is inconsistent with the governing statutes"]; Rosenkrantz, supra, 29 Cal.4th at pp. 662-663 ["the separation of powers doctrine is violated when the actions of a branch of government defeats or materially impair the inherent functions of another branch.")

Accordingly, the Court and Board's findings that Petitioner acted in an especially callous manner, in addition to being inconsistent with the jury acquitting him of murder (cf. Scott, supra, 119 Cal.App.4th at pp. 889-890), is unsupported by (and indeed may be irreconcilable with) the evidence on which the Court and Board purported to rely. Consequently, The Court and Board's reliance on this factor was arbitrary and capricious in violation of Petitioner's protected liberty interest in parole.

---

[7]
 The United States Supreme Court made clear that criminal law "is concerned not only with guilt or innocence in the abstract, but also with the degree of criminal culpability assessed." (Apprendi, supra, 530 U.S. p. 486; emphasis added.) The Court further explained that "[t]he degree of criminal culpability the legislature chooses to associate with particular, factually distinct conduct has significant implications both for a defendant's very liberty, and for the heightened stigma associated with an offense the legislature has selected as worthy of greater punishment." (Ibid.)

- 34 -

## B) Predictive Value

The sole reason for Mr. Parker's denial of parole suitability is predicated on the Board's continuous reliance on the immutable facts of his commitment offense. While the denial may be based on the commitment offense alone, the predictive value of the commitment offense "may be very questionable after a long period of time." (In re Scott, (2005) 133 Cal.App.4th 573, 595)

In the landmark case of Biggs v. Terhune, 334 F.3d 913, the Ninth Circuit stated that, "[a] continued reliance in the future on an unchanging factor, the circumstances of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goal espoused by the prison system and could result in a due process violation. (Id. at 917)

One district court has explained the rationale for underlying this aspect of Biggs as follows:

> Whether the facts of the crime of conviction or other unchanged criteria, affect the parole eligibility decision can only be predicated on the "predictive value" of the unchanged circumstance. Otherwise, if the unchanged circumstance per se can be used to deny parole eligibility, sentencing is taken out of the hands of the judge and totally reposited in the hands of the BPT. That is, parole eligibility could indefinitely and forever delayed based on the nature of the crime even though the sentence given set forth the possibility of parole -- a sentence given with the facts of the crime fresh in the mind of the judge. While it would not be a constitutional violation to forego parole altogether for certain crimes, what the state can not constitutionally do is have a sham system where the judge promises the possibility of parole, but because of the nature of the crime, the BPT effectively deletes such from the system. Nor can a parole system, where parole is mandated to be determined on someone's future potential to harm the community, constitutionally exist where despite 20 or more years of prison life which indicates the absence of danger to the community in the future, the BPT commissioners revulsion towards the crime itself, or some other unchanged circumstance, constitutes the alpha and omega of the decision. Nobody elected the BPT commissioners as sentencing judges. Rather, in some realistic way,

> the facts of the unchanged circumstance must indicate
> a present danger to the community if release, and this
> can only be assessed not in a vaccum, after four or
> five eligibility hearings, but counterpoised against
> the backdrop of prison events. <u>Bair v. Folsom State
> Prison</u>, 2005 WL 2219220, *12 n.3 (E.D.Cal. 2005), <u>report
> and recommendation adopted by</u>, 2005 WL 3081634 (E.D.Cal.
> 2005)

The continuous reliance on these unchanging factors as a predictive value warranting parole unsuitability amounts to converting Petitioner's sentence of parole possibility at seven (7) years to a de facto life without the possibility of parole. The use of this immutable circumstance after 15 years is contradictive to the most recent Ninth Circuit ruling in the case of <u>Irons v. Carey</u>, (2007) DJDAR 10743. The Court stated the following:

> We note that in all cases in which we have held that
> a parole board's decision to deem a prisoner unsuitable
> for parole solely on the basis of his commitment offense
> comports with due process, the decision was made before
> the inmate had served the minimum number of years
> required by his sentence. Specifically, in Biggs, Sass,
> and here, the petitioners' had not served the minimum
> number of years to which they had been sentence at
> the time of the challenged parole denial by the Board.
> <u>Biggs</u>, 334 F.3d at 912; <u>Sass</u>, 461 F.3d. All we held
> in those cases and all we hold today, therefore, is
> that, given the particular circumstances of the offenses
> in these cases, due process was not violated when these
> prisoners were deemed unsuitable for parole prior to
> the expiration of their minimum terms. (Id. at 10746)

Petitioner is now 15 years into his sentence with a seven (7) year minimum. Petitioner has served twice the minimum (14 years) term for which he was sentenced.

Furthermore, in denying Petitioner's habeas writ the Contra Costa County Superior Court determined on page 4 of the decision that while the denial may be based on the commitment offense alone, the predictive value of the commitment offense 'may be very questionable after along period of time. Citing <u>In re Scott</u>, (2005) 133 Cal.App.4th 573, 579 (lapse of

- 36 -

18 years); In re Elkins, (2006) 144 Cal.App.4th 475, 498 (lapse of 26 years); Martin v. Marshall, (2006) 431 F.Supp.2d 1038 (lapse of 26 years).

The court's statement that Petitioner's incarceration has not been long or significant in comparison to three cases of murder is without merit. The court's predictive comparative analysis of Petitioner's crime of kidnap for robbery to that of 1st and 2nd degree murder was unreasonable in light of Petitioner's commitment offense.

In determining the predictability value the court failed to apply the appropriate standard. The court failed to keep in perspective the sentencing standard (guidelines) and structure (regulations) in which Petitioner is confined in comparison to the sentencing standard and structure of those particular cases of homicide. Petitioner's sentencing standard and structure is found in Penal Code §209(b); §1168(b); §3041; CCR, tit. 15, §§2280-thru-2290, which is for the crime of kidnap for robbery. CCR, tit. 15, sections 2400-2407, are specifically regulated for the crime of 1st and 2nd degree murder, Penal Code §187. The court and board failed to apply the correct standard governing Petitioner's sentence, which is a due process violation. ("Due process varies according to case factors," Morrissey v. Brewer, 408 U.S. 471, 481 (1972)

In assessing the predictive value in the cases of In re Scott, In re Elkins, and Martin v. Marshall. The court determined in In re Scott that 18 years was sufficient for a term of 17 years to life, one (1) year over his minimum term. The case of In re Elkins, the court determined that 26 years was beyond the term of 20 years to life, six (6) years over his minimum term. In the case of Martin v. Marshall the court also determined that 26 years was far to much time for a sentence of 25 years to life, six years (6) over his minimum term. Petitioner asserts that 15 actual

- 37 -

1  years incarcerated has put him eight (8) years beyond his minimum term
2  of seven (7) years. Petitioner has far exceeded his time for his commitment
3  offense. Petitioner has served his minimum term as well as the minimum
4  terms for second murder. The court's comparison of Petitioner's kidnap
5  for robbery to that of the likes of 1st and 2nd degree murder as a
6  predictive value to assess Petitioner's current and future dangerousness
7  is a violation of Petitioner's due process rights and equal protection
8  under the 5th and 14th amendments of the United States Constitution.

9

10  Finally, what Petitioner submits as of 'paramount importance' in
11  determining his predictive value, is that other than the use of the
12  commitment offense as a factor weighing against his suitability there is
13  absolutely NO EVIDENCE of evidentiary sufficiency that shows Petitioner
14  to be a current threat to public safety. There is nothing in the record
15  that coincides with the Board's reasoning that Mr. Parker poses a danger
16  to society.

17  In reference to the Board and State court's assessment as to
18  Petitioner's behavior and conduct the Board stated the following:

19  You seem like just a mellow guy (**Id. at 72**). No criminal
    history, not even a tumultuous time in your history
20  (**Id. at 72**). Again. I want to commend you -- you've
    made it a difficult decision for us, a very difficult
21  decision for us, because of the way you've programmed,
    your discipline, your history (**Id. at 74**). ,if there
22  is anything that you can do in your power to help that
    family, I'm sure everyone would be sympathetic to
23  getting you out of here, because you are taking up
    a lot of room here (**Id. at 75**) And you're demeanor
24  and your presentation today, sir, is outstanding,
    outstanding. It's hard for us to give you another year,
25  and we wrestled over it, (**Id. at 75**). (See Exhibit
    "B", Hearing Transcripts.)

26

27  Petitioner asserts other than his commitment offense there is NO
28  EVIDENCE that can attest that Petitioner has demonstrated any conduct that

would give inference that he poses any degree of threat to the public.

The Board and State court has determined that Petitioner's conduct and behavior (demeanor) is outstanding. This concession to Petitioner's current conduct and behavior cannot on one hand be used to commend Petitioner for meeting the qualification under CCR, title 15, §2281 (d)(1-9)(suitability factors), and on the other hand use it as a predictive value to justify that Petitioner's past conduct and behavior (commitment offense) 15 years ago makes him a current threat to society. The United States Supreme Court has held in Schware v. Board of Bar Examiners (1957) 353 U.S. 232, 1 L.Ed.2d 796, 77 S.Ct. 752:

> There is nothing in the record which suggest that Schware [Petitioner] has engaged in any conduct during the past 15 years which reflects adversely on his character. (Id. at 802) Despite Schware's showing of good character, the Board and court below thought there were certain facts in the record which raised substantial doubts about his moral fitness. (Id. at 802)

The court further stated at p. 802:

> Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory. Cf Yick Wo v. Hopkins, 118 U.S. 356, 30 L.Ed 220, 6 S.Ct. 1064.

Petitioner asserts after 15 years on an sentence with a minimum term of 7 years, the Board's continuous reliance solely on the commitment offense as a predictor of violence in light of overwhelming evidence to the contrary was unreasonable. The Board and State court's decision to deny Petitioner parole was contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation (Bigg, 334 F.3d 910, 916-917). For these reasons the Board decision denying Mr. Parker

suitability cannot be sustained.

In closing, Petitioner asserts that the failure of the State courts to find that due process was violated in his case and justifies the reversal of the Board's denial of parole to Mr. Parker is an unreasonable application of well-established United States Supreme Court precedent. Applying Edwards, the application of the "some evidence" standard here has allowed to stand a decision by the Board of Parole Hearings that was arbitrary and capricious, that is not supported by any indicia of reliability, and is based on a constitutionally defective process.

The Court should so find.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

**V.**

**CONCLUSION**

There is no evidence to support the Board's findings that Mr. Parker poses an unreasonable risk of danger to the public if released. This is the only overriding statutory concern, and the record overwhelmingly indicates Mr. Parker lack of risk to public safety if released to parole. Parole means he is under constructive custody, supervised by the Department of Parole and Probation. His parole plans were found to be outstanding. Mr. Parker is entitled to federal habeas relief.

WHEREFORE, on good cause shown, the Petition for Writ of Habeas Corpus should be GRANTED.

Dated: August 8, 2007

Respectfully submitted,

Clifford Lelikona Parker
Clifford Lelikona Parker
Petitioner in pro se

//
//
//
//
//
//
//
//

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
(C.C.P. §§ 1013(A), 2015.5)

I, _____ Clifford Lelikona Parker _____, declare:
I am over 18 years of age and I am party to this action.  I am a
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California.  My prison address is:

Clifford L. Parker___ , CDCR #: _J-43369_____
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: _B-226U_____
SOLEDAD, CA  93960-0689.

On __August 8, 2007_____ , I served the attached:

"MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HABEAS CORPUS PETITION"

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined.  The envelope was addressed as
follows:

UNITED STATES DISTRICT COURT              OFFICE OF THE ATTORNEY GENERAL
NORTHERN DISTRICT OF CALIFORNIA           Attn: Supervising Deputy A.G.
450 Golden Gate Avenue                    455 Golden Gate Ave. Suite #11000
San Francisco, CA 94102-3483              San Francisco, CA 94102

     I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.
Executed on _August 8, 2007_ .

Declarant