UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**ORIGINAL**

CLIFFORD LELIKONA PARKER,
CDCR #J-43369

        Petitioner,

v.

BEN CURRY, Warden,
California Training Facility,

        Respondent.

Case No. C 07 4215

RECEIVED
AUG 1 6 2007
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

EXHIBITS TO
PETITION FOR WRIT OF
HABEAS CORPUS BY A
STATE PRISONER.

SBA
(PR)

[28 U.S.C. §2254]

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| A. | 2004, 2005, 2006 LIFE PRISONER EVALUATION............ | INFRA |
| B. | 2006 BPT PAROLE HEARING TRANSCRIPT................. | // |
| C. | PETITION FOR REVIEW - CALIFORNIA SUPREME COURT...... | // |
| D. | 2003 LIFE PRISONER EVALUATION........................ | // |
| E. | 2006, 2004 MENTAL HEALTH EVALUATION................. | // |
| F. | 1996, 1998, 2000 MENTAL HEALTH EVALUATION........... | // |
| G. | CHRONOS & CERTIFICATES & OTHER DOCUMENTS IN SUPPORT OF PAROLE.................................................. | INFRA |

**APPENDIX:**

    Appendix 1: Contra Costa County Superior Court denial of Petition for Writ of Habeas Corpus..

    Appendix 2: The First Appellate District Court denial of Petition for Writ of Habeas Corpus.....

    Appendix 3: California Supreme Court denial of Petition for Review.

# EXHIBIT "A"

BOARD OF PRISON TERMS  
STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING  **ADDENDUM**

☐ PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 10/05 to Present | | | **PLACEMENT**: Remains at the Correctional Training Facility (CTF). <br> **CUSTODY**: Remains at Medium A. <br> **VOC. TRAINING**: None noted. <br> **ACADEMICS**: None noted. <br> **WORK RECORD**: Continues full time assignment working as a meat cutter. Work supervisor's reports reflect satisfactory to above average grades. <br> **GROUP ACTIVITIES**: Completed 12 week Anger Management Class sponsored by Judge C. Lindsey, Protestant Chaplain (12/8/05). <br> **PSYCH. TREATMENT**: None noted. <br> **PRISON BEHAVIOR**: Parker has remained disciplinary free this period. <br> **OTHER**: None. |

CORRECTIONAL COUNSELOR'S SIGNATURE: _/s/ P. Wil___  DATE: 4.25.06

PARKER    J43369    CTF-SOLEDAD

**Inmate Copy**

BPT 1004 (REV 7/86)

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                    ADDENDUM

_____    4.25.06
G. Williams                         Date
Correctional Counselor I


_____    4/25/06
R. Leach                            Date
Correctional Counselor II


_____    4-25-06
R. Pope                             Date
Facility Captain


_____    4.27.06
D.S. Levorse                        Date
Classification and Parole Representative


PARKER                    J43369                    CTF-SOLEDAD

BPT 1004 (REV 7/86)

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
NOVEMBER, 2005 CALENDAR

PARKER, CLIFFORD

J43369

I. **COMMITMENT FACTORS:**

A. **LIFE CRIME:** PC209(b), Kidnap for Robbery with PC211, Robbery and PC212.5(b), Robbery 1st degree. Contra Costa County Superior Court case #923422-0. TERM: 7 years to life for PC209(b). PC211 and 212.5(b) was stayed pursuant to PC654. VICTIM: Walter Wainwright, age unknown.

   1. **Summary of Crime:** All relevant documents from the previous hearing including the transcripts have been considered and that information appears valid. This writer has no further information to add.

   2. **Prisoner's Version:** Remains the same as stated in the previous hearing.

   3. **Aggravating/Mitigating Circumstances:**

      (a) **Aggravating Factors:** Remains the same as stated in the previous hearing.

      (b) **Mitigating Factors:** Remains the same as stated in the previous hearing.

B. **MULTIPLE CRIMES:** N/A.

II. **PRECONVICTION FACTORS:**

A. **Juvenile Record:** Documents from the previous hearing have been considered and that information remains valid.

B. **Adult Convictions:** Documents from the previous hearing have been considered and that information remains valid.

C. **Personal Factors:** Documents from the previous hearing have been considered and that information remains valid.

III. **POSTCONVICTION FACTORS:**

A. **Special Accommodations/Disability:** None.

Sent to Inmate on 11/02/05



PARKER, CLIFFORD    J43369    CTF    NOV/2005

B. **Custody History:** Documents from the previous hearing(s) have been considered and that information remains valid. Since his last Board of Prison Terms (BPT) hearing on 11/16/04, in which his parole was denied for one (1) year, inmate Parker has remained at the Correctional Training Facility (CTF), in the General Population (GP). He has retained his custody at Medium A with a Preliminary/behavior classification score of 0 and a Mandatory Minimum classification score of 19 (the change is due to the revised classification scoring system effective 10/15/02).

C. **Work, Education, Vocation, Therapy & Self-Help Activities:** Refer to the Postconviction Progress Report for details.

D. **Disciplinary History:** Refer to the Disciplinary Sheet for details.

IV. **FUTURE PLANS:**

A. **Residence:** Inmate Parker submitted a seventy (70) page residence & employment parole plans with a summary of achievements, which is attached and made a part of this report.

B. **Employment:** Inmate Parker submitted a seventy (70) page residence & employment parole plans with a summary of achievements, which is attached and made a part of this report.

C. **Assessment:** Inmate Parker has been incarcerated over 10 years, he has matured and shown marked progress towards maintaining an overall positive attitude. He has been able to maintain himself relatively disciplinary-free since 7/23/98. Inmate Parker's transition to the community would be greatly enhanced by the inclusion of actual employment offers. This writer does not foresee any problems provided the support and employment letters are submitted prior to this scheduled hearing.

V. **USINS STATUS:** Inmate Parker is a United States citizen born on 11/25/66 in Oakland, California.

VI. **SUMMARY:**

A. Prior to release, the prisoner could benefit from:
(1) Remain disciplinary free;
(2) Participate in self-help, when available;
(3) Earn positive chronos;

B. This Board Report is based on 3 hours of Central File research, an interview with inmate and incidental contact with the prisoner during this period of review.

C. Inmate Parker reviewed his Central File pursuant to in re Olsen on 10/20/05.

PARKER, CLIFFORD    J43369    CTF    NOV/2005

D.  No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan for effective communication.

_____ 10/20/05
F. I. DeGuzman                Date:
Correctional Counselor I

_____ 10-25-05
R. Leach                      Date:
Correctional Counselor II

_____ 10-27-05
R. Pope                       Date:
Facility Captain

_____ 10-28-05
D. S. Levorse                 Date:
Classification and Parole Representative

BOARD OF PRISON TERMS
STATE OF CALIFORNIA

# LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

- [ ] DOCUMENTATION HEARING
- [x] PAROLE CONSIDERATION HEARING
- [ ] PROGRESS HEARING

INSTRUCTIONS
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 7/21/04 to 10/20/05 | | | **PLACEMENT**: Remains housed at CTF, in the GP. **CUSTODY**: Remains at Medium A. **ACADEMIC**: Remains enrolled in Education, receiving satisfactory assessment per the Education Progress Report (CDC128E) dated 9/26/05. **WORK**: Remains assigned as a Meat Cutter, receiving above average to exceptional grades per the Work Supervisor's Report (CDC101) dated 6/30/05. **VOCATION**: None noted this period. **GROUP ACTIVITIES**: Laudatory chrono for his generous contribution for the 4/04 Easter Banquet per CDC128B dated 8/31/04. Laudatory chronos for participation in the Alcoholics Anonymous (AA) program per CDC128B dated 9/30/04, 12/31/04, 6/30/05 and 9/30/05. Laudatory chrono for sucessful completion of the Christian Basics Class per CDC128B dated 1/24/05. Laudatory chrono for completion of Dr. Thomas Gordon's Family Effectiveness Training/Harmony in the Home self-help program per CDC128B dated 2/24/05. **PSYCH TREATMENT**: None noted this period. **PRISON BEHAVIOR**: Disciplinary free since 7/17/98. **OTHER**: N/A. |

CORRECTIONAL COUNSELOR'S SIGNATURE
F. I. DeGUZMAN

DATE: 10/20/05

PARKER, CLIFFORD   J43369   CTF   NOV/2005

BPT 1004 (REV 7/86)
Page _1_

# DISCIPLINARY SHEET

**CDC 128A's:**

07/16/98    MCSP               Failure to take prescribed medications.

**CDC 115's:**

None

PARKER, CLIFFORD           J43369              CTF                NOV/2005

DISCIPLINARY SHEET

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING #4
SEPTEMBER 2004 CALENDAR

PARKER, CLIFFORD                                                J-43369

I. **COMMITMENT FACTORS:**

A. **Life Crime:** Kidnap/Robbery PC209(b) plus one count of Robbery 2nd degree PC 211 which was stayed pursuant to Penal Code 654, from Contra Costa County, case #923422-0. Received by CDC on 12/16/94 with a sentence of Life with possibility of parole (7 to life) and an MEPD of 5/5/98. Victim; Walter Wainwright, age 34, weapon used; unknown.

   1. **Summary of Crime:** Inmate Parker and the victim, Walter Wainwright were civilian employees of the Navy out of the Alameda Naval Air Station. They worked as suppliers for a vending machine company. On July 14, 1992 the victim's supervisor became concerned when the victim did not return to work at 10:30 or 11:00 a.m. to make his scheduled cash drop. He was last seen at 10:30 a.m. that morning by one of his fellow employees. It was estimated that he had approximately $4,000.00 in his possession.

   Contra Costa Sheriff's officers received a complaint that, at approximately 4:30 p.m. on July 14, 1992 a man with tape on his mouth and bound hands was locked in the trunk of a 1977 Ford Maverick. Witnesses indicated that they saw the vehicle enter an apartment complex at 15690 Crestwood, #401. When they first saw the vehicle there were three occupants in the car. A maintenance man observed the victim in the trunk of the car. He had his mouth duct taped and his right arm appeared to be bound behind his back. His left arm was free and he was terror stricken. Before the maintenance man could go to the victim's aid, Parker ran out of the apartment and slammed the trunk on the victim's head, he and one other person then drove off. Other witnesses saw Parker and another person, described as a Hispanic man taking blankets, boxes, and money bags out of the apartment and putting them into the car.

   The car was identified as belonging to Parker and it was found that he was a resident of the apartment from which he was seen carrying various articles. The sheriff's department eventually found that Parker was an

SENT TO INMATE ON: 7/30/04

employee for the Federal Government in Alameda. On July 15, 1992 the connection between Parker and the victim was made and he was arrested on this date. Initially Parker indicated that the whole situation was a joke and apologized for any inconvenience. He claimed that he, his brother Lamar and Frank Wilson (crime partners) had gotten drunk with a guy known to him as "John". He claimed that a bet was made about how quickly John could get out of the trunk of Parker's car. On July 17, 1992 Frank Wilson was arrested and he stated that the victim had been kidnapped, and was originally the result of a botched robbery attempt by himself, Parker, and Parker's brother, Lamar.

He states that he and Lamar abducted the victim in Oakland, stripped the van of it's safe and all moneys, and transported the victim to Fairfield in Parker's vehicle. In the mean time, Parker returned to work at the Naval Air Station in Alameda. Frank Wilson and Lamar Parker returned to Parker's apartment in San Pablo where they unloaded the bounty. They then went to the Naval Air Station with the victim still secured in the trunk and picked up Parker from work. All three returned to the apartment. This was where the victim nearly escaped. It was at that time that Parker came down from the apartment and closed the trunk on the victim. At this point Frank Wilson did not want anything to do with them. Parker claimed that he and Lamar went to Wilson's house in order to get Wilson to help them with the victim but they couldn't find Wilson. At this point they rented a Motel room in Berkeley. Parker claims they walked the victim into the room and he was lying on the floor with duct tape still on him. Reports indicate the victim was never found. Source: POR pages 2 & 3.

2. **Prisoner's Version:** In an interview for this report, Parker was informed that his crime partner (brother) was sentenced to Life Without Possibility of Parole and in all likelihood would never be released from prison. He was informed that he should be thinking of himself and provide a frank and candid disclosure of the circumstances of the commitment offense. After consideration, Inmate Parker provided the following statement in his own words:

"Before I begin this open letter to Walter's family, I first would like to assert some basic laws and regulations that protect me and the Board from any inadvertent abuse of authority while determining my suitability. The California Code of Regulations, Title 15 Division 2, Section 2236 states, "The facts of the crime shall be discussed with the prisoner to assist in determining the extent of personal culpability. The Board shall not require an admission of guilt to any crime for which the prisoner was committed. My personal culpability has been fully set forth in the pre sentence

PARKET, CLIFFORD    J-43369    CTF-SOLEDAD    SEPT 2004

probation report that was made part of the record as admittedly reviewed by this panel and all previous panels.

Furthermore, I have accepted all facts of my personal culpability and take full responsibility for my actions in this terrible event. I truly see no good purpose to discuss the details of this crime, to relive such a terrible and emotional event will only evoke sadness, despair, hatred, and sorrow to anyone associated with this case will benefit no one. I especially feel this way because the circumstances and facts of this crime set forth in the pre-sentence probation report is accurate and true except for me having any knowledge of the whereabouts of Walter.

Therefore, my personal culpability should be assessed and determined by the true and accurate facts of the pre-sentence probation report.

As to Walter's whereabouts, over these past eleven (11) years I have indeed inquired about his whereabouts to no avail. I will adamantly continue to seek the knowledge needed to find Walter, because at the very least I owe this to his family and friends for my stupid behavior and participation in such a terrible crime. Although, I see no good purpose to discuss and relive this life crime that I am sincerely remorseful for and take full and complete responsibility for, I am willing and able to accept and answer any question (s) pertaining to my motivation prior to and after this terrible crime.

Now, after saying this, it is quite clear that my position in this case has been distorted, and misconstrued, misrepresented over the years. I was convicted of kidnapping Walter Wainwright for robbery and although I am truly sorry for this unlawful act and there's no words that can accurately describe the sorrow I feel in my heart or my inexcusable actions, I still find it difficult to somehow discuss elements of this crime that I have no knowledge of. Through several self-help programs and experiences, I now understand the pain victim's families have to endure when they have lost a loved one, but to continue to punish me beyond what is reasonable is unlawful and unethical.

For the past twelve years I have tried to make amends for my actions. As difficult as it is to face the victim's family, I know my soul could not rest until I made an attempt to apologize. This letter very well could fall on deaf ears, but my faith in the creator tells me that I have a sincere obligation to myself to become a better human being. I know some skeptics may write off this letter of apology as hopelessly idealistic and impractical, but this is what good people must do when they are wrong. I sincerely apologize! We as human beings cannot willfully hate each other

PARKET, CLIFFORD          J-43369          CTF-SOLEDAD          SEPT 2004

without destroying the very fiber that connects us, so, I hope eventually I will be forgiven by the family (especially Walters mom) because God has already forgiven me and laid claim to my soul. Since all human beings fall short of this great example, we must strive to see beyond hate and animosity. However, if hatred and animosity are learned behavior, then is it not reasonable to assume that it can be unlearned? I know this is to be true because ever since that day I have made a consorted effort to seek out the undesirables and try to become a better human being.

This act (letter) was done so not to please the Board, but to show my God and you that I have some redeeming qualities and doing God's work is now my main objective.

I am left with one final thought that must remain constant in your mind because it never leaves mine. I am truly and sincerely sorry for the pain and anguish you have suffered at the hands of my inexcusable behavior and participation in such a terrible event.

I am truly sorry and hope God gives you peace and strength to forgive."

Sincerely Submitted.

3. **Aggravating/Mitigating Circumstances:**

   a. **Aggravating Factors:**
      1. Prisoner had a special relationship of confidence and trust with the victim.
      2. Prisoner had opportunity to cease but continued with the crime.
      3. Murder committed to prevent detection of another crime.

   b. **Mitigating Factors:**
      1. Prisoner has minimal or no history of criminal behavior.

B. **Multiple Crime(s):** None.

  1. **Summary of Crime:** N/A

  2. **Prisoner's Version:** N/A

II. **PRECONVICTION FACTORS:**

  A. **Juvenile Record:** None.

B. **Adult Convictions:** None.

C. **Personal Factors:** This information is supplied by inmate Parker and is partially corroborated by the central file. He states he is the youngest of six children born to the union of Maryann and Lamar Parker. His parents currently reside in Richmond, CA. All of his brothers and sisters live in the Bay area with the exception of his oldest brother, Lamar who is currently housed at Pelican Bay State Prison and one sister Leinala who lives in Stockton, CA. Parker states he was born in 1966 in Oakland, CA. He states he lived in Oakland until 1985 when he moved to San Diego, CA to live with his brother Lamar (crime partner). He stayed in San Diego for six months and returned to Oakland. Parker attended school in Oakland until he dropped out in the tenth grade in 1982. While in high school he began working at a fast-food restaurant. He than began working part time for Design Restaurant Supply in Oakland. He began working full time once he dropped out of high school. While in San Diego he worked for H & R Associates Cabinet Makers on an assembly line. When he returned to Oakland in late 1987 he met and moved in with his girlfriend Kisha Hall in Concord, CA. They never married and did not have any children together. He was a temporary dock worker at Chipman Freight. In 1988 Parker began working for the Alameda Naval Air Station until his arrest in July 1992. Parker states that he began smoking marijuana in junior high school, however discontinued it's use. He denies the use of any other drugs. He admits having drank Tequila for a short time when his relationship with Kisha ended.

III. **POSTCONVICTION FACTORS:**

A. **Special Programming/Accommodations:** None.

B. **Custody History:** Since his last board hearing, Parker has remained at the Correctional Training Facility under Med A custody with 19 placement points. He has continued his full time assignment working as a meat cutter in Central Facility. Work supervisor's reports reflect satisfactory grades for this period. (It Should be noted that only one CDC 101 work supervisor's report could be located for this work period).

C. **Therapy and Self-Help Activities:** Parker has been actively attending Alcoholic's Anonymous/Narcotics Anonymous since September 1998. (11/2/03)

D. **Disciplinary History:**

CDC 128A's

7/22/98           MCSP           Failure to take prescribed medication.

### CDC 115's

None

E. **Other:** Parker was see by the Board of Prison Terms on September 3, 2003 and was denied parole for one year. In addition the board recommended that the subject remain disciplinary free, upgrade vocationally and participate in any self-help therapy that may be offered by CDC. Parker has compiled with the recommendations made by the board except for upgrading vocationally, though it should be noted that he completed the Home Inspection Course through the Professional Career Development Center.

## IV. FUTURE PLANS:

A. **Residence:** Parker would like to parole to his mother's residence, Maryann Parker at 6036 Dimmyway, Richmond, CA 94805, telephone (510) 236-0556.

B. **Employment:** Parker states that he will have an updated offer of employment from Ruiz and Juarez Trucking, 425646 Newport Dr., Fremont, CA 94538, (cell) 510-714-4951 and fax (510) 440-9914. He is also interested in working in the home inspection field per his recently completed course work from the Federal Emergency Management Agency (FEMA).

C. **Assessment:** Parker has been disciplinary free from inception, continues his participation in AA/NA and has shown initiative in completing a private home study course through the Private Career Development Institute.

## V. USINS STATUS: Parker is a United States citizen,

## VI. SUMMARY

A. Considering the commitment offense, prior record, and prison adjustment, this writer believes the prisoner would probably pose a low degree of threat to the pubic at this time, if released from prison. We had an extensive discussion about the commitment offense and Parker's role in said offense. He voiced a great deal of regret for the victims family in that they were never able to locate the victims body. I feel he would help locate the victims body if he could

B. Prior to release the prisoner could benefit by maintaining his disciplinary free behavior and participating in any self-help therapy that my be offered by CDC.

C. This report is based on an interview with the inmate on 5/19/04, which lasted approximately one hour(s) and a review of the central file lasting approximately three hours.

PARKET, CLIFFORD        J-43369              CTF-SOLEDAD              SEPT 2004

LIFE PRISONER EVALUATION REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
SEPT 2004 CALENDAR

14

_____  7.20.04
G. Williams                Date
Correctional Counselor I


_____  7-23-04
R. Leach                   Date
Correctional Counselor II


_____  7-23-04
R. Pope                    Date
Facility Captain


_____  7-28-04
4) D. S. Levorse           Date
Classification and Parole Representative


PARKER, CLIFFORD       J-43369       CTF-SOLEDAD       SEPT 2004

BOARD OF PRISON TERMS
STATE OF CALIFORNIA

## LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

**INSTRUCTIONS**
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 09/03 to present | | | **PLACEMENT**: Remained at the Correctional Training Facility. <br> **CUSTODY**: Remains MED A. <br> **VOCATIONAL TRAINING**: None noted. <br> **ACADEMICS**: Completed independent studies in Home Inspection through the Professional Career Development Institute (6/25/03). <br> **WORK RECORD**: Continued full time assignment as a meat cutter. Work supervisors reports fir this period reflect satisfactory grades. (9/9/03). <br> **GROUP ACTIVITIES**: Continued active participation in CTF's AA/NA program since September 1998. <br> **PSYCH. TREATMENT**: None noted. <br> **PRISON BEHAVIOR**: Parker has remained disciplinary free this period. <br> **OTHER**: None. |

CORRECTIONAL COUNSELOR'S SIGNATURE

PARKER    J 43369    CTF    DATE 7·20·04    SEPT 2004

BPT 1004 (REV 7/86)    Page _1_