# EXHIBIT   "C"

## IN THE SUPREME COURT OF CALIFORNIA

CLIFFORD LELIKONA PARKER,  )
           )
   Petitioner,     )
           )
           )
    vs.       )
           )
           )
           )
BEN CURRY, WARDEN,    )
CORRECTIONAL TRAINING   )
FACILITY, SOLEDAD, CA.   )
           )
   Respondent.    )
           )
_____)

Case No. _____

Contra Costa County
Superior Court.
Case No. __06-1318-2__

Court of Appeal, First
Appellate District,
Division One.
Case No. __A116594__

## PETITION FOR REVIEW

CLIFFORD LELIKONA PARKER, Petitioner
CTF Central B-226L
P.O. Box 689
Soledad, California 93960-0689

In Pro Per

1

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

2

3    CLIFFORD LELIKONA PARKER,   )      Case. _____

4            Petitioner,   )

5                      )      Contra Costa County
                        )      Superior Court

6            vs.        )      Case No.  06-1318-2

7

8                      )      Court of Appeal, First
    BEN CURRY, WARDEN         )      Appellate District,
    CORRECTIONAL TRAINING    )      Division One

9    FACILITY, SOLEDAD, CA.   )      Case No.  A116594

10           Respondent.   )

11

12

13

## PETITION FOR REVIEW

14   TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE
HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE

15   STATE OF CALIFORNIA:

16

17      Petitioner, **CLIFFORD LELIKONA PARKER**, petitions this Court for review

18   following the decision of the Court of Appeal, First Appellate District,

19   Division One, filed in that Court on January 31, 2007, and denied in that

20   same Court on April 4, 2007. A copy of the "postcard" denial is attached

21   hereto as Exhibit "A".(Petitioner did not receive that denial until 4/10/07)

22

23                       QUESTIONS PRESENTED

24     1. Is the Board of Parole Hearings violating the Petitioner's State

25   and Federal Due Process Rights when parole suitability determinations

26   are not supported by "some evidence" which applies only to questions

27   regarding sufficiency of the evidence and must tend logically and by

28                       - 1 -

reasonable inference, to establish a fact relevant to Petitioner's suitability for parole. Was the Board's "some evidence" standard correctly applied in this case?

2. Can the California Parole Board continuously deny parole to a prisoner for the 6th time based **solely** on the gravity i.e., seriousness, of their commitment offense, after he has served a Penal Code §3041(a) and California Code of Regulations, Section §2282(c) **term** equal to the gravity of his crime?

3. Can the Board continue to deny petitioner a parole release date by imposing a greater punishment than authorized by the jury, by using a crime (murder) that he was acquitted of in trial?

4. Can the Board continue to be allowed to not give the required weight to all relevant and reliable post-conviction evidence favorable to Petitioner in light of the evidence presented?

5. Does opposition from the Victims' next-to-kin establish a fact relevant to Petitioner's suitability?

6. Can the Board deem petitioner's crime "particularly egregious" when it does not meet the "Beyond the minimum" standard articulated in In re Dannenberg, (2005) 34 Cal.4th 1061, 1095-1096?

//
//
//

- 2 -

1

## NECESSITY FOR REVIEW

2

3      A grant for review and resolution of these issues by this Court

4  are necessary to secure uniformity of decisions and to settle important

5  questions of law. The need for uniformity of decisions is demonstrated

6  by a comparison of this case with the cases of In re Ramirez (2002) 94

7  Cal.App.4th 549; In re Scott (2005) 133 Cal.App.4th 573; In re Lee (2006)

8  DJDAR 13961; In re Elkins (2006) 144 Cal.App.4th 475, 498; In re Weider

9  (2006) DJDAR; Martin v. Marshall (2006) 431 F.Supp.2d 1038; Rosenkrantz

10  v. Marshall (2006)____ F.Supp.2d ____;Apprendi v. New Jersey (2000) 530

11  U.S. 466, 485, which all resulted in Court findings opposite to that

12  in Petitioner's case. Petitioner respectfully submits that viewing these

13  cases together demonstrates the lack of uniformity and equal protection

14  in application of the due process standard and that the decision in the

15  instant case conflicts with the recently announced Federal Due Process

16  standard delineated in Irons v. Carey II (2007) 479 F.3d 658, upholding

17  the Federally protected liberty interest articulated in Biggs v. Terhune

18  (9th Cir. 2003) 334 F.3d 910. This case also provides this Court with

19  an opportunity to redefine the meaning of the "particularly egregious"

20  standard found in In re Rosenkrantz (2002) 29 Cal.4th 616, the vagueness

21  of the "beyond the minimum' standard articulated in In re Danneberg (2005)

22  34 Cal.4th 1061, 1094. As well as clarifying to Board of Parole Hearings

23  the Contra Costa County Superior Court (who gave a reasoned opinion)

24  and the Court of Appeals, First Appellate District, Division one and

25  the Attorney General's Office that the continued reliance on a murder

26  charge that Petitioner was acquitted of violates the dictates of Apprendi

27

28                                        - 3 -

v. New Jersey (2000) 530 U.S. 466, 485, which held that each and every fact used to increase the penalty for a crime must be alleged and found true by the trier of fact, be it by jury or defendant's own admission of facts in a plea of guilty.

In summary, Petitioner respectfully submits that in this case "some evidence" having an indicia of reliability does not support each of the Board's findings as required by the United States Constitution, Fifth and Fourteenth Amendments, California Code of Regulations, Title 15 et §2280-2292 et seq; Penal Code §3041 et seq; California Constitution, Article I, section 15 and all the forementioned Court findings, thus violating Petitioner's State and Federal Constitutional Right to Due Process.

### ARGUMENTS PRESENTED

THE BOARD'S DECISION WAS ARBITRARY AND CAPRICIOUS. THERE WAS NO EVIDENCE HAVING AN INDICIA OF RELIABILITY TO SUPPORT A FINDING OF PAROLE UNSUITABILITY. THE HEARING WAS ADJUDICATED PRO FORMA IN VIOLATION OF PETITIONER'S STATE AND FEDERAL RIGHTS TO DUE PROCESS.

### A.  INTRODUCTION

On June 8, 2006, Petitioner appeared before the Board of Parole Hearings for the sixth (6) time for parole consideration and was found unsuitable for parole based solely on unchanging factors, the circumstances of his offense. He received a one (1) year parole denial. Petitioner thus preceded to file a Petition for Writ of Habeas Corpus in the Contra Costa County Superior Court. On December 5, 2006, Superior Court Judge Theresa Canepa denied the Petition. (See Exhibit "A")

- 4 -

1    On January 31, Petitioner filed in the Court of Appeals, First

2    Appellate District, Division One, challenging the Board's decision. On

3    that same date, January 31, 2007, the Court issued an order directed

4    at the Attorney General to submit an Informal Response. On March 5, 2007,

5    the Attorney General complied with the Court's order. On March 20, 2007,

6    Petitioner submitted his opposition to the Informal Response. On April

7    10, 2007, Petitioner received via U.S. mail the Court of Appeals decision

8    denying the Petition on April 4, 2007. Petitioner now submits the instant

9    petition seeking <u>review</u> in this Honorable Court. (Both denials are

10   attached hereto as Exhibit "A").

11

12   **B.   The Board's Decision To Deny Parole Was Not Supported By "Some
13          Evidence" Having An Indicia Of Reliability.**

14   Although broad, the board's discretion is not absolute. (<u>In re Powell</u>

15   (1988) 454 Cal.3d 894, 902.) The requirements of procedural due process

16   embodied in the California Constitution places some limitations upon

17   those discretionary powers. (<u>Rosenkrantz</u>, supra, 29 Cal.4th at p. 655.)

18   Accordingly, the California Supreme Court has held that "the gravity

19   of the  commitment offense or offenses alone may be a sufficient basis

20   for denying a parole application, so long as the Board does not fail

21   to consider all other relevant factors.: (<u>Ramirez</u>, supra, 94 Cal.App.4th

22   at p. 569; accord, <u>Rosenkrantz</u>, supra, 29 Cal.4th at pp 660, 677; <u>In</u>

23   <u>re Scott</u>, (2004) 119 Cal.Ap.4th 871, 891.) The Supreme Court further

24   admonished that 'where no circumstances of [the] petitioner's offense

25   ... involves particular egregious acts beyond the minimum necessary to

26   sustain a conviction for [the offense]" (<u>In re Dannenberg</u>, (2005) 34

27

28                                    - 5 -

1  | Cal.4th 1061, 1095-1096), an inmate's constitutional protected expectation
2  | of parole might be violated.

3  | As such, this Court "is authorized to review the factual basis of a
4  | decision of the Board denying parole in order to ensure that the decision
5  | comports with the requirements of the due process of law." (Rosenkrantz,
6  | supra, 29 Cal.4th p.658) Judicial review is required in this case because
7  | the Board's decision reflects nothing then mere pro forma consideration
8  | of the specified criteria, the decision is not supported by the required
9  | 'some evidence', thus is arbitrary and capricious on its face. (In re
10 | Strum, (1974) 11 Cal.3d 258, 268.)

11 | The Supreme Court acknowledged that "due process is flexible and
12 | calls for such procedural protections as the particular situations
13 | demands." (Morrissey v. Brewer, (1972) 408 U.S. 471, 481.) Thus, while
14 | Petitioner is entitled to the process outlined in Greenholtz v. Inmate
15 | of Nebraska Penal & Correctional Complex, (1979) 442 U.S. 1, 12, 16,
16 | viz., notice, opportunity to be heard, and a statement of reasons for
17 | decision, which must be supported by "some evidence" bearing some indicia
18 | of reliability (Superintendent v. Hill, (1985) 472, U.S. 445, 456), these
19 | guarantees do not exhaust Petitioner's right to due process. The
20 | fundamental core of due process is protection against arbitrary action.
21 | (Wolff v. McDonnell, (1974) 418 U.S. 539, 558, citing Dent v. West
22 | Virginia, (1889) 129 U.S. 114 (holding that "[t]he touchstone of due
23 | process is protection of the individual against arbitrary action of
24 | government.")) The Supreme Court has made it clear that the "some
25 | evidence" standard discussed in Hill, supra, is only one aspect of
26 | judicial review for compliance with minimum standards of due process.

1  (Citation.) The Court explained that the "some evidence" standard applies
2  to questions of evidentiary sufficiency. It is an additional requirement
3  of due process, not a substitute for other established due process
4  requirements." (In re Ramirez, (2001) 84 Cal.App.4th 549, 563-564, citing
5  Edwards v. Balisok, (1997) 520 U.S. 641, 648.) Consequently, because
6  the Board's decision in this case at bar is arbitrary and capricious,
7  and "is not supported by any evidence in the record and thus, is devoid
8  of a factual basis" (In re Rosenkrantz, (2002) 29 Cal.4th 616, 658),
9  this Court should proceed to the next stage by issuing and order accepting
10 review.

12 **C. Continued Reliance On The Commitment Offense to Arbitrarily Prove**
**A Current Risk In The Face Of Clear Evidence Of Rehabilitation Is A Due**
13 **Process Violation.**

14    In Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003) at p.914, a case
15 with situational factors and a prison performance record analogous to
16 this Petitioner', the Court held that "[b]ecause the "California parole
17 scheme [Penal Code §3041(b)] vests in every inmate a constitutionally
18 protected liberty interest" "protected by the procedural safeguards of
19 the due process clause", "some evidence" having an indicia of reliability
20 must underly every Board decision. The Biggs' Court then proceeded to
21 establish standards for the California Parole Board to follow when
22 assessing the facts before it during a parole consideration hearing,
23 holding a pp. 916-917 that;

25    "While the [California] Parole Board's sole supporting
26    reliance on the gravity of [a first degree murder] offense
    [involving the killing of a witness] and conduct prior to
27    imprisonment to justify denial of parole can initially be
    justified as fulfilling the requirements set forth by state

- 7 -

1    law. [O]ver time, however, should [a petitioner] continue
     to demonstrate exemplary behavior and evidence of
2    rehabilitation, denying him parole simply because of the
     nature of [his] offense and prior conduct would raise serious
3    question involving his liberty interest in parole".

4    "A continued reliance in the future, the circumstances of
     the offense and conduct prior to imprisonment, run contrary
5    to the rehabilitative goals espoused by the prison system
     and could result in a due process violation."
6

7        Biggs further held that when a prisoner such a Petitioner has behaved

8    in a crime and disciplinary free manner over a long term. A Board finding

9    denying parole based on their having an escalating pattern of criminal

10   conduct relying solely on their pre-prison history would be devoid of

11   evidence, since they have not recently committed a criminal act, and

12   when a prisoner such as Petitioner has engaged in rehabilitation type

13   programming such as self-help groups, educational and vocational courses,

14   etc., for an extended period of time, during which they remain

15   disciplinary free, the Board can not deny parole based on pre-prison

16   behavior, because the evidence demonstrates otherwise. (Id. at pp. 916-

17   917)

18

19       In its recent opinion the Ninth Circuit Court of Appeals upheld

20   its decision in Biggs v. Terhune, 334 F.3d 910 (9th Cir. 2003), and

21   expressly "acknowledged that Biggs represents the law of [the] circuit."

22   (Iron v. Carey, ___ F.3d ___, 2007 WL656345 (9th Cir. 2007). In reaffirming

23   its position the Ninth Circuit noted "[a]lthough we held that the Board's

24   decision was supported by 'some evidence' because '[t]he murder of which

25   Biggs was convicted involved killing a witness in a manner which exhibited

26   callous disregard for life,' we made clear that '[a] continued reliance

27   in the future on an unchanging factor, the circumstances of the offense

28                                    - 8 -

and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.' (Citation.)" (Id..)

In reference to its decision in Sass v. Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006) and Irons; the Ninth Circuit concluded "we nonetheless held that the Board's reliance on the gravity of second degree murder of which Sass was convicted, in combination with prior incidents of unlawful conduct, provided a sufficient basis for the Board to deem Sass unsuitable for parole. Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Irons' due process argument or otherwise affirming the district court's grant of relief."

Noteworthy, the Circuit Court noted:

> "in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board."

Here Petitioner asserts he has served 8 years beyond the minimum term referred to in Irons. That holding restrict the Board & State Courts from continuing to rely **solely** on the unchanging circumstances of Petitioner' offense when the elements of Petitioner's personal culpability in the underlying offense does not rise to the level of "particularly egregious" standard outlined in Scott and Ramirez.

- 9 -

1    As noted above, the Ninth Circuit has not only reaffirmed its

2    holding that;

> "A continued reliance in the future, the circumstances of
> the offense and conduct prior to imprisonment, run contrary
> to the rehabilitative goals espoused by the prison system
> and could result in a due process violation."

6    (Biggs, supra, 3344 F.3d at p. 916), but has further clarified this matter

7    in the recent Irons decision, supra, stating that "in Biggs, Sass, and

8    here, the petitioner's had not served the minimum number of years to

9    which they had been sentenced.... therefore [,] given the particular

10   circumstance of the offense in these cases, due process was not violated

11   when these prisoners were deemed unsuitable for parole prior to the

12   expiration of their minimum terms." (Irons, supra, LEXIS 5198, *.)

13       In the present case, Petitioner has served 9 year beyond his minimum

14   term of May 5, 1998, and continues to demonstrate exemplary behavioral

15   evidence of rehabilitation. He has had six (6) parole consideration

16   hearings and was denied parole at each hearing based primarily on the

17   unchanging factors of his commitment offense despite overwhelming evidence

18   of rehabilitation, and no history of any mental or criminal behavior.

19   The Board's continued denials is without merit or substance. Particularly,

20   when, as here, the Board and State Courts has agreed that beyond the

21   commitment offense Petitioner has met all other prerequisited criteria

22   warranting parole suitability.

23

24       Petitioner therefore submits, in light of the fact that his risk

25   factor has been assessed at low; his participation in educational,

26   vocational and self-help programs has been commendable; his parole plans

27   has been deemed adequate; he has not been documented as a disciplinary

28
                                    - 10 -

1   problem; and his institutional programming has been documented a excellent

2   -- "parole in this case is remote to the point of non-existence." (Irons

3   v. Carey, 358 F.Supp.2d 936, 947. (E.D. Cal. 2005).) Furthermore, it

4   is unlikely anything more can be added over the one-year denial period

5   which would cause the Board to find that the criteria in favor of parole

6   outweigh those against parole. Particularly, the commitment offense.

7

8   According, the Board and Court's reliance upon the immutable factors

9   without regard to or consideration of subsequent circumstances was

10  prejudicial to Petitioner's parole application, and a violation of his

11  due process rights. (In re Minnis, (1972) 7 Cal.3d 639, 645-647;

12  Rosenkrantz, supra, 29 Cal.4th at p. 655.)

13

14  **D. Circumstances of Petitioner's Offense Does Not Meet The Beyond The**
15  **Minimum Standard Articulated In In Re Dannenberg.**

16  A parole denial may properly be based on the nature of the commitment

17  offense alone. (In re Dannenberg (2005) 34 Cal.4th 1061, 1094; In re

18  Andrade (2006) 141 Cal.App.4th 807). In order to support a finding that

19  Petitioner's offense was committed in an especially heinous, atrocious

20  or cruel manner there must be some evidence that the "violence and

21  viciousness of the inmate's crime" is greater then that which is

22  "minimally necessary to convict [the Petitioner] of the offense for which

23  he is confined. (Cal.Code Regs, Title 15 . 2281 (c)(1); In re Dannenberg

24  supra at p.1071, 1095; In re Rosenkrantz (2002) 29 Cal.4th 616, 682-683)

25  Therefore there must be 'some evidence' of aggravating facts beyond the

26  minimum elements of that offense. (Dannenberg, supra, p.1095, fn. 16;

27  In re Scott (2005) 133 Cal.App.4th 573-598.)

28

1      Petitioner asserts the Superior Court / Court of Appeals decision

2  to uphold the Board's highly illegal denial based on the Commitment

3  offense being beyond the minimum element is absurd, meritless, and not

4  based on factual findings sufficient to deem the commitment offense

5  'particularly egregious'.

6      The Contra Costa County Superior Court, regarding the 2006 hearing

7  and habeas petition, found that Petitioner's involvement in planning

8  the robbery establishes proof that Petitioner did more than the bare

9  minimum needed for his crime.

10      To support their minimum-element argument, the Court notes that

11  'the victim was placed in an extremely vulnerable position by being bound,

12  gagged, and placed in the back of a moving vehicle which [Petitioner]

13  contributed to by failing to mitigate the circumstance of [the victim's]

14  confinement,". Further, the Court claims that Petitioner violently

15  escalated the kidnap when he "slammed the trunk on the victim's head...

16  then he and another person then drove off. Thus, his failure to terminate

17  the commission of the kidnap and robbery may have led to the victim'

18  death.

19      The Superior Court further stated that the kidnap/robbery was

20  especially cruel and callous, the crime was carried out in a dispassionate

21  and calculated manner an exceptionally callous disregard for human

22  suffering. The Court further stated that Petitioner terrorized the victim

23  and unnecessarily prolonged his suffering thereby showing an especially

24  callous and exceptional disregard for human suffering. These meritless

25  reasonings by the Superior Court is without substance because the Court

26  points to no evidence to justify there determination. While no one

27

28

1    seriously contends lack of seriousness of the offense, the evidence
2    clearly shows that Petitioner's conduct involved no more than was
3    necessary to commit his crimes.

4    The vulnerable position of being bound, gagged, and placed in the
5    vehicle that the Court refer to, occurred prior to the offense Petitioner
6    was convicted of. Interestingly enough, even the Deputy District Attorney
7    who attended the hearing noted in his closing statement   that had
8    Petitioner not ran out of the apartment and slammed the trunk on the
9    victim (which is the point of origin of Petitioner's commitment offense)
10   it might have gone a long way towards eliminating the specter of his
11   involvement in this crime. Accordingly, since Petitioner did not bind,
12   gagged or place the victim in the vehicle, the Court's use of this factor
13   was arbitrary and capricious.

14   Similarly, the Court/Board assertion that Petitioner exhibited
15   particularly egregious acts -- when he ran out of the apartment and
16   slammed the trunk on the victims head as he was trying to escape -- is
17   without merit. During that period, the Court notes, Petitioner did this
18   before the witness could come to the aid of the victim. Suggesting that
19   Petitioner had time to reflect on his attended crime and get there before
20   the witness. The Court also notes that Petitioner and another person
21   then drove off. However, the Court neglect to mention that slamming the
22   trunk on the victim and driving off does not suggest acts beyond the
23   bare minimum-element necessary to commit the kidnap, but rather, highlight
24   the minimum-elements themselves.

25   While pondering what one is about to do is the essence of
26   premeditation, Petitioner' premeditatiion if any at all, was not elaborate
27
28
                                  - 12 -

1    or prolonged. (Rosenkrantz, at 678 ["'full week of careful preparation,

2    rehearsal and execution':] In re Lowe, (2005) 130 Cal.App.4th 1405 [also

3    involved planning and premeditation])

4

5    Notwithstanding the Court's (not the Board) description of

6    Petitioner's crime, it was not "cruel in manner" -- or at least were

7    no more cruel than whenever one human being kidnap another -- and were

8    not committed "in an especially heinous, atrocious or cruel manner.'

9    The measure of cruelness is not general notions of common decency or

10   social norms, for by that yardstick all kidnap robbers are cruel. (Scott,

11   supra, 119 Cal.App.4th at p. 891 ["'[A]ll [violent crimes] by definition

12   involve some callousness i.e., lack of emotion or sympathy, emotional

13   insensitivity , indifference to the feeling and suffering of others.

14   '"].) Rather, the inquiry is whether among [kidnap robber] the one

15   committed by Petitioner was particularly heinous, atrocious, or cruel.

16   (Ramirez, supra, 94 Cal.App.4th at p.570, disapproved on another point

17   in Dannenberg, supra, 34 Cal.4th 1061, 1082-1083, 1100.) By that measure,

18   Petitioner submit that his crime were more commonplace than especially

19   cruel. Comparing Petitioner to prisoners whom the Board granted, parole

20   release dates irrespective of whether the prisoner's crime was cruel

21   is illuminating. Accordingly, the use of this factor is yet another

22   indication of an arbitrary and capricious determination.

23   Finally, it is rather disingenuous to acknowledge that Petitioner

24   was acquitted of murder, but then suggest that his conduct 'exceeded

25   the minimum requirement for a kidnap for robbery conviction' because

26   his actions "may have led to the victim's death."

27

28
                                    - 13 -

The Board and Court's reliance upon these factors to support their position is misplaced. While it's true that "'[t]he nature of a prisoner's offense, alone, can constitute a sufficient basis for denying parole'' (<u>Dannenberg</u>, supra 34 Cal.4th at p. 1095), the Board 'must exercise it discretion in good faith, neither arbitrary nor capriciously.' (<u>Strum</u>, supra, 11 Cal.3d at p. 268.)

Here the Court & Board have completely circumvented the law by adding and/or omitting elements from the guidelines established by the Legislature. Specifically, Petitioner was sentence by a jury under the provisions of Penal Code section 209, subdivision (b) which states in pertinent part "[a]ny person who kidnaps or carries away any individual to commit robbery... shall be punished by imprisonment in the state prison for life with the possibility for parole." Noteworthy, the element cited by the Court is not in the structure. In contrast, subdivision (a) provides in pertinent part:

> "[a]ny person who ... kidnaps or carries away another person ... or any person who aids or abets any such act ... shall be punished by imprisonment in state prison for life without the possibility of parole in cases in which any person subjected to any such act suffers <u>death</u> or <u>bodily harm</u>."

Consequently, Petitioner received no sentencing enhancements for aggravation. Court assert that the 'requirements that apply to a sentencing authority... [is] not in any way applicable to an administrative parole proceeding."

The Court erred. The Board's discretion over parole suitability determinations is not a license 'to recharacterize the commitment offense as crimes carrying a more severe penalty." (<u>Ramirez</u>, supra, 94 Cal.App.4th

- 14 -

at . 569 fn. 8, citing In re Rosenkrantz, (2000) 80 Cal.App.4th 409, 425.)

When making its determination, the Board is guided by several factor, including inter alia, the sentencing rules that the Judicial Counsel may issue and any relevant sentencing information. (Pen.Code §3041, subd. (a); Cal. Code of Regs., (CCR) tit. 15, §§2283, 2284.)

Even if, assuming arguendo, the sentencing standard i not applicable to administrative parole proceedings in the context observed by the Court, the procedural protections of due process prevents the Board from "redefining the element [of a Statute] that constitute different crimes, characterizing them as factors that bear solely on the extent of punishment." (Apprendi v. New Jersey, (2000) 530 U.S. 466, 485, quoting Mullaney v. Wilbur, 421 U.S. 684, 698; see also Terhune v. Superior Court, (1998) 65 Cal.App.4th 864, 873 ["an administrative agency has no discretion to promulgate a regulation that is inconsistent with the governing statutes"]; Rosenkrantz, supra, 29 Cal.4th at pp. 662-663 ["the separation of powers doctrine is violated when the actions of a branch of government defeats or materially impair the inherent functions of another branch."])

Accordingly, the Court and Board's findings that Petitioner acted in an especially callous manner, in addition to being inconsistent with the jury's acquitting him of murder (cf. Scott, supra, 119 Cal.App.4th at pp. 889-890), is unsupported by (and indeed may be irreconcilable with) the evidence on which the Court and Board purported to rely. Consequently, the Court and Board's reliance on this factor was arbitrary and capricious.

- 15 -

1    Thus, the Court and Board's reliance on the forementioned factors

2    to elevate Petitioner's crime beyond the minimum elements of kidnap for

3    robbery, was not only arbitrary and capricious, but also was prejudicial

4    to, Petitioner's parole application. (Pen. Code §209, subd. (b); Apprendi,

5    supra, 530 U.S. at p.519, [explaining "that a 'crime' includes every

6    fact that is by law a basis for imposing or increasing punishment"] 15

7    CCR §2283, sudb. (a)(7) [noting "the prisoner had a special relationship

8    of confidence and trust with the victim, such as that of employer –

9    employee.")

10    Moreover, while the Court properly identify the statutory and

11    regulatory provisions upon which the Board is authorized to deny parole

12    based on the crime alone (Id. at 5), they fail to point to any

13    circumstances of Petitioner's culpability in his offense that involved

14    particularly egregious acts." (Dannenberg, supra, 34 Cal.4th at pp. 1095-

15    1096; Rosenkrantz, supra, 29 Cal.4th at . 683.)

16    Given that: (a) the offense did not involve multiple victims; (b)

17    the offense was not carried out in a dispassionate and calculated manner,

18    such as an execution style murder; (c) the victim was not abused, defiled

19    or mutilated; (d) the offense did not demonstrate an exceptionally callous

20    disregard for human suffering, such as "[striking] multiple blows to

21    the [victim's] head with a [blunt object]" (Dannenberg, supra, 34 Cal.4th

22    at . 1096); or (e) can be characterized as "inexplicable or very trivial

23    in relation to the commitment offense," -- (Particularly, since the

24    undisputed evidence show that Petitioner committed his offense "while

25    under emotional stress [which] should have been, but was not, considered

26    in his favor." (Scott, supra, 119 Cal.App.4th at p. 890, fn 9; In re

27

28

1   Scott, (2005) 133 Cal.App.4th 573 -- there is simply no rational basis

2   for concluding that Petitioner's conduct advances the threshold contention

3   that he committed the offense in an especially heinous, atrocious, or

4   cruel manner. (15 CCR §2281, subd. (c)(1), §2402, subd. (c)(1).)

5

6   Therefore, the Board of Parole Hearings, Contra Costa County Superior

7   Court and the Court of Appeals, First Appellate District, Division One

8   reliance upon the circumstances of the commitment offense alone to deny

9   Petitioner parole violated Petitioner's due process rights. (Rosenkrantz,

10   supra, 29 Cal.4th at p.683 [cannot deny parole based on nature of offense

11   if defendant's acts were the bare minimum needed to commit the offense].)

12

13   **E. The Board Did Not Give Petitioner's Exemplary Post-Conviction Conduct**

14   **Behavior And Achievements The Substantial Individualized Consideration**
    **It's Mandated To Consider**

15

16   Due process requires a review of all of the records pertinent to

17   the parole consideration hearing to be relied upon by the Board.

18   (Greenholtz v. Nebraska Penal Inmates, (1979) 422 U.S. 1, 14-16.)

19   Moreover, the Board' "decision must reflect an individual consideration

20   of the specified criteria and cannot be arbitrary and capricious."

21   (Rosenkrantz, supra, 29 Cal.4th at p. 677; Scott, supra, 133 Cal.App.4th

22   at pp. 594-595.)

23   Contrary to the Court's assertion that the Board fully considered

24   Petitioner's post-conviction factors in their decision-making process,

25   a review of the decision-portion of the hearing shows that the decision

26   was rendered, not to reach a fair and just conclusion, but merely to

27   facilitate further proceedings to help the Board bring closure to the

28

1  victim's family. Thus, reducing Petitioner's hearing to a pro forma

2  denial.

3      Specifically, the Board is using the proceeding to coerce Petitioner

4  through threat of further deprivation of life and liberty to achieve

5  its agenda, as is evident by it statement that "if there is anything

6  you can do in your power to help the family of the victim, Mr. Wainwright,

7  who only lived 34 years, if there is anything you can do in your power

8  to help that family, I'm sure everyone would be sympathetic to getting

9  you out of [prison], because you are taking up alot of room here." (Id.

10 at pp. 74-75.)

11     Petitioner strongly contends, there is no nexus between bringing

12 the victim's family closure and his parole risk. In further illustration

13 of the pro forma denial, the Board acknowledged that Petitioner was going

14 through a painful and stressful period when he was breaking up with his

15 girlfriend (during which time he drank tequila) (Id. at 13, 20, 53, 71),

16 thus, making him vulnerable to being induced by his brother. Yet, the

17 Board did not factor stress into their determination. This factor the

18 Board is required to consider under California law. (Scott, supra, 113

19 Cal.App.4th at pp. 595-596; 15 CCR §2284, subd. (a)(3) ["The prisoner

20 had no apparent predisposition to commit the crime but was induced by

21 others to participate in its commission"[.)

22     Similarly, although the Board "commended" Petitioner for "outstanding

23 programming" (Id. at 71, 74), its decision failed to reflect consideration

24 of his institutional behavior as a circumstance tending to show his

25 suitability for parole. This is a factor the Board is required to consider

26 under the regulations. (Ramirez, supra, 94 Cal.4th at pp. 571-572; 15

27

28                         - 18 -

1  CCR §§ 2281, subd. (d)(9), 2402, subd. (d)(9).)

2  Likewise, while only cursory statements in regards to the remaining
3  factors, i.e., "no criminal history, not even a tumultuous time in your
4  life," "low risk," etc., were offered by the Board, its decision failed
5  to reflect -- his lack of criminal history, stable social, signs of
6  remorse, no juvenile record and understanding and plans for future --
7  as a circumstance(s) tending to how suitability for parole, These are
8  factors the Board is required to consider under the regulations. (15
9  CCR §§2281, subd. (d) et seq., 2402, subd. (d) et seq.)

10

11  Accordingly, Petitioner submits, in light of the substantial evidence
12  in the record demonstrating rehabilitation. The Court's cursory statements
13  and pro forma consideration, his right to due process was denied.

14

15  **F. The Board's Reliance On A Confidential Letter To Justify A Suitability
16  Denial                    Denial Is A Due Process Violation.**

17  Pursuant to Penal Code section 3043.2, the Board is authorized to
18  permit victims or their next of kin, or immediate family members to submit
19  a written statement expressing their views concerning the crime and the
20  person responsible. And in doing so, the Board is compelled to consider
21  any statement filed prior to reaching its decision. However, the Board
22  is prohibited from basing its decision "upon information that is not
23  available to the prisoner unless the information has been designated
24  confidential under the rule of the department and is necessary to the
25  decision." (15 CCR §2235.)

26  Moreover, if the confidential information affected the Board's
27  decision, the Board is required to notify the prisoner "of reports on

28                                      - 19 -

1  |  which the panel relied." (15 CCR § 2235, subd. (b); In re Prewitt, (1972)

2  |  8 Cal.3d 470, 476.)

3  |      The Court suggest that even though the Board read the victim's next

4  |  of kin "letter", it does not confirm that the Board relied on or gave

5  |  any weight to the letter in finding Petitioner unsuitable. The Court

6  |  noted that the Board indicated earlier if they reviewed or considered

7  |  the letter during the recess, they would inform Petitioner. In sum, the

8  |  Court contends that the hearing transcripts does not reflect that the

9  |  Board went off the record to consider the letter or made a tape of their

10 |  review of any confidential material.

11 |      The Court's decision is fundamentally flawed. As material, subdivision

12 |  (a) of Penal Code §3043.2, provides in pertinent part that "at any hearing

13 |  to review the parole suitability ... of a parole date, the board of prison

14 |  terms may permit the victim ... next of kin,... to file with the board

15 |  a written .. statement. The board shall consider any statement filed

16 |  prior to reaching a decision, and shall include in its report a statement

17 |  of whether the person would pose a threat to public safety if released

18 |  on parole."

19 |      Plainly, excerpts of the statements taken from the hearing

20 |  transcripts reveals that the Board did consider the letter and gave it

21 |  contents great weight. When questions concerning confidential matters

22 |  arose, the following exchange then occurred:

23 |

24 |                      Presiding Commissioner Sawyer:

25 |

26 |                  "... is there any confidential material
   |                     that will be used in this Hearing?

27 |

28 |                                  - 20 -

1         Deputy Commissioner Rothlisberger:

2              "Not that will be used.

3

4         Deputy Commissioner Rothlisberger:

5         Oh, I take it back, there is some confidential -- one thing
          that I do want -- that it's a victim letter, a VNOC letter.
6                          (Id. at p. 5)

7

8         Presiding Commissioner Sawyer:

9         "Okay, this is a confidential letter written to us from the
          victim's family, and we will let you know if we use it in
10        in the Hearing. If we do we'll have to use it during the
                                recess.
11                         (Id. at p. 6)

12

13        After an approximately seventeen minute recess/deliberation, the

14   hearing was called back into session, and shortly thereafter the Panel

15   stated that it "had reviewed all information received from the public

16   and relied on the following circumstances in concluding that the prisoner

17   is not suitable for parole and would pose an unreasonable danger to society

18   or a threat to public safety if released from prison." (Id. at p. 69)

19   Furthermore, the panel immediately began encouraging Petitioner to help

20   the victim's family, advising him to do everything he can do for them.

21        Plainly, in reading the aforementioned it's not unreasonable to

22   assume that the Board considered the contents of the letter and afforded

23   them great weight. Particularly, when the governing statute mandates

24   that the Board do so. Additionally, the Board included in it report the

25   public safety statement per statute. The fact that the decision portion

26   of the transcript place emphasis on Petitioner doing any and everything

27

28                              - 21 -

1  he can to bring closure to the family speaks in volumes about the
2  influences of the next of kin's letter.

3      Accordingly, this Court should or the Board to produce the
4  confidential letter for a determination of whether its content influence
5  the Board's finding of unsuitability in this case, and if so, was it
6  prejudicial to his parole application. (<u>Prewitt</u>, supra, 8 Cal.3d at p.
7  473 [When determining whether a procedure involved in parole granting
8  process violates due process, "the reviewing court must consider the
9  objectives sought to be achieved by the challenged procedure, the possible
10 unfairness to the prisoner, and the availability of alternative procedure
11 which are less burdensome to the prisoner"].)

13 **G. The Board Is Prohibited From Imposing A Punishment Greater Then**
   **Authorized By The Jury.**

15     Petitioner asserts the Board's continuous denial to set a parole
16 date based on a murder charge he was **acquitted** of by a jury is a blatant
17 violation of Petitioner's "protected liberty interest" of the due process
18 clause of the 5th, 8th and 14th amendments of the United States
19 Constitution. (<u>In re Roenkrantz</u>, supra, (2002) 29 Cal.4th at 616, 660;
20 <u>Biggs v. Terhune</u>, supra, 334 F.3d at 14 (2003)).

21     In the instant case Petitioner was found **not guilty** of murder by
22 **jury trial**, convicted of Kidnap for the purpose of robbery (Penal Code
23 §209(b)) and was given a sentence of life with the possibility of parole,
24 with a minimum term of seven (7) years. Petitioner's minimum term passed
25 8 years ago on May 5, 1998. On June 8, 2006, Petitioner attended his
26 6th parole suitability hearing, the Panel found Petitioner unsuitable
27 for parole and based it's denial solely on the commitment offense, relying

28                              - 22 -                              Y

1    on evidence suggestive that petitioner must take full responsibility

2    for a murder he was acquitted of. The Panel stated in it's decision as

3    follows:

4

5        ..."We obviously, are denying you parole for a year on the
         facts of the case"..."Well, we can never bring closure to
6        a death, but you can bring some peace to the Wainwright
         family"..."I'm sure you understand the circumstances and
7        your culpability in this crime that more than likely lead
         to the **death** of Mr. Wainwright"... (See H.T., pp.68-74)

8

9        To the extent at the hearing, the Board in their decision relied

10   on elements of a murder Petitioner was acquitted of, was sufficient enough

11   to deem Petitioner unsuitable for parole. Their position violate the

12   Apprendi v. New Jersey, 530 U.S., (2000), rules established by the U.S.

13   Supreme Court. There, the Court announced principles that preclude the

14   use of "findings" to take a case out of the ordinary sentencing range,

15   (this is found in the matrix, Title 15, CCR., §2282(b)(c), unless those

16   findings were alleged in the information and either found true by the

17   jury or were admitted by the defendant as part of a plea.

18       Thus, when the Board makes findings that the commission of the crime

19   renders Petitioner a danger if released, or that he should be held

20   responsible for the death of Mr. Wainwright, the rules of Apprendi are

21   violated, since the result is to remove the case from the requirement

22   in **Penal Code §3041** that the Board "shall normally" set a proportional

23   parole release date consistent with the matrix.

24       While the Dannenberg Court discusses a limited discretion for the

25   Board to deny parole in appropriate case, it is not a "blank check" to

26   do so in the absence of findings by the jury on the factual issues relied

27   upon to justify the departure, nor does it permit the express disregard

28

                                    - 23 -

1 of direct findings made by the jury as the Board did here. This latter
2 point makes for an even stronger case in the present circumstances, as
3 it is not just an absence of findings on the particular issue, but the
4 jury had actually made direct contrary findings when they acquitted
5 Petitioner of any responsibility for a murder. Thus, the contrary findings
6 by the Board are being used to take the case outside the normal sentence
7 range, the Apprendi rules require that any charge(s) that Petitioner
8 was acquitted of cannot be the basis to enhance petitioner sentence,
9 this is exactly what is transpiring in this instant matter.

10 In the case of Apprendi, our High Court has stated that the
11 constitutional right to due proces, and the right to jury trial, requires
12 that each and every fact that used to increase the penalty for a crime
13 must be alleged and found true by the trier of facts, be it by jury or
14 defendant's own admission of facts in a plea of guilty. (Apprendi v.
15 New Jersey, 530 U.S. 46. These principles bar the Board from making
16 findings that take the inmate's case outside, the normal sentencing
17 structure, the matrix of uniform terms established by the Board for
18 indeterminately sentenced prisoner. As the U.S. Supreme Court initially
19 stated the rule:

21 "Other than the fact of a prior conviction, any fact that
22 increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved
23 beyond a reasonable doubt." (Apprendi v. New Jersey, supra, at 490).

24 Finally, the Court's decision that Apprendi has no bearing on the
25 determination of parole suitability by the Board is completely
26 contradictive of the sentencing structure in Petitioner's case. Petitioner
27 was sentenced under Penal Code §1168(b) which state in part, "the

28
- 24 -

1    sentencing Court shall not set the term or duration of the period of

2    imprisonment." Petitioner submits that the Board is a quasi-judicial

3    branch of government and is entrusted with the authority to set

4    Petitioner's term, therefore, do not poses the authority to enhance

5    Petitioner's sentences based on facts or alleged facts that Petitioner

6    was acquitted of. Therefore, the holdings in Apprendi are binding

7    authority.

8

9        Petitioner, asserts that this type of unreasonable application of

10   clearly established Supreme Authority by the Board of Parole Hearings,

11   Contra Costa County Superior Court Judge and the Court of Appeals, First

12   Appellate District, Division One. Petitioner's only hope for relief is

13   through this Honorable Court, praying that this Court takes this document

14   under serious consideration and grant review.

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28

**CONCLUSION**

For these reasons, Petitioner respectfully submit that this Court grant review to determine that his due process rights continues to be abridged by the California Board of Parole Hearing and upheld by the unreasonable application of clearly established Supreme Court Authority and decision Contrary to clearly established law standards of review under the Anti-Effective Death Penalty Act of 1996.

The granting of review will bring up to date the guidance provided, Iron, Biggs, Scott, Minnis and all other forementioned cases presented, so as to insure uniformity of decisionmaking in the lower courts on issues frequently litigated, and to settle questions so important that they impact directly upon the rights of a person such as Petitioner to due process of law under the State and Federal Constitutions.

Dated: _____


                              _____
                              Clifford Lelikona Parker
                                      Petitioner


                                    In Pro Per


//
//
//
//