# EXHIBIT "D"

# LIFE PRISONER EVALUATION REPORT
## SUBSEQUENT PAROLE CONSIDERATION HEARING
## MAY 2003 CALENDAR

**PARKER, CLIFFORD**                                           J43369

## I.    COMMITMENT FACTORS:

A.    **Life Crime:** All relevant documents from the previous hearings including the transcripts, have been considered and that information appears valid, and this writer has no further information to add.

    1.    **Summary of Crime:** All relevant documents from the previous hearing including the transcripts have been considered and that information appears valid, and this writer has no further information to add.

    2.    **Prisoner's Version:** In an interview for the report, Parker was informed that his crime partner (brother) was sentenced Life Without Possibility of Parole and in all likelihood would never be released from prison. He was informed that he should be thinking of himself and provide a frank and candid disclosure of the circumstances of the commitment offense. After consideration, Inmate Parker provided the following statement in his own words:

Before I begin this open letter to Walter's family, I first would like to assert some basic laws and regulations that protect me and the Board from any inadvertent abuse of authority while determining my suitability.

The California Code of Regulations, Title 15 Division 2, Section 2236 states, "The facts of the crime shall be discussed with the prisoner to assist in determining the extent of personal culpability. The Board shall not require an admission of guilt to any crime for which the prisoner was committed." My personal culpability has been fully set forth in the pre-sentence probation report that was made part of the record as admittedly reviewed by this panel and all previous panels."

Furthermore, I have accepted all facts of my personal culpability and take full responsibility for my actions in this terrible event. I truly see no good purpose to discuss the details of this crime, to relive such a terrible and emotional event will only evoke sadness, despair, hatred, and sorrow to anyone associated with this case will benefit no one. I especially feel

this way because the circumstances and facts of this crime set forth in the pre-sentence probation report is accurate and true except for me having any knowledge of the whereabouts of Walter.

Therefore, my personal culpability should be assessed and determined by the true and accurate facts of the pre-sentence probation report.

As to Walter's whereabouts, over these past eleven (11) years I have indeed inquired about his whereabouts to no avail. I will adamantly continue to seek the knowledge needed to find Walter, because at the very least I owe this to his family and friends for my stupid behavior and participation in such a terrible crime. Although, I see no good purpose to discuss and relive this life crime that I am sincerely remorseful for and take full and complete responsibility for, I am willing and able to accept and answer any question(s) pertaining to my motivation prior to and after this terrible crime.

Now, after saying this, it is quite clear that my position in this case has been distorted, and misconstrued, misrepresented over the years. I was convicted of kidnapping Walter Wainwright for robbery and although I am truly sorry for this unlawful act and there's no-words that can accurately describe the sorrow I feel in my heart for my inexcusable actions, I still find it difficult to somehow discuss elements of this crime that I have no knowledge of. Through several self-help programs & experiences, I now understand the pain victim's families have to endure when they have lost a love one, but to continue to punish me beyond what is reasonable is unlawful and unethical.

For the past eleven years I have tried to make amends for my actions. As difficult as it is to face the victim's family, I know my soul could not rest until I made and attempt to apologize. This letter very well could fall on deaf ears, but my faith in the creator tells me that I have a sincere obligation to myself to become a better human being. I know some skeptics may write off this letter of apology as hopelessly idealistic and impractical, but this is what good people must do when they are wrong. I Sincerely Apologize! We as human beings cannot willfully hate each-other without destroying the very fiber that connect us...so, I hope eventually I will be forgiven by the family (especially Walters mom) because God has already forgiven me and laid claim to my soul. Since all human beings fall short of this great example, we must strive to see beyond hate and animosity. However, if hatred and animosity are learned behavior, then is it not reasonable to assume that it can be unlearned? I know this is to be true because ever since that day I have made a consorted effort to seek out the undesirables and try to become a better human being.

This act (letter) was done so not to please the Board, but to show my God and you that I have some redeeming qualities and doing God's work is now my main objective.

I am left with one final thought that must remain constant in your mind because it never leaves mine. I am truly and sincerely sorry for the pain and anguish you have suffered at the hands of my inexcusable behavior and participation in such a terrible event...

I am truly sorry and hope God gives you peace and strength to forgive.

                                        Sincerely Submitted,

3.    **Aggravating/Mitigating Circumstances:**

   a.    **Aggravating Factors:**

   - During the commission of the crime, the prisoner had a clear opportunity to cease but instead continued.

   - The prisoner had a special relationship of confidence and trust with the victim, in that Parker and victim worked together at the Naval Air Station.

   - The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime.

   b.    **Mitigating Factors:**

   - The prisoner participated in the crime under partially excusable circumstances which do not amount to a legal defense.

   - The prisoner was a passive participant in the commissioning of the crime.

   - The prisoner has no history of criminal behavior.

B.    **Multiple Crime(s):** None.

   1.    **Summary of Crime:** N/A.

   2.    **Prisoner's Version:** N/A.

LIFE PRISONER EVALU.    REPORT                                                    4
SUBSEQUENT PAROLE CONSIDERATION HEARING
MAY 2003 CALENDAR

---

II.    **PRECONVICTION FACTORS:**

A.    **Juvenile Record:** Documents from the previous hearings have been considered and that information remains valid.

B.    **Adult Convictions:** Documents from the previous hearings have been considered and that information remains valid.

C.    **Personal Factors:** Documents from the previous hearings have been considered and that information remains valid.

III.    **POSTCONVICTION FACTORS:**

A.    **Special Programming/Accommodations:** None.

B.    **Custody History:** Parker was received into the California Department of Corrections on December 16, 1994.   Parker has remained housed at the Correctional Training Facility since September 1, 1998.

C.    **Therapy and Self-Help Activities:** Parker continues to participate in the Alcoholics Anonymous/Narcotics Anonymous Program and has been a contributing member since 9/1/98. There is no participation in any Academic or Vocational Program for this period.  However, Parker informed this writer that he's currently participating in Dr. Carswell Staff Psychologist, Book Report on "Overcoming Anxiety" Short/Long term recovery, and a CDC-128B is forth-coming. Additionally, Parker is currently on the waiting list for Data Processing. Parker is currently assigned to B-Wing Porter with exceptional ratings.

D.    **Disciplinary History:** Inmate Parker has a disciplinary history that consist of a minor and a non-violent infraction.

**CDC-128A's:**

7/16/98            MCSP            Failure to take Prescribed Medication.

**CDC-115's:** None.

E.    **Other:** The panel for Parker's Subsequent parole Consideration Hearing #2 on 5/8/01 acted to deny parole for (2) years, remain disciplinary-free, upgrade vocationally and educationally and participate in self-help and therapy.

---

---

IV.    **FUTURE PLANS:**

A.    **Residence:** In an interview for this report, Parker stated that his residential plans remain the same as presented in the last Life Prisoner Evaluation Report. He would still be able to live with his mother, Maryann Parker at 6036 Dimmyway, Richmond, California 94805. The telephone number at that address is (510) 236-0556. Additionally, Parker has listed his immediate goals and objective on a (1) month to five (5) year scale upon his immediate release, this letter is located in the Miscellaneous Section of his Central File. Additionally a letter of support from Charles Hoehn III (Attorney at Law), Mike Menisine (D.A. San Francisco), Trina Thompson's (Superior Court Judge), Shiloh Christian Fellowship Church, and family & friends is forth coming.

B.    **Employment:** In an interview for this report, Parker stated that should he receive parole consideration to Richmond, Calif., he would be able to secure employment at Ruiz and Juarez Trucking, 42646 Newport Drive, Fremont, California 94538, (Cell) (510) 714-4951 and Fax.: (510) 440-9914. This offer is supported by a letter dated 4/22/03 in the Miscellaneous Section of this Central File.

C.    **Assessment:** Parker's parole plans are appropriate at this time. This writer sees no foreseeable problems.


V.    **USINS STATUS:** N/A.


VI.    **SUMMARY:**

A.    Considering the commitment offense, prior record and prison adjustment, this writer believes Parker would probably pose a low degree of threat to the public at this time if released from prison. The assessment is based upon Parker having no criminal record and the fact that Parker played a limited role in a Kidnapping which a crime partner's (brother) actions resulted in the loss of life of an innocent victim. There is no information in the file to suggest that Parker had any knowledge that his crime partner would murder the victim. Refer to Probation Officer's Report (POR), pages 12 and 13, which indicates that Parker was examined by Ms. Nancy Van Coutering, a licensed psychologist. "In her testimony, she claimed that Parker tested at an IQ Level of 82. She further stated that Parker was extremely upset by his breakup with his girlfriend, and as a result of his extreme dependence, his break up with his girlfriend was much more difficult than it might have been for someone else. Additionally, as a result, Parker may have latched on to his older brother more completely. Parker's

LIFE PRISONER EVALUAT⌣REPORT                                                                      6
SUBSEQUENT PAROLE CO..᷉IDERATION HEARING
MAY 2003 CALENDAR

dependency was described as similar to a 2 year old; further acknowledging Parker's limited role. Parker's brother was convicted of murder and is currently serving a sentence of Life Without the Possibility of Parole. Additionally, reader is referred to POR page 13, which also indicates a letter from a juror who stated she did not believe that Parker knew that the victim would be robbed and kidnapped. She felt that his brother and co-defendant (Wilson) picked him up from work without Parker even realizing what was going to happen. She also felt that his only mistake was that he did not call police and that he lied to police because he was afraid for his brother. Inmate Parker was convicted of PC 209(b) Kidnap/Robbery.

**B.** Prior to release the prisoner could benefit from:

1) Maintaining a disciplinary-free record.

2) Continuous participation in a week assignment.

3) Completing a Trade.

4) Continuous participation in self-help and therapy.

**C.** This report is based upon a one (1) hour interview, a thorough review of the Central File and incidental contact in the housing unit.

**D.** Parker reviewed his Central File on 4/16/03 in preparation for his upcoming Board Hearing.

**E.** No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUAT   REPORT
SUBSEQUENT PAROLE CC   SIDERATION HEARING
MAY 2003 CALENDAR

_L.R. Baker_                6 - 9 - 03
L. R. Baker                        Date
Correctional Counselor I


_R. Leach_                  6/11/3
R. Leach                           Date
Correctional Counselor II


_R. Lopez_                  6-15-03
R. Lopez                           Date
Facility Captain (A)


_D. S. Levorse_  C&PR   6-23-03
D. S. Levorse                      Date
Classification and Parole Representative


PARKER, CLIFFORD        J-43369              CTF-SOLEDAD         MAY/2003

BOARD OF PRISON TERMS
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT                    STATE OF CALIFORNIA

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

INSTRUCTIONS
TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | REASONS |
|---|---|---|---|
| YEAR | BPT | PBR | |
| 4/01 to 4/02 | | | **PLACEMENT**: Remained at the Correctional Training Facility (CTF) for this period. **CUSTODY**: Retained Medium A custody during this period. **VOCATIONAL TRAINING**: None noted during this period. **ACADEMICS**: None noted during this period. **WORK RECORD**: Continued assignment as B-Wing Porter with above average to exceptional rating. **GROUP ACTIVITIES**: Parker participated in the Alcoholics Anonymous/Narcotic Anonymous as documented on CDC-1289B dated 7/1/01, 9/30/01, 1/1/02, & 3/10/02. **PSYCH. TREATMENT**: None noted during this period. **PRISON BEHAVIOR**: Disciplinary-free during this period. **OTHER**: N/A. |

*L. R. Baker*

| | DATE |
|---|---|
| | 6 - 9 - 03 |

PARKER, CLIFFORD          J-43369          CTF-SOLEDAD          MAY/2003

BPT 1004 (REV 7/86)                    Page _1_

BOARD OF PRISON TERMS                                                                     STATE OF CALIFORNIA

CONTINUATION SHEET: LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 4/02 to 4/03 | | | **PLACEMENT**: Remained at CTF.<br>**CUSTODY**: Retained Medium A.<br>**VOCATIONAL TRAINING**: None noted during this period.<br>**ACADEMICS**: None noted during this period.<br>**WORK RECORD**: Continued assignment as B-Wing Porter with above average ratings.<br>**GROUP ACTIVITIES**: Continued participation in Alcoholics Anonymous/Narcotics Anonymous as documented on CDC-128B 7/1/02 & 10/1/02.<br>**PSYCH. TREATMENT**: None noted during this period.<br>**PRISON BEHAVIOR**: Disciplinary-free during this period.<br>**OTHER**: N/A. |

ORDER:
- ☐ BPT date advanced by          months.
- ☐ PBR date advanced by          months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- ☐ Previously imposed conditions affirmed.
- ☐ Add or modify

- ☐ Schedule for Progress Hearing on appropriate institutional calendar

PARKER, CLIFFORF          J-43369                    CTF-SOLEDAD                MAY/2003

BOARD OF PRISON TERMS                                                                     STATE OF CALIFORNIA

BPT 1004 (REV 7/86)                               Page _2_

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

CONTINUATION SHEET:  LIFE PRISONER : POSTCONVICTION PROGRESS REPORT

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 4/03 to 5/03 | | | **PLACEMENT:** Remained at CTF for this period. **CUSTODY:** Retained Medium A. **VOCATIONAL TRAINING:** None noted during this period. **ACADEMICS:** None noted during this period. **WORK RECORD:** continued assignment as B-Wing Porter with above average to excellent ratings. **GROUP ACTIVITIES:** None noted during this period. **PSYCH. TREATMENT:** None noted during this period. **PRISON BEHAVIOR:** Disciplinary-free during this period. **OTHER:** N/A. |

ORDER:
- ☐ BPT date advanced by _____ months.
- ☐ PBR date advanced by _____ months.
- ☐ BPT date affirmed without change.
- ☐ PBR date affirmed without change.

SPECIAL CONDITIONS OF PAROLE:
- ☐ Previously imposed  conditions affirmed.
- ☐ Add or modify

- ☐ Schedule for Progress Hearing on appropriate institutional calendar

PARKER, CLIFFORD          J43369                    CTF-SOLEDAD                MAY/2003

BOARD OF PRISON TERMS                                                                STATE OF CALIFORNIA

BPT 1004 (REV 7/86)

# EXHIBIT "E"

MENTAL HEALTH EVALUATION FOR
THE BOARD OF PRISON HEARINGS
June, 2006 Lifer Calendar

CORRECTIONAL TRAINING FACILITY SOLEDAD
MAY, 2006

| | |
|---|---|
| **NAME:** | **PARKER, CLIFFORD** |
| **CDC#:** | **J-43369** |
| **DOB:** | **11/25/66** |
| **OFFENSE:** | **PC 209(b) KIDNAP/ROBBERY** |
| **DATE OF OFFENSE:** | **7/14/92** |
| **SENTENCE:** | **7 YEARS TO LIFE** |
| **MEPD:** | **5/5/98** |
| **EVALUATION DATE:** | **5/26/06** |

## I.    IDENTIFYING INFORMATION:

Mr. Clifford Parker is a 39 year old, first term, single, Caucasian/Hawaiian male from Contra Costa County. He is a Christian. He has served 14 years on his sentence.

### SOURCES OF INFORMATION:

This evaluation is based upon a single 90 minute interview, plus review of the central and medical files.

The psychological evaluation, dated 6/2/00, by Dr. Terrini, Psychologist at CTF-Soledad, contains a Psychosocial Assessment. This information was reviewed with the inmate and is still current and valid. As a result, this information will not be repeated at this time.

On 10/11/04, Dr. Sexton, CTF-Soledad, wrote a Psychological Evaluation that is still current, valid and relevant.

PARKER, CLIFFORD
J-43369
5/26/06
PAGE 2

## CLINICAL ASSESSMENT

## XII. CURRENT MENTAL STATUS/TREATMENT NEEDS

Mr. Parker related during the interview in a serious, concerned, sober, open and cooperative manner. His mental status was within normal limits. His thinking was rational, logical and coherent. His speech was normal, fluent and goal oriented. His affect was appropriate. There was no evidence of anxiety or of depression. His eye contact was good. Intellectually, he was functioning in the average ranges. His memory was intact. His judgment was intact. His insight and self-awareness were very good and above average.

Mr. Parker has been using his time in the institution in a commendable way. He has completed a home inspection course by correspondence on his own. He is working as a meat cutter and is considered to be employable in that trade. He has completed the entire course requirements for the National Emergency Training Center in the United States Department of Homeland Security, Federal Emergency Management Act. He has completed 28 of these courses. He has his GED. He also has been attending Alcoholics Anonymous and Narcotics Anonymous, which is unnecessary in this case, because he has never had any problems with alcohol or with drug abuse. He has completed Anger Management Training, a 12 week course, and is a graduate of the Crossroad Bible Institute Correspondence Program. He has participated in a Prison Fellowship Ministries Program; he has completed Family Effectiveness Training and Anger Management. He has completed the Criminon Course, the Way to Happiness. He has completed a course on Sexual Purity. He has received lauditory chronos for his work as a meat cutter.

This man has no documented history of alcohol or of drug involvement. This was not an issue in his commitment offense. He also has remained entirely disciplinary free while in prison. This is a commendable achievement. It is very difficult to remain disciplinary free when you are surrounded with hostile individuals and antagonistic individuals, and constantly have to deal with interpersonal conflicts.

PARKER, CLIFFORD
J-43369
5/26/06
PAGE 3

## CURRENT DIAGNOSTIC IMPRESSION

Axis I:       No mental disorder
Axis II:      No personality disorder
Axis III:     No physical disorder
Axis IV:      Life term incarceration
Axis V:       Current GAF: 90

## XIII. REVIEW OF LIFE CRIME

Mr. Parker accepts full responsibility for his involvement in the commitment offense. Mr. Parker stated that his brother approached him to rob the victim, because his brother needed money. He stated that he went along with his brother's wishes although he did not want to do this. He is very sorry that he helped his brother in this robbery. He is sorry that he did not intervene on the victim's behalf. Mr. Parker spoke at length about how badly he feels for his behavior at that time. He stated that he does feel very sorry for the victim and the victim's family, as well as for his own family. It is evident that his brother was the leader and the main participant in this offense.

Mr. Parker stated that he has become deeply involved in Bible Study during his incarceration. This is motivated in part by his deep feelings of guilt, sorrow and remorse over his participation in the commitment offense. Through his Bible Studies he has discovered that he does have God's forgiveness through Christ's death on the cross. It is our sins that caused Christ's extremely painful death; and also, Mr. Parker realizes that his own sins have caused a great deal of pain, anguish and sorrow to the victim's family and everyone else, who has been involved in this crime. He has participated in every self-help program that he can find in the institution, in order to engage in self-improvement, increased awareness, and greater understanding of himself and of life in general. His efforts in this regard are commendable. He is determined to live the rest of his life helping others, living in a way that benefits society, and being a responsible person. His feelings of sorrow and remorse appear to be sincere and genuine. His statements regarding his future goals are also sincere and genuine.

## XIV. ASSESSMENT OF DANGEROUSNESS

A. In considering potential for dangerous behavior in the institution, it is evident that he does not pose a security risk in any way. He has remained entirely disciplinary free throughout his 14 years of incarceration. In

PARKER, CLIFFORD
J-43369
5/26/06
PAGE 4

comparison to other inmates, violence potential is definitely below average.

B. In considering potential for dangerous behavior when released to the community, the Level of Service Inventory-Revised was administered. This is an actuarial measure that assesses criminal history, substance abuse history, and current attitudes and achievements in order to determine current risk level on parole. He obtained a score of 0.8 cumulative frequency for prison inmates. This score means that if 100 men were released on parole, he would be expected to do better on parole than 99 of them. This is an extremely low risk level. As a result, he poses no more risk to society than the average citizen. In fact, due to his growth and maturity over the years, he poses less risk to society than the average citizen in the community.

C. There are no significant risk factors in this case.

## XV.   CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS

There are no mental or emotional problems in this case that would interfere with routine release planning. Mr. Parker has a great deal of family support in the community. He has residence offers as well as job offers in the community. His job offers are all realistic and valid. All of these factors suggest a very good parole adjustment, based upon research. He has no alcohol or drug problems. The prognosis for successful adjustment in the community is excellent.

M. Macomber, Ph.D.
Correctional Psychologist
Correctional Training Facility, Soledad

B. Zika, Ph.D.
Senior Psychologist
Correctional Training Facility, Soledad

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
NOVEMBER 2004 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
OCTOBER 11, 2004

This is an updated psychological evaluation for the Board of Prison Terms on inmate Clifford Parker, CDC# J-43369. This report is the product of a psychodiagnostic interview of the inmate conducted on 10/11/04, lasting approximately 90 minutes. Additionally, the inmate's central file and unit health record were reviewed in their entirety. This clinical interview and the review of all pertinent documents were for the express purpose of preparing this report.

Inmate Parker is a 37-year-old, Hawaiian male with a date of birth of 11/25/66. His primary distinguishing characteristic is that he is quite large at 6'4" and 260 pounds. He has a tattoo of his girlfriend's name and his mother's name on his upper right shoulder. The inmate has been known by the first name of "Kalipo", which is Hawaiian for Clifford.

Inmate Parker has no arrest history prior to his commitment offense. The inmate has no CDC-115s throughout his 12 years of incarceration. He has one CDC-128 of dubious validity. He was given the 128 for failure to take prescribed medication. This medication was for a heat rash on his neck. I state a dubious 128, as inmates have the right to refuse medication, even if a physician feels it is in his best interest to take it. It is unclear to me the justification for the 128.

In previous reports, inmate Parker has declined to discuss the commitment offense. However, when the inmate was questioned about this, he indicated that he had changed his mind, and had had a long conversation with his CC-I about the specifics of the offense. He went on to state that he was primarily concerned about his brother, who is currently serving life without the possibility of parole in Calipatria. He stated that his brother's case has been under appeal, and he was fearful if he said anything in CDC, either at the Board of Prison Terms hearing, during the psychological evaluation, or to the CC-I, that it could have deleterious effects on his brother's case. At the same time, he indicates that his brother did nothing to help him in his own case, and in fact made it much more difficult. The inmate stated several times that he wishes his brother would tell authorities what happened to the victim's body. This inmate indicates that he has no idea of the whereabouts of the victim, as he was not present at the time that it was believed that the victim was murdered.

Inmate Parker stated that his brother has made some religious statements of late, and he hopes that his brother will benefit from the Lord's grace and tell people where the victim's body is. When questioned about his brother, inmate Parker indicated that his brother had been arrested and convicted for kidnapping and robbery on prior occasions, and that he had been in trouble with the law ever since he was a child. At the same time, inmate Parker indicates that he always looked up to his older brother, as did many people

PARKER, CLIFFORD
CDC NUMBER:  J-43369
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

in the local Oakland community.  He suggested that his brother was viewed positively in Oakland as he was considered a dangerous criminal.

The inmate stated that his brother approached him to rob the victim, as the brother needed money.  The inmate indicated that he went along with his brother's wishes, even though he did not want to participate.  The inmate accepts full responsibility for his part in this crime, which includes giving his brother all of the information needed to conduct the robbery, presenting the victim to his brother, closing the trunk of the car to prevent the victim's escape, and not intervening on the victim's behalf.

It is obvious that inmate Parker is truly sorry for this behavior, and said several times how sorry he was for the victim, the victim's family, and for his own family.  It is fairly clear from this evaluator's point of view that the older brother was the leader in this entire crime.

When asked about his parole plans, the inmate indicated that he had attended numerous training programs, with numerous FEMA certificates.  He has numerous laudatory chronos from vocation and Alcoholics Anonymous.  He has attended numerous self-help programs.  He currently is a licensed California home inspector, receiving his license on 03/25/04.  He has also been employed as a meat cutter at the institution.  Either of these professions would lead to easy employment in the community.

Inmate Parker has no psychiatric or medical history.  His only contact with psychiatric services is for Board of Prison Terms reports.

A current mental status examination was conducted.  Inmate Parker was coherent, cooperative, calm, and alert.  There was no evidence of a mood or thought disorder.  He denied any history of psychotic thinking, psychotic symptoms, or significant mood disorders.  His current judgment is excellent.

A previous psychiatric report indicated that the inmate's intelligence quotient was 82, which would place him in the lower range of the general population.  This is clearly incorrect.  His intelligence is well within the normal range.  As a result, the following diagnostic impression is offered:

## CURRENT DIAGNOSTIC IMPRESSIONS:

| | |
|---|---|
| AXIS I: | V71.09 – No Contributory Clinical Disorder. |
| AXIS II: | V71.09 – No Contributory Personality Disorder. |
| AXIS III: | No Contributory Physical Disorder. |
| AXIS IV: | Lifer incarceration. |
| AXIS V: | Current GAF = 85. |

In assessing inmate Parker's intelligence, one need only review his paperwork prepared for the Board of Prison Terms entitled "Memorandum of Evidence and Law in Support of

PARKER, CLIFFORD
CDC NUMBER: J-43369
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

Parole Suitability," his self-designed and assembled chronology of his plans for parole. This is clearly not the work of a person with a subnormal intelligence.

Given all of the above, the following statements can be made.

1)   Inmate Parker's violence threat in the institutional setting is significantly below average.

2)   This inmate's potential for violence in the community is far below the average parolee. His threat of violence in the community is approximately average when compared to the nonoffender group of a similar age.

3)   Drugs and alcohol have never been an issue for inmate Parker.

4)   This inmate has attended an excessive amount of self-help programs. He currently continues to participate as a prosocial activity, but is clearly not needed for psychological growth at this time.

5)   It is this clinicians' opinion that should the inmate be granted parole, he will satisfactorily complete his parole period with little or no difficulty.


S. Sexton, Ph.D.
Consulting Psychologist
Correctional Training Facility, Soledad


B. Zika, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

SS/gmj

D: 10/11/04
T: 10/14/04

*D:\Word Files\BPT - 2004\PARKER, CLIFFORD  J-43369  11-04  SEXTON.doc*

PARKER          J-43369          CTF-CENTRAL          10/11/04          gmj

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
(REVISED AUGUST 1998)
PAROLE CONSIDERATION HEARING
NOVEMBER 2004 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
OCTOBER 11, 2004

This is an updated psychological evaluation for the Board of Prison Terms on inmate
Clifford Parker, CDC# J-43369. This report is the product of a psychodiagnostic
interview of the inmate conducted on 10/11/04, lasting approximately 90 minutes.
Additionally, the inmate's central file and unit health record were reviewed in their
entirety. This clinical interview and the review of all pertinent documents were for the
express purpose of preparing this report.

Inmate Parker is a 37-year-old, Hawaiian male with a date of birth of 11/25/66. His
primary distinguishing characteristic is that he is quite large at 6'4" and 260 pounds. He
has a tattoo of his girlfriend's name and his mother's name on his upper right shoulder.
The inmate has been known by the first name of "Kalipo", which is Hawaiian for
Clifford.

Inmate Parker has no arrest history prior to his commitment offense. The inmate has no
CDC-115s throughout his 12 years of incarceration. He has one CDC-128 of dubious
validity. He was given the 128 for failure to take prescribed medication. This medication
was for a heat rash on his neck. I state a dubious 128, as inmates have the right to refuse
medication, even if a physician feels it is in his best interest to take it. It is unclear to me
the justification for the 128.

In previous reports, inmate Parker has declined to discuss the commitment offense.
However, when the inmate was questioned about this, he indicated that he had changed
his mind, and had had a long conversation with his CC-I about the specifics of the
offense. He went on to state that he was primarily concerned about his brother, who is
currently serving life without the possibility of parole in Calipatria. He stated that his
brother's case has been under appeal, and he was fearful if he said anything in CDC,
either at the Board of Prison Terms hearing, during the psychological evaluation, or to the
CC-I, that it could have deleterious effects on his brother's case. At the same time, he
indicates that his brother did nothing to help him in his own case, and in fact made it
much more difficult. The inmate stated several times that he wishes his brother would
tell authorities what happened to the victim's body. This inmate indicates that he has no
idea of the whereabouts of the victim, as he was not present at the time that it was
believed that the victim was murdered.

Inmate Parker stated that his brother has made some religious statements of late, and he
hopes that his brother will benefit from the Lord's grace and tell people where the
victim's body is. When questioned about his brother, inmate Parker indicated that his
brother had been arrested and convicted for kidnapping and robbery on prior occasions,
and that he had been in trouble with the law ever since he was a child. At the same time,
inmate Parker indicates that he always looked up to his older brother, as did many people

PARKER, CLIFFORD
CDC NUMBER: J-43369
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

in the local Oakland community. He suggested that his brother was viewed positively in Oakland as he was considered a dangerous criminal.

The inmate stated that his brother approached him to rob the victim, as the brother needed money. The inmate indicated that he went along with his brother's wishes, even though he did not want to participate. The inmate accepts full responsibility for his part in this crime, which includes giving his brother all of the information needed to conduct the robbery, presenting the victim to his brother, closing the trunk of the car to prevent the victim's escape, and not intervening on the victim's behalf.

It is obvious that inmate Parker is truly sorry for this behavior, and said several times how sorry he was for the victim, the victim's family, and for his own family. It is fairly clear from this evaluator's point of view that the older brother was the leader in this entire crime.

When asked about his parole plans, the inmate indicated that he had attended numerous training programs, with numerous FEMA certificates. He has numerous laudatory chronos from vocation and Alcoholics Anonymous. He has attended numerous self-help programs. He currently is a licensed California home inspector, receiving his license on 03/25/04. He has also been employed as a meat cutter at the institution. Either of these professions would lead to easy employment in the community.

Inmate Parker has no psychiatric or medical history. His only contact with psychiatric services is for Board of Prison Terms reports.

A current mental status examination was conducted. Inmate Parker was coherent, cooperative, calm, and alert. There was no evidence of a mood or thought disorder. He denied any history of psychotic thinking, psychotic symptoms, or significant mood disorders. His current judgment is excellent.

A previous psychiatric report indicated that the inmate's intelligence quotient was 82, which would place him in the lower range of the general population. This is clearly incorrect. His intelligence is well within the normal range. As a result, the following diagnostic impression is offered:

## CURRENT DIAGNOSTIC IMPRESSIONS:

AXIS I:     V71.09 – No Contributory Clinical Disorder.
AXIS II:    V71.09 – No Contributory Personality Disorder.
AXIS III:   No Contributory Physical Disorder.
AXIS IV:    Lifer incarceration.
AXIS V:     Current GAF = 85.

In assessing inmate Parker's intelligence, one need only review his paperwork prepared for the Board of Prison Terms entitled "Memorandum of Evidence and Law in Support of

PARKER, CLIFFORD
CDC NUMBER: J-43369
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

Parole Suitability," his self-designed and assembled chronology of his plans for parole. This is clearly not the work of a person with a subnormal intelligence.

Given all of the above, the following statements can be made.

1) Inmate Parker's violence threat in the institutional setting is significantly below average.

2) This inmate's potential for violence in the community is far below the average parolee. His threat of violence in the community is approximately average when compared to the nonoffender group of a similar age.

3) Drugs and alcohol have never been an issue for inmate Parker.

4) This inmate has attended an excessive amount of self-help programs. He currently continues to participate as a prosocial activity, but is clearly not needed for psychological growth at this time.

5) It is this clinicians' opinion that should the inmate be granted parole, he will satisfactorily complete his parole period with little or no difficulty.


S. Sexton, Ph.D.
Consulting Psychologist
Correctional Training Facility, Soledad


B. Zika, Ph.D.
Senior Supervising Psychologist
Correctional Training Facility, Soledad

SS/gmj

D: 10/11/04
T: 10/14/04

*D:\Word Files\BPT - 2004\PARKER, CLIFFORD  J-43369  11-04  SEXTON.doc*


PARKER          J-43369          CTF-CENTRAL          10/11/04          gmj