IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CLIFFORD PARKER, ) No. C 07-04215 SBA (PR)
)
    Petitioner, ) **ORDER DENYING PETITION FOR**
) **WRIT OF HABEAS CORPUS**
v. )
)
B. CURRY, )
)
    Respondent. )
)
_____ )

## INTRODUCTION

Petitioner Clifford Parker, an inmate at the Correctional Training Facility in Soledad, California, filed this pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in which he challenges the denial of parole by the California Board of Parole Hearings (BPH) in 2006. The matter is now submitted for the Court's consideration of the merits of the petition. For the reasons discussed below, the petition is DENIED.

## PROCEDURAL BACKGROUND

In 1994, Petitioner was convicted by a jury in Contra Costa County Superior Court of kidnaping for the purpose of robbery. (Resp't Ex. 2.) He was also charged with murder with special circumstances, specifically murder in the commission of robbery or kidnapping, but the jury acquitted him of that count. (Id.) The trial court sentenced him to a state prison term of life with the possibility of parole. (Id.) On June 8, 2006, the BPH conducted Petitioner's sixth parole consideration hearing, after which it found that Petitioner was not suitable for parole because he would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. (Resp't Ex. 1, Ex. A at 69.)[1]

Petitioner filed a habeas petition in the Contra Costa County Superior Court, which was

---

[1] Respondent's Exhibit 1 is Petitioner's habeas petition to the state superior court. Attached as Exhibit A to that petition is a full transcript of the parole hearing.

denied on December 7, 2006. (Resp't Exs. 1 & 2.) Thereafter, Petitioner filed a habeas petition in the state appellate court, which was denied on April 4, 2007. (Resp't Exs. 3 & 4.) On April 20, 2007, Petitioner filed a petition for review in the state supreme court, which was denied on June 27, 2007. (Resp't Exs. 5 & 6.)

Petitioner filed the instant petition on August 16, 2007, raising the following claims: (1) the denial of parole violated his right to due process because it was based solely on the immutable facts of his commitment offense, it was not supported by sufficient reliable evidence that he would endanger the public if released, and the parole hearing was conducted "pro forma;" and (2) the failure of the BPH to apply California law correctly violated his right to due process. Respondent was ordered to show cause why the petition should not be granted based on Petitioner's claims. Respondent has filed an answer, along with a supporting memorandum and exhibits, and Petitioner has filed a traverse.

## **STANDARD OF REVIEW**

### **I. AEDPA**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Section 2254(d) applies to a habeas petition from a state prisoner challenging the denial of parole. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006).

A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits. Lambert v. Blodgett, 393 F.3d

943, 969 (9th Cir. 2004). It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court. See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

### A. Section 2254(d)(1)

Challenges to purely legal questions resolved by the state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of" "clearly established Federal law, as determined by the Supreme Court of the United States." Williams (Terry) v. Taylor, 529 U.S. 362, 402-04, 409 (2000). While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards. See Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds; Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

#### 1. Clearly Established Federal Law

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Id. "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." Mitchell v. Esparza, 540 U.S. 12, 17 (2003). If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law. See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court. Williams, 529 U.S. at 391. There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it

may be that only the general principle can be regarded as "clearly established."  Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### 2. "Contrary to"

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause."  Id. at 406.  Such a case should be analyzed under the "unreasonable application" prong of § 2254(d).  See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### 3. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The "objectively unreasonable" standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade, "[t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them." Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

**B.     Section 2254(d)(2)**

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**II.   California Law Governing Parole**

A BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date . . . . The release date shall be set in a manner that

will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Cal. Pen. Code § 3041(a). Significantly, that statute also provides: The panel shall set a release date,

> unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

Id. § 3041(b).

One of the implementing regulations, Title 15 of the California Code of Regulations, section 2401 provides: "A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public." The regulation also provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." 15 Cal. Code Regs. § 2402(a).

In making its determination, the parole board may consider "[a]ll relevant, reliable information available," including,

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in finding of unsuitability.

Id. § 2402(b).

Circumstances tending to show unsuitability for parole include the nature of the commitment offense, and consideration of whether "[t]he prisoner committed the offense in an especially heinous,

6

atrocious or cruel manner." Id. § 2281(c). This includes consideration of the number of victims, whether "[t]he offense was carried out in a dispassionate and calculated manner," whether the victim was "abused, defiled or mutilated during or after the offense," whether "[t]he offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering," and whether "[t]he motive for the crime is inexplicable or very trivial in relation to the offense." Id. Other circumstances tending to show unsuitability for parole are a previous record of violence, an unstable social history, previous sadistic sexual offenses, a history of severe mental health problems related to the offense, and serious misconduct in prison or jail. See id.

Circumstances tending to support a finding of suitability for parole include no juvenile record, a stable social history, signs of remorse, that the crime was committed as a result of significant stress in the prisoner's life, a lack of criminal history, a reduced possibility of recidivism due to the prisoner's present age, that the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release, and that the prisoner's institutional activities indicate an enhanced ability to function within the law upon release. See id. § 2281(d).

The regulations also contain a matrix of suggested base terms that prisoners with indeterminate sentences should serve before they are released on parole. The matrix provides three choices of suggested "base terms" for several categories of crimes. See 15 Cal. Code Regs. § 2403. If, as in Petitioner's case, the base offense is one count of first-degree murder with the use of a dangerous weapon (firearm), the matrix of base terms ranges from a low of 29-31 years, to a high of 30-32 years, depending on some of the facts of the crime.[2] See id. § 2403(b). Although the matrix is to be used to establish a base term, this occurs only once the prisoner has been found suitable for

---

[2] One axis of the matrix concerns the relationship between murderer and victim and the other axis of the matrix concerns the circumstances of the murder. The choices on the axis for the relationship of murderer and victim are "participating victim," "prior relationship," "no prior relationship," and "threat to public order or murder for hire." The choices on the axis for the circumstances of the murder are "indirect," "direct or victim contribution," "severe trauma," or "torture." Each of the choices are further defined in the matrix. See CAL. CODE REGS. tit. 15, § 2403(b).

parole. See id. § 2403(a).

The statutory scheme places individual suitability for parole above a prisoner's expectancy in early setting of a fixed date designed to ensure term uniformity. In re Dannenberg, 34 Cal.4th 1061, 1070-71 (2005).

> While subdivision (a) of section 3041 states that indeterminate life (i.e., life-maximum) sentences should "normally" receive "uniform" parole dates for similar crimes, subdivision (b) provides that this policy applies "*unless* [the Board] determines" that a release date cannot presently be set because the particular offender's crime and/or criminal history raise "*public safety*" concerns requiring further indefinite incarceration. (Italics added.) Nothing in the statute states or suggests that the Board must evaluate the case under standards of term uniformity before exercising its authority to deny a parole date on the grounds the particular offender's criminality presents a *continuing public danger*.

Id. at 1070 (emphasis, brackets and parenthesis in original). Indeed, the very regulation that includes the matrix states that "[t]he panel shall set a base term for each life prisoner who is found suitable for parole." 15 Cal. Code Regs. § 2403(a) (emphasis added). "[T]he Board, exercising its traditional broad discretion, may protect public safety in each discrete case by considering the dangerous implications of a life-maximum prisoner's crime individually." Dannenberg, 34 Cal. 4th at 1071 (emphasis added).

The California Supreme Court's determination of state law is binding in this federal habeas action. See Hicks v. Feiock, 485 U.S. 624, 629 (1988).

## DISCUSSION

### I. Due Process

"In analyzing the procedural safeguards owed to an inmate under the Due Process clause, [a court] must look at two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural safeguards." Biggs v. Terhune, 334 F.3d 910, 913 (9th Cir. 2003). The second prong of this test is satisfied if (1) the inmate has been afforded an opportunity to be heard and, if denied parole, informed of the reasons underlying the decision and (2) "some evidence" supports the decision to grant or deny parole. See Sass, 461 F.3d at 1129 (adopting some evidence standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)).

## A. Protected Liberty Interest

Respondent argues as an initial matter that Petitioner has no federally protected liberty interest in parole. This argument has been rejected by the Ninth Circuit. See Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1125 (9th Cir. 2006) ("California inmates continue to have a liberty interest in parole after In re Dannenberg."). Thus, under Sass, Petitioner was entitled to the protections of due process at his 2006 parole suitability hearing.

## B. Opportunity to Be Heard and Reasons for Denial

There is no dispute that Petitioner fully participated in his 20064 parole suitability hearing, as evidenced by the transcript of that hearing. (Resp't Ex. 1, Ex. A.) Throughout the hearing, Petitioner was given the opportunity to make comments and/or objections in response to the BPH's statements, clarify any misunderstandings and provide statements regarding his parole eligibility. (Id.) In addition, the BPH laid out detailed reasons for denying Petitioner parole, which are discussed further below. (Id.) Consequently, the record is clear that the BPH did not violate Petitioner's due process right to have an opportunity to be heard and to be given the reasons for the denial of parole.

## C. "Some Evidence"

In his first claim, Petitioner argues that the BPH violated his right to due process by denying parole based solely on the facts of his commitment offense, and that there was not sufficient evidence to support a finding that he would endanger the public if he was released.

A parole board's decision satisfies the requirements of due process if "some evidence" supports the decision. Sass, 461 F.3d at 1128-29. "To determine whether the some evidence standard is met 'does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached'" by the parole board. Id. at 1128 (quoting Hill, 472 U.S. at 455-56). The "some evidence standard is minimal, and assures that 'the record is not so devoid of evidence that the findings of the . . . board were without support or otherwise arbitrary.'" Id. at 1129 (quoting Hill, 472 U.S. at 457).

It is now established under California law that the task of the BPH is to determine whether the prisoner would be a danger to society if he or she were paroled. In. re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

In several cases the Ninth Circuit has discussed whether the "some evidence" standard can be satisfied by evidence of the nature of the commitment offense and prior offenses. In Biggs, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." 334 F.3d at 915-17. Although the Biggs court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." Id. at 916.

The Sass court criticized the decision in Biggs: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." Sass, 461 F.3d at 1129. Sass determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. Id. (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, Sass does not dispute the argument in Biggs that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the

10

prisoner had not yet served the minimum years required by the sentence.  Id.  Also, noting that the parole board in Sass and Irons appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes."  Id. (citing Biggs, 334 F.3d at 917).  Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

The BPH denied parole in this case based on the facts of the circumstances of the commitment offense, which it found to have been "especially callous and cruel" because it was "so terrible" and because of Petitioner's "involvement in it."  (Resp't Ex. 1, Ex. A at 69.)  The Contra Costa County Superior Court found that the passage of time had not been so long to prevent the facts of the commitment offense from amounting to "some evidence" of Petitioner's current dangerousness, upon which the BPH could rely in denying parole.  (Resp't Ex. 2.)  The California Court of Appeal and the California Supreme Court summarily denied the petitions.  (Resp't Exs. 4 & 6.)

The facts of the commitment offense are as follows:

> Petitioner, his older brother (Lamar Parker) and another third party planned to rob Mr. Wainwright.  Petitioner and the victim worked together as civilian employees at the Alameda Naval base.  The victim was seen in the trunk of Petitioner's car, which had been left open while parked at or near Petitioner's apartment.  The victim had his mouth bound with duct-tape, his right arm bound behind his back and he was described as appearing "terror-stricken."  At the request of his older brother, petitioner ran out of his apartment and slammed the trunk on the victim's head.
> Petitioner and another subject then entered the car and drove off.  The car was identified as belonging to the Petitioner.  Petitioner and his brother took the victim to a motel room in Berkeley where the victim was laid on the floor while still duct-taped.  The victim's body has never been recovered.

(Resp't Ex. 2 at 1; Ex 1, ex. A at 7-11.)

There are a number of factors to be considered in assessing whether the Board's decision was supported by "some evidence" that Petitioner would present an unreasonable danger to the public if released.  Of great importance is that Petitioner's conduct in prison was described by the BPH and

11

the state court as "outstanding" based on his lack of disciplinary problems and laudatory reports from prison staff; and a host of self-help courses. (Id. at 71-73.) In addition, Petitioner demonstrated a good demeanor and acceptance of responsibility, and he had excellent parole plans. (Id. at 73-75.) On the other hand, the facts of the crime are especially egregious. Petitioner and his cohorts terrorized the victim by binding and gagging him, locking him in the trunk of his car, slamming the trunk on his head, and driving him to various locations in different cities. A witness noted the victim's fear and suffering, as did the BPH. (Id. at 70.) While the jury acquitted Petitioner of murdering the victim, the victim was never seen or heard from again following Petitioner's conduct.

The issue for the instant federal petition is whether the state courts' rejection of Petitioner's due process claim was contrary to, or an unreasonable application of, clearly-established Supreme Court authority. *See* 28 U.S.C. 2254(d)(1). As expressed in Biggs, after passage of enough time such a factor ceases to amount to "some evidence" on its own. The state courts' reasonably concluded in this case that the fourteen years that had elapsed since Petitioner committed the crime was not enough time that the crime, given its especially egregious circumstances, no longer amounted to some evidence that Petitioner would endanger the public if released. Even if it was perhaps a close question as to whether enough time had passed in this case, whether the BPH's decision was supported by "some evidence" is not a close call when the additional layer of deference in the "unreasonable application" standard is added. Indeed, when the constitutionality of the underlying decision is a close question, it is almost a foregone conclusion that it was reasonable for the state courts to hold that it was not unconstitutional. The state courts' rejection of the this claim was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority, and this claim is DENIED.

### D. **Pro Forma Hearing**

In his first claim, Petitioner also argues that the BPH violated his right to due process because the hearing was "pro forma." The record shows that the BPH reviewed the evidence extensively and discussed it with Petitioner. (Resp. Ex. 1, Ex. A at 1-76.) The BPH's decision

1  explains the specific facts it relied upon in finding him not suitable for parole. (Id. at 68-76.). Both
2  of these factors tend to negate the accusation that the hearing was "pro forma," and Petitioner has
3  not provided any evidence that would show otherwise. The state courts' rejection of this claim was
4  not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority, and
5  the claim is DENIED.

### E. Misapplicaiton of State Law

Petitioner claims that the BPH improperly applied state court decisions to his case. Petitioner asserts that in 1976, California's new sentencing laws providing determinate sentences for a large number of offenses were intended to punish offenders and not rehabilitate them. Petitioner argues that because he was sentenced to an indeterminate sentence, court decisions rendered since the change in California's sentencing laws to determinate sentences should not be applied to him. Petitioner does not identify any of the court decisions that were allegedly improperly applied to his parole decision, nor does he cite any authority for the proposition that such decisions are inapplicable to his case. In any event, this claim is based solely on the argument that the BPH has misapplied state law, which is not a cognizable basis for federal habeas relief. See 28 U.S.C. § 2254(a) (providing for habeas relief based on violation of federal law); Engle v. Isaac, 456 U.S. 107, 119 (1982) (same). Accordingly, this claim is DENIED.

### II. Certificate of Appealability

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability (COA) in its ruling. See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). However, the Ninth Circuit has made clear that a state prisoner challenging the BPT's administrative decision to deny a request for parole need not obtain a certificate of appealability. See Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005). Accordingly, any request for a COA is DENIED as unnecessary.

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. In addition,

any request for a COA is DENIED as unnecessary. The Clerk of the Court shall enter judgment in accordance with this Order, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DATED: _3/8/10

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CLIFFORD L PARKER,

    Plaintiff,

v.

BEN CURRY et al,

    Defendant.

Case Number: CV07-04215 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on March 10, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Clifford Lelikona Parker J-43369
California State Prison - San Quentin
San Quentin, CA 94974

Dated: March 10, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\HC.07\Parker4215.denyHC.wpd        15